UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Case No.:

| | |
|---|---|
| DYREL ROSA SHANNON, TAMMY SHANNON, and ARNETTA SHEARD, Plaintiffs, <br> v. <br> GOVERNOR ROY ASBERRY COOPER III, *in his individual capacity* REGINA FEREBEE, *in her individual capacity ,* CORRECTION ENTERPRISES, THE NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, ERIC A. HOOKS, *in his ind capacity ividual capacity,* KENNETH LASSITER, *in his individual capacity ,* GARY JUNKER, *in his individual capacity,* FRANK L. PERRY, *in his individual ,* ROBERT KALDAHL, *in his individual capacity,* GEORGE SOLOMON, *in his individual capacity,* W. DAVID GUICE, *in his individual capacity ,* FELIX TAYLOR, *in his individual capacity,* COLBERT RESPASS, *in his individual capacity,,* MIKEL E. BRADY II, *in his individual capacity,* WISEZAH D. BUCKMAN, *in his individual capacity,* JONATHAN M. MONK, *in his individual capacity,* SETH J. FRAZIER, , *in his individual capacity,* FAY D. LASSITER, *in her individual capacity,* NICOLE SULLIVAN, *in her individual capacity,* ANNIE HARVEY, *in her individual capacity,* JOSEPH HARRELL, *in his individual capacity,* MARQUIS BETZ, *in his individual capacity,* KAREN BROWN *in her individual capacity,* and ROBERT LEON *in his individual capacity,* JEFFREY BAKER, *in his individual capacity,* RICHARD TURNER, *in his individual capacity,* LORIS SUTTON, *in her individual capacity,* VIVIAN JOHNSON, *in her individual capacity,* and THOMAS ASHLEY, *in his individual capacity,* JERMAINE GRIFFIN, *in his individual capacity,* JESSE ROGERS, *in his individual capacity,* LEARY MATTHEW CASPER, *in his individual capacity,* WILLIAM DAVENPORT, *in his individual capacity,* STEVEN GARDNER, *in his individual capacity,* | **ORIGINAL COMPLAINT** <br> **(Jury Trial Demanded)** |

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 1 of 609

CARLTON RICHARDSON, *individual capacity,* LEON WILLIAMS, *in his individual capacity,* KATINA JORDAN, *in her individual capacity,* STEPHANIE FREEMAN, *in her individual capacity,* KAREN STEINOUR, *in her individual capacity,* JOE PRATER, *in his individual capacity,* TONY TAYLOR, *in his individual capacity,* TIM MOOSE, *in his individual capacity,* ANGELA SINTEF, *in her individual capacity,* BILL STOVAL, *in his individual capacity,* JERRY CARROLL, *in his individual capacity,*

Defendants.

## PLAINTIFFS' COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs ROSA SHANNON, TAMMY SHANNON, and ARNETTA SHEARD file this Original Complaint and Jury Demand, and in support thereof, respectfully show the Court as follows:

### JURISDICTION AND VENUE

1.     This action arises under 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution.   Jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

2.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(3) because, although the majority of events or omissions giving rise to this action occurred in the Federal Eastern Judicial District of North Carolina, as it pertains to this specific matter, that District is an improper venue and there is no other practicable Venue, other than this Judicial District. In efforts to ensure a fair proceeding as to all parties involved, the Eastern District is an improper venue, whereas this Judicial District is proper in that: 1.) this Judicial District is a convenient venue to all parties, 2.) multiple Defendants are public figures whom reside in the Eastern District and will prejudice Plaintiffs' pursuit of

a fair trial, 3.) the previous media attention and public exposure to the sensitive nature and the facts regarding the subject incident in the Eastern District will prejudice the ability to obtain an "untainted" jury in this matter, 4.) that (as outlined below) some Defendants reside outside of the State of North Carolina, and 5.) because some of the Defendants roles and/or employment duties not only reached Counties in the Eastern District but were also applied to Counties, under their official capacities, to this Judicial District. Therefore, the Eastern District of North Carolina is improper, there is no other practicable District than this Judicial District, and whereas no Party in this action will be prejudiced by this Judicial District as the Venue for this matter.

## BACKGROUND AND APPLICABLE LAW

3.      Plaintiffs were employees at the Pasquotank Correctional Institution ("Subject Premises"). On October 12, 2017, while at work, all three were brutally murdered in an attempted escape (the "prison break") by four inmates. Their deaths were completely preventable, had Defendants taken reasonable measures to keep Pasquotank Correctional Institute safe for its staff, not placed them in the dangerous conditions created at Pasquotank Correctional Institute, and/or acted reasonably to protect from this type of harm.

4.      Generally, Due Process Considerations under the 14th Amendment of the United States Constitution does not require a State to protect individuals from harm caused by third parties. However, it is well grounded Federal Law, as in the case at bar, when a special relationship exists between an individual and the State, a Constitutional right to be protected by the State from the harm inflicted by a third party, whom is under

State control (*i.e.,* in custody of the State), is guaranteed. *See generally, Swader v. Com. of Va.*, 743 F. Supp. 434 (E.D. Va. 1990).

5.     To determine whether a "Special Relationship" exists, specifically pertaining to situations where the claimant seeks Constitutional protections of safety and security from the harm inflicted by an inmate who is under the custody of the State, Courts have employed the following analysis: "1.) Whether the victim or the perpetrator was in legal custody at the time of incident, or had been in legal custody prior to the incident…2.) Whether the state has expressly stated its desire to provide affirmative protection to a particular class or specific individuals…and 3.) Whether the State knew of the claimants' plight." *See, B.M.H. by C.B. v. School Board*, 833 F. Supp. 560, 567 (E.D. Va. 1993), relying on *Jensen v. Conrad*, 747 F.2d 185, 194-95 (4th Cir. 1984).

6.     In the alternative, a "Special Relationship" as discussed above, can be established if the relationship between the State and the individual is one that "so restrains the individual that he becomes almost wholly dependent upon the State for basic needs and unable to act on his own behalf." *See, B.M.H. by C.B. v. School Board*, 833 F. Supp. 560, 569 (E.D. Va. 1993).

7.     Here, a special relationship existed between The State of North Carolina and Plaintiffs under both tests outlined above as:

    a.  Plaintiffs were employed by the State of North Carolina at Pasquatank Correctional Institution which required them to work in a dangerous environment housing some of the most violent North Carolina inmates (termed "Close-Custody Inmates");

    b.  Violent and non-violent inmates were routinely allowed to traverse the grounds of the prison without close supervision or control on a daily basis;

c. Aside from the prison itself, Plaintiffs were required to guard and/or supervise a sewing plant (as well as hallways and points of ingress/egress connecting same to the rest of the prison) which provided inmates unfettered access to dangerous tools and objects;

d. Plaintiffs' relied on the State of North Carolina (through Pasquatank Correctional Institution) and Correction Enterprises (an arm of The State of North Carolina) to enforce, uphold, and provide adequate safety and security for them as outlined in express policies and procedures for operations at Pasquatank Correctional Institution;

e. That these policies and procedures were promulgated to protect Corrections Officers and/or Corrections Staff from harm committed to them by prison inmates;

f. That Plaintiffs job duties for the State of North Carolina required employees to be locked within multi-layers of containment within the prison premises, refrain from entering the premises with any personal materials for self-defense, and were reliant on Pasquatank Corrections Institution and Corrections Enterprises policies and procedures regarding measures and equipment used to provide safety and security for employees;

g. That Plaintiffs were required to conduct job duties while routinely outnumbered and surrounded by violent and non-violent inmates whom were unrestrained and able to walk freely in close proximity to Plaintiffs on a daily basis;

h. That Plaintiffs were wholly dependent on the State to provide adequate safety and security measures as all basic needs for self-defense, safety and/or security (*i.e.,* self-defense weaponry, shields, radio devices, emergency devices/materials, protective clothing, helmets, back-up staff members, containment/restraining devices, immobilizing devices, etc.) were regulated and controlled by Pasquatank Correctional Institution and Corrections Enterprises polices and procedures;

i. That Plaintiff's were unable to provide for their own adequate security and safety as they were within the minority population of individuals on the prison premises whom were charged in supervising and maintaining custody over the majority population of criminally adjudicated prison inmates (violent and non-violent);

j. And that Plaintiffs were also unable to provide for their own adequate safety and security as they could not enter and/or exit the multi-layers of containment of the prison premises without authority granted by other personnel and staff (*i.e.,* they were unable to freely move

throughout the premises and/or remove themselves from danger in the event of an emergency to evade harm).

8.    Coupled with the factors outlined above, that the State of North Carolina, and specifically the named Defendants herein, knew of Plaintiffs' "plight" and/or that State of North Carolina Corrections Officers and/or those similarly situated were at risk of death or great bodily injury due to staffing concerns and causal linkages to adequate safety and security at North Carolina's Prisons whereas:

    a.  In February 2017, The State of North Carolina released a Prison Staffing Study (originally commissioned in 2014) finding glaring staffing deficiencies in North Carolina State Prisons.

    b.  On or around April 26, 2017, a Sergeant Meggan Callahan was beaten to death with a fire extinguisher after attempting to put out a fire that was started by an inmate at Bertie Correctional Institute. It was later determined that the inmate intentionally set the fire with the express intent of drawing out and killing Sergeant Callahan. More than a dozen current and former employees of the Bertie Correctional told the Charlotte Observer that the prison had been "dangerously short-staffed for a long time." On the day of Callahan's attack, a Department of Labor report noted that only four correctional officers were working—half the recommended number of officers for that block. It was later determined that at the time of Sergeant Callahan's murder, there was a 26 percent staff vacancy rate at Bertie Correctional Institution.

    c.  Bertie Correctional Institution is roughly 54 miles from Pasquotank Correctional Institution (both are located in rural areas in the northeastern region of North Carolina).

    d.  In the aftermath of Sergeant Callahan's death, the State Employees Association of North Carolina ("SEANC"), the association that represents all North Carolina state employees, asked the State to act to improve working conditions in the prison.

    e.  Most of the requests from SEANC focused on raising salary and benefits to fill guard jobs in the prisons across the State.

    f.  In response to the Prison Staffing Study released in February 2017 referenced above, Defendant ERIC A. HOOKS in his position as Secretary of the North Carolina Department of Public Safety requested

in June 2017 for the commission of a "comprehensive study of prison management across the country to identify best practices for improving safety and security in prisons."

g. The results to DEFENDANT HOOKS' "comprehensive study" were released on December 7, 2017, almost two months after the attack at Pasquotank Correctional Institution, whereas it found that "[t]he main takeaway from both the literature and the interviews is that adequate staff and strong leadership are the bedrock on which further security enhancements can be built."

9. Although no actual remedial measures were taken to enhance safety and security at North Carolina's Corrections Institutions following the Prison Staffing Study released in February 2017 nor following the death of Sergeant Meggan Callahan in April 2017, Defendants (based on their positions/roles with the State of North Carolina and their involvement in said studies and investigations relating to same), were in fact on notice that there were safety and security concerns for Corrections Officers, Staff and those similarly situated in the North Carolina Prison System.

10. Based on Defendants actions and/or inactions, coupled with an inherent intent to harm Plaintiffs, each Defendant (as further described herein) created an unsafe and extremely dangerous environment which, in fact, infringed on Plaintiffs' Constitutional Right to be protected from harm caused by third parties, as outlined above.

11. More specifically, the prison break at Pasquatank Correctional Institution began inside Corrections Enterprises, serving as a Sewing Plant (the "Sewing Plant"), located within the perimeter fence of Pasquatank Correctional Institution (hereinafter "prison"). Corrections Enterprises is designated as an Arm of the State of North Carolina. This Sewing Plant is situated atop a prison storage warehouse, connected by a freight elevator. At least 12 close-custody prisoners and 18 medium-custody prisoners worked in the Plant, including the four close-custody inmates who perpetrated the

attempted prison break and consequent murders at issue in this case. A single Correctional Officer, PLAINTIFF, JUSTIN SMITH, was charged with guarding all 30 of these inmates. Unfortunately, PLAINTIFF SMITH was highly vulnerable and exposed to physical harm as Pasquotank Correctional Institute was grossly understaffed and charging him to solely supervise these inmates was in contravention to the North Carolina Department of Public Safety (NCDPS) and Corrections Enterprises, policies and procedures.

12. Of note, Pasquatank Correctional Institution had its own policies and procedures regarding the adequate ratio of guards per inmate, as well as, Corrections Enterprises which expressly required a minimum of two guards supervising the inmates of the Sewing Plant, at all times. Pasquatank Correctional Institution and Corrections Enterprises also had various policies and procedures regarding access to keys/key cards for entry and exiting the Sewing Plant, how tools or materials used at the Sewing Plant were accounted for and stored, and how inmates were to be supervised and monitored during their work day at the Sewing Plant. Further, Pasquatank Corrections Institution and Corrections Enterprises had policies and procedures regarding employment and retention of inmates, whereas "Close Custody" inmates (the most violent offenders at Pasquatank Correctional Institution) were not to be allowed work privileges/opportunities at the Sewing Plant. These policies and procedures were expressly in place at Pasquatank Correctional Institution and Corrections Enterprises specifically to provide a safe and secure environment for their Corrections Staff and inmates. They were to provide a minimum standard of safety and security.

13.     Plaintiffs' not only relied on the adequate implementation of the aforementioned policies and procedures created and promulgated by The State of North Carolina (through Pasquatank Correctional Institution and Corrections Enterprises) to provide corrections employees minimal standards of safety and security but they also were guaranteed protections against inmates of Pasquatank Correctional Institution due to the special relationship they had with the State of North Carolina, which maintained custody over these inmates.

14.     Unfortunately, Defendants' actions and failures, which range from poor hiring and retention practices, severe understaffing to lax and unenforced safety procedures, and failures in adequate supervision of staff and inmates, created an environment that allowed four violent criminals and/or employees to gain unfettered access to deadly tools and closed, unguarded hallways within the Sewing Plant.  As a result, Plaintiffs were locked inside the Subject Premises, then battered with claw hammers and stabbed numerous times with scissors leading to their eventual deaths.

15.     Defendants' wholly ineffective security policies, monitoring, training and inadequate equipment allowed this assault to continue for nearly 20 minutes before any attempted intervention to come to the aide of Plaintiffs. By that point, it was too late. PLAINTIFF SMITH and PLAINTIFF DARDEN had already died. Employees, including PLAINTIFF SHANNON, were in the process of being attacked with claw hammers and scissors, and would later die from their injuries as well. Due to Defendants' ineffective and/or unfollowed safety and security procedures, none of the Plaintiff's were allowed to exit the subject premises and/or were free to leave. They, for all intents and purposes, were confined, just as the inmates of the prison, and sentenced to death.

16.     Eventually, all four inmates were subdued prior to effectuating an escape from the premises.  However, in the end, Plaintiffs were savagely killed, and others injured, with the use of a combination of scissors, a claw hammer and other available objects taken from the sewing plant.

17.     Controllable circumstances created the danger for the inmates to attempt the break and execute the plan with such brutality. In fact, the policies and procedures to mitigate and/or deter this danger were created by Pasquatank Corrections Institution and Corrections Enterprises; however, Defendants intentionally failed to follow them as they placed budgetary concerns and profits over their employees.  After allowing these violent prisoners work assignments that provided them access to dangerous tools (in contravention of their own aforementioned policies and procedures), correctional supervisors continued to let a Plaintiff, SMITH, guard these violent "Close-Custody Inmates" by himself. This provided a glaring opportunity and/or foreseeable risk to Plaintiffs to be seriously injured and/or killed as the horrific events transpired on October 12, 2017.

18.     This civil action seeks compensatory damages for the deaths of Plaintiffs, all of which were proximately caused by the actions and policies of the Defendants, in breach of their duties to Plaintiffs.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT GOVERNOR ROY COOPER**

19.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

20.     Defendant, KENNETH LASSITER ("Defendant K. LASSITER") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant K. Lassiter assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

21.     Defendant K. Lassiter is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant K. Lassiter (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State

agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

22.     As Chief Executive Officer and/or Governor of North Carolina, Defendant K. Lassiter, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

23.     Unfortunately, Defendant K. Lassiter, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

24.     Defendant K. Lassiter intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

25.     Unfortunately, Defendant K. Lassiter's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections

Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

26.     The result of Defendant K. Lassiter's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, GOVERNOR ROY COOPER**

27.      Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

28.      Defendant K. Lassiter is a "person" as defined under 42 U.S.C. § 1983.

29.      According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

30.　　　　The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

31.　　　　To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

32.　　　　At all times relevant to the allegations in this complaint, Defendant K. Lassiter acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

33. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant K. Lassiter's actions and inactions infringed upon that Right.

34. Alternatively, Defendant K. Lassiter also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

35. More specifically, Defendant K. Lassiter (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant K. Lassiter directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

36.        The affirmative acts and/or deliberate inactions committed by

Defendant K. Lassiter include:

i.     DEFENDANT K. LASSITER knew that the Pasquotank Correctional
       Institution security policies were outdated and not succinctly written per
       industry standard; however, deliberately failed to take any actions to
       direct or take any remedial actions to correct same because doing so
       would detract from the profit driven goal of the Sewing Plant operations.

i.     Defendant K. Lassiter was well aware of the NCDPS' deficient and
       outdated security policies, which he also knew effected the safety of
       correctional staff, inmates, and the public's safety; however, he
       deliberately failed to take any actions to direct or take any remedial
       actions to correct same because doing so would detract from the profit
       driven goal of the Sewing Plant operations

ii.    Defendant K. Lassiter knew that Corrections Enterprises had its own
       safety and security policies which were separate and distinct from
       NCDPS' policies; however, their policies and procedures contained
       security inaccuracies and were incongruent with NCDPS' policies and
       procedures. Defendant K. Lassiter deliberately failed to take any actions
       to direct or take any remedial actions to correct same because doing so
       would detract from the profit driven goal of the Sewing Plant operations.

iii.   Defendant K. Lassiter failed to address the security needs of correctional
       staff, inmates and the public. These issues were known for years and
       went unaddressed. The overarching results created inconsistencies in the
       application of security practices in Pasquotank Correctional Institution,
       as well as the Corrections Enterprises security operations. Defendant K.
       Lassiter deliberately failed to take any actions to direct or take any
       remedial actions to correct same because doing so would detract from the
       profit driven goal of the Sewing Plant operations.

iv.    The Pasquotank Correctional Institution was operating with an alarming
       25% staff deficiency. Defendant K. Lassiter was well aware the subject
       premises was operating below critical staffing levels which placed
       correctional staff, inmates and the public at risk. Defendant K. Lassiter
       deliberately failed to take any actions to direct or take any remedial
       actions to correct same because doing so would detract from the profit
       driven goal of the Sewing Plant operations.

v.     Defendant K. Lassiter knew that the Pasquotank Correctional Institution
       was operating without proper safety equipment and/or failed to properly
       train their employees to utilize such equipment they did have. Defendant
       K. Lassiter deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

vi. Defendant K. Lassiter (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

vii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant K. Lassiter and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

viii. Defendant K. Lassiter (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ix. Defendant K. Lassiter knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

x. Defendant K. Lassiter through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xi. Defendant K. Lassiter's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xii.    Defendant K. Lassiter through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xiii.   Defendant K. Lassiter failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xiv.    Defendant K. Lassiter failed to properly staff critical positions. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xv.     Defendant K. Lassiter through NCDPS failed to properly monitor inmate movement. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xvi.    Defendant K. Lassiter through NCDPS failed to properly search for offenders within the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xvii.   Defendant K. Lassiter through NCDPS failed to properly staff designated search areas within the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xviii.  Defendant K. Lassiter, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xix.    Defendant K. Lassiter, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xx. Defendant K. Lassiter through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxi. Defendant K. Lassiter through NCDPS failed to conduct adequate inmate searches. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxii. Defendant K. Lassiter through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxiii. Defendant K. Lassiter through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxiv. Defendant K. Lassiter through NCDPS failed to implement adequate control center operations. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxv. Defendant K. Lassiter through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxvi. Defendant K. Lassiter through NCDPS failed to implement adequate hazard material management. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxvii. Defendant K. Lassiter through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant K. Lassiter deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxviii.    Defendant K. Lassiter through NCDPS failed to implement adequate key control management. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxix.    Defendant K. Lassiter through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxx.    Defendant K. Lassiter through NCDPS failed to implement adequate security inspections. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxi.    Defendant K. Lassiter through NCDPS failed to implement adequate emergency management plans and responses. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxii.    Defendant K. Lassiter through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxiii.    Defendant K. Lassiter through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxiv.    Defendant K. Lassiter through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxv.    Defendant K. Lassiter through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxvi.   Defendant K. Lassiter through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxvii.  Defendant K. Lassiter through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxviii. Defendant K. Lassiter through NCDPS failed to document searches on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xxxix.   Defendant K. Lassiter through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xl.      Defendant K. Lassiter through NCDPS failed to implement security preparedness drills and training. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xli.     Defendant K. Lassiter through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xlii.    Defendant K. Lassiter through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xliii.  Defendant K. Lassiter through NCDPS failed to discontinue security notifications due to broken equipment. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xliv.  Defendant K. Lassiter through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xlv.  Defendant K. Lassiter through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xlvi.  Defendant K. Lassiter through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xlvii.  Defendant K. Lassiter through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xlviii.  Defendant K. Lassiter through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xlix.  Defendant K. Lassiter through NCDPS negligently implemented Conflicting "security key" control policies. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

l.  Defendant K. Lassiter through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

li. Defendant K. Lassiter through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lii. Defendant K. Lassiter through NCDPS failed to update "post orders" for staff per industry standard. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

liii. Defendant K. Lassiter through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

liv. Defendant K. Lassiter through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

37. Defendant K. Lassiter's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

38. Had Defendant K. Lassiter acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control

mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

39.     Further, it was foreseeable that Defendant K. Lassiter's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

40.     As outlined above, Defendant K. Lassiter acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant K. Lassiter's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

41.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

42.        Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT III**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT ERIC HOOKS**

43.        Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

44.        Defendant, ERIC HOOKS ("Defendant HOOKS") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Hooks assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

45.     Defendant Hooks is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Hooks (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

46.     As Chief Executive Officer and/or Governor of North Carolina, Defendant Hooks, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

47.     Unfortunately, Defendant Hooks, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State

funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

48. Defendant Hooks intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

49. Unfortunately, Defendant Hooks's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

50. The result of Defendant Hooks's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT IV**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, ERIC HOOKS**

51.        Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

52.        Defendant Hooks is a "person" as defined under 42 U.S.C. § 1983.

53.        According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

54.        The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

55.        To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement

has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

56.     At all times relevant to the allegations in this complaint, Defendant Hooks acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

57.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Hooks's actions and inactions infringed upon that Right.

58.     Alternatively, Defendant Hooks also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

59.　　　　More specifically, Defendant Hooks (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Hooks directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

60.　　　　The affirmative acts and/or deliberate inactions committed by Defendant Hooks include:

lv.　　DEFENDANT HOOKS knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lvi.　　Defendant Hooks was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

lvii.　　Defendant Hooks knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lviii.　　Defendant Hooks failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the

application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lix. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Hooks was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lx. Defendant Hooks knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxi. Defendant Hooks (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Hooks and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxiii. Defendant Hooks (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxiv. Defendant Hooks knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxv.    Defendant Hooks through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxvi.    Defendant Hooks's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxvii.    Defendant Hooks through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxviii.    Defendant Hooks failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxix.    Defendant Hooks failed to properly staff critical positions. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxx.    Defendant Hooks through NCDPS failed to properly monitor inmate movement. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxi.    Defendant Hooks through NCDPS failed to properly search for offenders within the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxii.    Defendant Hooks through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxiii. Defendant Hooks, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plant at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxiv. Defendant Hooks, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxv. Defendant Hooks through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxvi. Defendant Hooks through NCDPS failed to conduct adequate inmate searches. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxvii. Defendant Hooks through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxviii. Defendant Hooks through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxix. Defendant Hooks through NCDPS failed to implement adequate control center operations. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxx. Defendant Hooks through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises.

Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxi. Defendant Hooks through NCDPS failed to implement adequate hazard material management. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxii. Defendant Hooks through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxiii. Defendant Hooks through NCDPS failed to implement adequate key control management. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxiv. Defendant Hooks through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxv. Defendant Hooks through NCDPS failed to implement adequate security inspections. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxvi. Defendant Hooks through NCDPS failed to implement adequate emergency management plans and responses. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxvii. Defendant Hooks through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxviii. Defendant Hooks through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

lxxxix.  Defendant Hooks through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xc.  Defendant Hooks through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xci.  Defendant Hooks through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xcii.  Defendant Hooks through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xciii.  Defendant Hooks through NCDPS failed to document searches on the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xciv.  Defendant Hooks through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xcv.  Defendant Hooks through NCDPS failed to implement security preparedness drills and training. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xcvi.  Defendant Hooks through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xcvii. Defendant Hooks through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xcviii. Defendant Hooks through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

xcix. Defendant Hooks through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

c. Defendant Hooks through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ci. Defendant Hooks through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cii. Defendant Hooks through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ciii. Defendant Hooks through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

civ.  Defendant Hooks through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cv.  Defendant Hooks through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cvi.  Defendant Hooks through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cvii.  Defendant Hooks through NCDPS failed to update "post orders" for staff per industry standard. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cviii.  Defendant Hooks through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cix.  Defendant Hooks through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Hooks deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

61.  Defendant Hooks's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

62.     Had Defendant Hooks acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

63.     Further, it was foreseeable that Defendant Hooks's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

64.     As outlined above, Defendant Hooks acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Hooks's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each

Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

65.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

66.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## AS TO DEFENDANT GOVERNOR ROY COOPER

67.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

68.     Defendant, GARY JUNKER ("Defendant JUNKER") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North

Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Junker assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

69.     Defendant Junker is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Junker (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

70.     As Chief Executive Officer and/or Governor of North Carolina, Defendant Junker, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional

officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

71. Unfortunately, Defendant Junker, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

72. Defendant Junker intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

73. Unfortunately, Defendant Junker's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

74.     The result of Defendant Junker's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT VI**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT KENNETH LASSITER**

75.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

76.     Defendant, KENNETH LASSITER ("Defendant K. LASSITER") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant K. Lassiter assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

77.     Defendant K. Lassiter is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this

Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant K. Lassiter (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

78.     As Chief Executive Officer and/or Governor of North Carolina, Defendant K. Lassiter, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

79.     Unfortunately, Defendant K. Lassiter, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 43 of 609

Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

80.     Defendant K. Lassiter intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

81.     Unfortunately, Defendant K. Lassiter's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

82.     The result of Defendant K. Lassiter's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

### COUNT VI
### VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
### AS TO DEFENDANT, KENNETH LASSITER

83.             Plaintiffs hereby incorporate by reference all preceding

paragraphs as though fully set forth herein.

84. Defendant K. Lassiter is a "person" as defined under 42 U.S.C. § 1983.

85. According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

86. The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

87. To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted

"affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

88. At all times relevant to the allegations in this complaint, Defendant K. Lassiter acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

89. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant K. Lassiter's actions and inactions infringed upon that Right.

90. Alternatively, Defendant K. Lassiter also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

91. More specifically, Defendant K. Lassiter (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections

Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant K. Lassiter directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

92. The affirmative acts and/or deliberate inactions committed by Defendant K. Lassiter include:

cx. DEFENDANT K. LASSITER knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxi. Defendant K. Lassiter was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

cxii. Defendant K. Lassiter knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxiii. Defendant K. Lassiter failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant K. Lassiter deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxiv.    The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant K. Lassiter was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxv.    Defendant K. Lassiter knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxvi.    Defendant K. Lassiter (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxvii.    The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant K. Lassiter and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxviii.    Defendant K. Lassiter (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxix.    Defendant K. Lassiter knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxx.     Defendant K. Lassiter through NCDPS employed mandatory overtime
         requirements further supporting their knowledge of staff shortages at
         Pasquotank Correctional Institution. Defendant K. Lassiter deliberately
         failed to take any actions to direct or take any remedial actions to correct
         same because doing so would detract from the profit driven goal of the
         Sewing Plant operations.

cxxi.    Defendant K. Lassiter's loss of control over inmates of Pasquotank
         Correctional Facility and/or employees of Corrections Enterprises led to
         a reduction in disciplinary sanctions against inmate/personnel
         wrongdoing thereby failing to deter same from recurrence. Defendant K.
         Lassiter deliberately failed to take any actions to direct or take any
         remedial actions to correct same because doing so would detract from the
         profit driven goal of the Sewing Plant operations.

cxxii.   Defendant K. Lassiter through NCDPS failed to provide adequate
         supervision of inmates and/or employees and also failed to spend
         adequate time supervising inmates and/or employees when they did
         supply supervisory time at Pasquotank Correctional Institution.
         Defendant K. Lassiter deliberately failed to take any actions to direct or
         take any remedial actions to correct same because doing so would detract
         from the profit driven goal of the Sewing Plant operations.

cxxiii.  Defendant K. Lassiter failed to enforce safety and security policies that
         either existed in some form and/or the safety and security policies that
         are generally commonplace in corrections institutions. Defendant K.
         Lassiter deliberately failed to take any actions to direct or take any
         remedial actions to correct same because doing so would detract from the
         profit driven goal of the Sewing Plant operations.

cxxiv.   Defendant K. Lassiter failed to properly staff critical positions. Defendant
         K. Lassiter deliberately failed to take any actions to direct or take any
         remedial actions to correct same because doing so would detract from the
         profit driven goal of the Sewing Plant operations.

cxxv.    Defendant K. Lassiter through NCDPS failed to properly monitor inmate
         movement. Defendant K. Lassiter deliberately failed to take any actions to
         direct or take any remedial actions to correct same because doing so
         would detract from the profit driven goal of the Sewing Plant operations.

cxxvi.   Defendant K. Lassiter through NCDPS failed to properly search for
         offenders within the subject premises. Defendant K. Lassiter deliberately
         failed to take any actions to direct or take any remedial actions to correct
         same because doing so would detract from the profit driven goal of the
         Sewing Plant operations.

cxxvii.  Defendant K. Lassiter through NCDPS failed to properly staff designated
         search areas within the subject premises. Defendant K. Lassiter
         deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxviii. Defendant K. Lassiter, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxix. Defendant K. Lassiter, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxx. Defendant K. Lassiter through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxi. Defendant K. Lassiter through NCDPS failed to conduct adequate inmate searches. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxii. Defendant K. Lassiter through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxiii. Defendant K. Lassiter through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxiv. Defendant K. Lassiter through NCDPS failed to implement adequate control center operations. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxv.    Defendant K. Lassiter through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxvi.   Defendant K. Lassiter through NCDPS failed to implement adequate hazard material management. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxvii.  Defendant K. Lassiter through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxviii. Defendant K. Lassiter through NCDPS failed to implement adequate key control management. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxxxix.   Defendant K. Lassiter through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxl.      Defendant K. Lassiter through NCDPS failed to implement adequate security inspections. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxli.     Defendant K. Lassiter through NCDPS failed to implement adequate emergency management plans and responses. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxlii.    Defendant K. Lassiter through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxliii.　Defendant K. Lassiter through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxliv.　Defendant K. Lassiter through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxlv.　Defendant K. Lassiter through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxlvi.　Defendant K. Lassiter through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxlvii.　Defendant K. Lassiter through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxlviii.　Defendant K. Lassiter through NCDPS failed to document searches on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxlix.　Defendant K. Lassiter through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cl.　Defendant K. Lassiter through NCDPS failed to implement security preparedness drills and training. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

cli.   Defendant K. Lassiter through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clii.   Defendant K. Lassiter through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cliii.   Defendant K. Lassiter through NCDPS failed to discontinue security notifications due to broken equipment. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cliv.   Defendant K. Lassiter through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clv.   Defendant K. Lassiter through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clvi.   Defendant K. Lassiter through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clvii.   Defendant K. Lassiter through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clviii.   Defendant K. Lassiter through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections

Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clix. Defendant K. Lassiter through NCDPS negligently implemented Conflicting "security key" control policies. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clx. Defendant K. Lassiter through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxi. Defendant K. Lassiter through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxii. Defendant K. Lassiter through NCDPS failed to update "post orders" for staff per industry standard. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxiii. Defendant K. Lassiter through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxiv. Defendant K. Lassiter through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant K. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

93. Defendant K. Lassiter's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and

gross deficiencies in staffing and/or access to adequate resources (as outlined above).

94.        Had Defendant K. Lassiter acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

95.        Further, it was foreseeable that Defendant K. Lassiter's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

96.        As outlined above, Defendant K. Lassiter acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant K. Lassiter's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject

premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

97.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

98.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT VII**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY**
<u>**AS TO DEFENDANT GARY JUNKER**</u>

99.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

100.     Defendant, GARY JUNKER ("Defendant JUNKER") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific

and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Junker assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

101. Defendant Junker is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Junker (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

102. As Chief Executive Officer and/or Governor of North Carolina, Defendant Junker, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and

position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

103. Unfortunately, Defendant Junker, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

104. Defendant Junker intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

105. Unfortunately, Defendant Junker's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of

labor employing North Carolina's custodial inmates to preform those production efforts.

106. The result of Defendant Junker's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT VIII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, GARY JUNKER**

107. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

108. Defendant Junker is a "person" as defined under 42 U.S.C. § 1983.

109. According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

110. The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-

relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

111.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

112.     At all times relevant to the allegations in this complaint, Defendant Junker acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

113.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they

had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Junker's actions and inactions infringed upon that Right.

114.     Alternatively, Defendant Junker also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

115.     More specifically, Defendant Junker (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Junker directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

116.     The affirmative acts and/or deliberate inactions committed by Defendant Junker include:

clxv.     DEFENDANT JUNKER knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxvi.     Defendant Junker was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations

clxvii.     Defendant Junker knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxviii.    Defendant Junker failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxix.      The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Junker was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxx.       Defendant Junker knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxi.      Defendant Junker (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxii.     The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Junker and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxiii.     Defendant Junker (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxiv.      Defendant Junker knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxv.       Defendant Junker through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxvi.      Defendant Junker's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxvii.     Defendant Junker through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxviii.    Defendant Junker failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxix.      Defendant Junker failed to properly staff critical positions. Defendant Junker deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxx. Defendant Junker through NCDPS failed to properly monitor inmate movement. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxi. Defendant Junker through NCDPS failed to properly search for offenders within the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxii. Defendant Junker through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxiii. Defendant Junker, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxiv. Defendant Junker, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxv. Defendant Junker through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxvi. Defendant Junker through NCDPS failed to conduct adequate inmate searches. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxvii. Defendant Junker through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxviii. Defendant Junker through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

clxxxix. Defendant Junker through NCDPS failed to implement adequate control center operations. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxc. Defendant Junker through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxci. Defendant Junker through NCDPS failed to implement adequate hazard material management. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxcii. Defendant Junker through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxciii. Defendant Junker through NCDPS failed to implement adequate key control management. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxciv. Defendant Junker through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxcv. Defendant Junker through NCDPS failed to implement adequate security inspections. Defendant Junker deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxcvi. Defendant Junker through NCDPS failed to implement adequate emergency management plans and responses. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxcvii. Defendant Junker through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxcviii. Defendant Junker through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cxcix. Defendant Junker through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cc. Defendant Junker through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cci. Defendant Junker through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccii. Defendant Junker through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cciii. Defendant Junker through NCDPS failed to document searches on the subject premises. Defendant Junker deliberately failed to take any actions

to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cciv. Defendant Junker through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccv. Defendant Junker through NCDPS failed to implement security preparedness drills and training. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccvi. Defendant Junker through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccvii. Defendant Junker through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccviii. Defendant Junker through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccix. Defendant Junker through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccx. Defendant Junker through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxi. Defendant Junker through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security

keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxii.  Defendant Junker through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxiii.  Defendant Junker through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxiv.  Defendant Junker through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxv.  Defendant Junker through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxvi.  Defendant Junker through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxvii.  Defendant Junker through NCDPS failed to update "post orders" for staff per industry standard. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxviii.  Defendant Junker through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxix.    Defendant Junker through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Junker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

117.    Defendant Junker's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

118.    Had Defendant Junker acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

119.    Further, it was foreseeable that Defendant Junker's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

120.    As outlined above, Defendant Junker acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights

established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Junker's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

121.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

122.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT IX**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT FRANK L. PERRY**

123.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

124.     Defendant, FRANK L. PERRY ("Defendant PERRY") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Perry assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

125.     Defendant Perry is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Perry (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees

(specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

126.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Perry, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

127.    Unfortunately, Defendant Perry, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

128.    Defendant Perry intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

129.    Unfortunately, Defendant Perry's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command

at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

130.    The result of Defendant Perry's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT X**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, FRANK L. PERRY**

131.       Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

132.       Defendant Perry is a "person" as defined under 42 U.S.C. § 1983.

133.       According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

134.    The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

135.    To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

136.    At all times relevant to the allegations in this complaint, Defendant Perry acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

137.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Perry's actions and inactions infringed upon that Right.

138.    Alternatively, Defendant Perry also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

139.    More specifically, Defendant Perry (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Perry directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

140.        The affirmative acts and/or deliberate inactions committed by

Defendant Perry include:

ccxx.    DEFENDANT PERRY knew that the Pasquotank Correctional Institution
security policies were outdated and not succinctly written per industry
standard; however, deliberately failed to take any actions to direct or take
any remedial actions to correct same because doing so would detract
from the profit driven goal of the Sewing Plant operations.

ccxxi.    Defendant Perry was well aware of the NCDPS' deficient and outdated
security policies, which he also knew effected the safety of correctional
staff, inmates, and the public's safety; however, he deliberately failed to
take any actions to direct or take any remedial actions to correct same
because doing so would detract from the profit driven goal of the Sewing
Plant operations

ccxxii.    Defendant Perry knew that Corrections Enterprises had its own safety
and security policies which were separate and distinct from NCDPS'
policies; however, their policies and procedures contained security
inaccuracies and were incongruent with NCDPS' policies and procedures.
Defendant Perry deliberately failed to take any actions to direct or take
any remedial actions to correct same because doing so would detract
from the profit driven goal of the Sewing Plant operations.

ccxxiii.    Defendant Perry failed to address the security needs of correctional staff,
inmates and the public. These issues were known for years and went
unaddressed. The overarching results created inconsistencies in the
application of security practices in Pasquotank Correctional Institution,
as well as the Corrections Enterprises security operations. Defendant
Perry deliberately failed to take any actions to direct or take any remedial
actions to correct same because doing so would detract from the profit
driven goal of the Sewing Plant operations.

ccxxiv.    The Pasquotank Correctional Institution was operating with an alarming
25% staff deficiency. Defendant Perry was well aware the subject
premises was operating below critical staffing levels which placed
correctional staff, inmates and the public at risk. Defendant Perry
deliberately failed to take any actions to direct or take any remedial
actions to correct same because doing so would detract from the profit
driven goal of the Sewing Plant operations.

ccxxv.    Defendant Perry knew that the Pasquotank Correctional Institution was
operating without proper safety equipment and/or failed to properly
train their employees to utilize such equipment they did have. Defendant
Perry deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxvi.     Defendant Perry (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxvii.    The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Perry and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxviii.   Defendant Perry (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxix.     Defendant Perry knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxx.      Defendant Perry through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxi.     Defendant Perry's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxii.    Defendant Perry through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory

time at Pasquotank Correctional Institution. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxiii.   Defendant Perry failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxiv.   Defendant Perry failed to properly staff critical positions. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxv.   Defendant Perry through NCDPS failed to properly monitor inmate movement. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxvi.   Defendant Perry through NCDPS failed to properly search for offenders within the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxvii.   Defendant Perry through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxviii.   Defendant Perry, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxxxix.   Defendant Perry, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxl.    Defendant Perry through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxli.   Defendant Perry through NCDPS failed to conduct adequate inmate searches. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxlii.  Defendant Perry through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxliii. Defendant Perry through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxliv.  Defendant Perry through NCDPS failed to implement adequate control center operations. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxlv.   Defendant Perry through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxlvi.  Defendant Perry through NCDPS failed to implement adequate hazard material management. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxlvii. Defendant Perry through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxlviii. Defendant Perry through NCDPS failed to implement adequate key control management. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxlix. Defendant Perry through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccl. Defendant Perry through NCDPS failed to implement adequate security inspections. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccli. Defendant Perry through NCDPS failed to implement adequate emergency management plans and responses. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclii. Defendant Perry through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccliii. Defendant Perry through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccliv. Defendant Perry through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclv. Defendant Perry through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclvi.     Defendant Perry through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclvii.    Defendant Perry through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclviii.   Defendant Perry through NCDPS failed to document searches on the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclix.     Defendant Perry through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclx.      Defendant Perry through NCDPS failed to implement security preparedness drills and training. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxi.     Defendant Perry through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxii.    Defendant Perry through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxiii.   Defendant Perry through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxiv.     Defendant Perry through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxv.      Defendant Perry through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxvi.     Defendant Perry through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxvii.    Defendant Perry through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxviii.   Defendant Perry through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxix.     Defendant Perry through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxx.      Defendant Perry through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxi.     Defendant Perry through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxii.    Defendant Perry through NCDPS failed to update "post orders" for staff per industry standard. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxiii.   Defendant Perry through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxiv.   Defendant Perry through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Perry deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

141.    Defendant Perry's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

142.    Had Defendant Perry acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

143.	Further, it was foreseeable that Defendant Perry's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

144.	As outlined above, Defendant Perry acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Perry's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

145.	The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

146.	Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to

the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

### COUNT XI
### VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
### AS TO DEFENDANT ROBERT KALDAHL

147. Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

148. Defendant, ROBERT KALDAHL ("Defendant Kaldahl") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Kaldahl assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

149. Defendant Kaldahl is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident

also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Kaldahl (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

150. As Chief Executive Officer and/or Governor of North Carolina, Defendant Kaldahl, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

151. Unfortunately, Defendant Kaldahl, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank

Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

152.    Defendant Kaldahl intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

153.    Unfortunately, Defendant Kaldahl's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

154.    The result of Defendant Kaldahl's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, ROBERT KALDHL**

155.       Plaintiffs hereby incorporate by reference all preceding

paragraphs as though fully set forth herein.

156.     Defendant Kaldahl is a "person" as defined under 42 U.S.C. § 1983.

157.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

158.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

159.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted

"affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

160.    At all times relevant to the allegations in this complaint, Defendant Kaldahl acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

161.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Kaldahl's actions and inactions infringed upon that Right.

162.    Alternatively, Defendant Kaldahl also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

163.    More specifically, Defendant Kaldahl (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections

Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Kaldahl directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

164. The affirmative acts and/or deliberate inactions committed by Defendant Kaldahl include:

cclxxv. DEFENDANT KALDAHL knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxvi. Defendant Kaldahl was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

cclxxvii. Defendant Kaldahl knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxviii. Defendant Kaldahl failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Kaldahl deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxix. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Kaldahl was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxx. Defendant Kaldahl knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxi. Defendant Kaldahl (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Kaldahl and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxiii. Defendant Kaldahl (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxiv. Defendant Kaldahl knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxv. Defendant Kaldahl through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at

Pasquotank Correctional Institution. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxvi. Defendant Kaldahl's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxvii. Defendant Kaldahl through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxviii. Defendant Kaldahl failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cclxxxix. Defendant Kaldahl failed to properly staff critical positions. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxc. Defendant Kaldahl through NCDPS failed to properly monitor inmate movement. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxci. Defendant Kaldahl through NCDPS failed to properly search for offenders within the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxcii. Defendant Kaldahl through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxciii.    Defendant Kaldahl, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxciv.    Defendant Kaldahl, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxcv.    Defendant Kaldahl through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxcvi.    Defendant Kaldahl through NCDPS failed to conduct adequate inmate searches. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxcvii.    Defendant Kaldahl through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxcviii.    Defendant Kaldahl through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccxcix.    Defendant Kaldahl through NCDPS failed to implement adequate control center operations. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccc.    Defendant Kaldahl through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take

any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccci. Defendant Kaldahl through NCDPS failed to implement adequate hazard material management. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccii. Defendant Kaldahl through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccciii. Defendant Kaldahl through NCDPS failed to implement adequate key control management. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccciv. Defendant Kaldahl through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccv. Defendant Kaldahl through NCDPS failed to implement adequate security inspections. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccvi. Defendant Kaldahl through NCDPS failed to implement adequate emergency management plans and responses. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccvii. Defendant Kaldahl through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccviii. Defendant Kaldahl through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccix. Defendant Kaldahl through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccx. Defendant Kaldahl through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxi. Defendant Kaldahl through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxii. Defendant Kaldahl through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxiii. Defendant Kaldahl through NCDPS failed to document searches on the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxiv. Defendant Kaldahl through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxv. Defendant Kaldahl through NCDPS failed to implement security preparedness drills and training. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxvi. Defendant Kaldahl through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Kaldahl

deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxvii. Defendant Kaldahl through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxviii. Defendant Kaldahl through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxix. Defendant Kaldahl through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxx. Defendant Kaldahl through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxi. Defendant Kaldahl through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxii. Defendant Kaldahl through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxiii. Defendant Kaldahl through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxiv.   Defendant Kaldahl through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxv.   Defendant Kaldahl through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxvi.   Defendant Kaldahl through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxvii.   Defendant Kaldahl through NCDPS failed to update "post orders" for staff per industry standard. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxviii.   Defendant Kaldahl through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxix.   Defendant Kaldahl through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Kaldahl deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

165.   Defendant Kaldahl's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

166.        Had Defendant Kaldahl acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

167.        Further, it was foreseeable that Defendant Kaldahl's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

168.        As outlined above, Defendant Kaldahl acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Kaldahl's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life,

each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

169.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

170.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT XIII
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT GEORGE SOLOMON**

171.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

172.     Defendant, GEORGE SOLOMON ("Defendant Solomon") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North

Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Solomon assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

173.    Defendant Solomon is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Solomon (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

174.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Solomon, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional

officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

175. Unfortunately, Defendant Solomon, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

176. Defendant Solomon intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

177. Unfortunately, Defendant Solomon's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

178.     The result of Defendant Solomon's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XIV**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, GEORGE SOLOMON**

179.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

180.     Defendant Solomon is a "person" as defined under 42 U.S.C. § 1983.

181.     According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

182.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the

state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist*, 648 F.3d 965, 971–72 (9th Cir.2001).

183.　　　To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

184.　　　At all times relevant to the allegations in this complaint, Defendant Solomon acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

185.　　　As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Officers at Pasquotank Correctional Institution and Defendant Solomon's actions and inactions infringed upon that Right.

186.     Alternatively, Defendant Solomon also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

187.     More specifically, Defendant Solomon (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Solomon directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

188.     The affirmative acts and/or deliberate inactions committed by Defendant Solomon include:

cccxxx.     DEFENDANT SOLOMON knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxxi.     Defendant Solomon was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

cccxxxii. Defendant Solomon knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxxiii. Defendant Solomon failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxxiv. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Solomon was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxxv. Defendant Solomon knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxxvi. Defendant Solomon (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxxvii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Solomon and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxxviii.    Defendant Solomon (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxxxix.    Defendant Solomon knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxl.    Defendant Solomon through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxli.    Defendant Solomon's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxlii.    Defendant Solomon through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxliii.    Defendant Solomon failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxliv.    Defendant Solomon failed to properly staff critical positions. Defendant Solomon deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxlv.   Defendant Solomon through NCDPS failed to properly monitor inmate movement. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxlvi.   Defendant Solomon through NCDPS failed to properly search for offenders within the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxlvii.   Defendant Solomon through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxlviii.   Defendant Solomon, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxlix.   Defendant Solomon, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccl.   Defendant Solomon through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccli.   Defendant Solomon through NCDPS failed to conduct adequate inmate searches. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclii.   Defendant Solomon through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccliii. Defendant Solomon through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccliv. Defendant Solomon through NCDPS failed to implement adequate control center operations. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclv. Defendant Solomon through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclvi. Defendant Solomon through NCDPS failed to implement adequate hazard material management. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclvii. Defendant Solomon through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclviii. Defendant Solomon through NCDPS failed to implement adequate key control management. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclix. Defendant Solomon through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclx. Defendant Solomon through NCDPS failed to implement adequate security inspections. Defendant Solomon deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxi.     Defendant Solomon through NCDPS failed to implement adequate emergency management plans and responses. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxii.    Defendant Solomon through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxiii.   Defendant Solomon through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxiv.    Defendant Solomon through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxv.     Defendant Solomon through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxvi.    Defendant Solomon through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxvii.   Defendant Solomon through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxviii.  Defendant Solomon through NCDPS failed to document searches on the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxix.  Defendant Solomon through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxx.  Defendant Solomon through NCDPS failed to implement security preparedness drills and training. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxi.  Defendant Solomon through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxii.  Defendant Solomon through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxiii.  Defendant Solomon through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxiv.  Defendant Solomon through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxv.  Defendant Solomon through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxvi.   Defendant Solomon through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxvii.  Defendant Solomon through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxviii. Defendant Solomon through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxix.   Defendant Solomon through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxx.    Defendant Solomon through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxxi.   Defendant Solomon through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxxii.  Defendant Solomon through NCDPS failed to update "post orders" for staff per industry standard. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxxiii. Defendant Solomon through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Solomon deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxxiv. Defendant Solomon through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Solomon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

189.     Defendant Solomon's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

190.     Had Defendant Solomon acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

191.     Further, it was foreseeable that Defendant Solomon's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

192.     As outlined above, Defendant Solomon acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          112

violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Solomon's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

193.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

194.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT XV
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## AS TO DEFENDANT W. DAVID GUICE

195.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

196.     Defendant, W. DAVID GUICE ("Defendant Guice") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Guice assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

197.     Defendant Guice is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Guice (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees

(specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

198.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Guice, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

199.    Unfortunately, Defendant Guice, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

200.    Defendant Guice intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

201.    Unfortunately, Defendant Guice's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command

at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

202.    The result of Defendant Guice's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

### COUNT XVI
### VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
### AS TO DEFENDANT, W. DAVID GUICE

203.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

204.    Defendant Guice is a "person" as defined under 42 U.S.C. § 1983.

205.    According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

206.      The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

207.      To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

208.      At all times relevant to the allegations in this complaint, Defendant Guice acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

209.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Guice's actions and inactions infringed upon that Right.

210.     Alternatively, Defendant Guice also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

211.     More specifically, Defendant Guice (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Guice directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

212.	The affirmative acts and/or deliberate inactions committed by

Defendant Guice include:

ccclxxxv.	DEFENDANT GUICE knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxxvi.	Defendant Guice was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

ccclxxxvii.	Defendant Guice knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxxviii.	Defendant Guice failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ccclxxxix.	The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Guice was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxc.	Defendant Guice knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Guice deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxci. Defendant Guice (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxcii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Guice and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxciii. Defendant Guice (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxciv. Defendant Guice knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxcv. Defendant Guice through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxcvi. Defendant Guice's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxcvii. Defendant Guice through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory

time at Pasquotank Correctional Institution. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxcviii.   Defendant Guice failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cccxcix.   Defendant Guice failed to properly staff critical positions. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cd.   Defendant Guice through NCDPS failed to properly monitor inmate movement. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdi.   Defendant Guice through NCDPS failed to properly search for offenders within the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdii.   Defendant Guice through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdiii.   Defendant Guice, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdiv.   Defendant Guice, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdv.	Defendant Guice through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdvi.	Defendant Guice through NCDPS failed to conduct adequate inmate searches. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdvii.	Defendant Guice through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdviii.	Defendant Guice through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdix.	Defendant Guice through NCDPS failed to implement adequate control center operations. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdx.	Defendant Guice through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxi.	Defendant Guice through NCDPS failed to implement adequate hazard material management. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxii.	Defendant Guice through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxiii.    Defendant Guice through NCDPS failed to implement adequate key control management. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxiv.    Defendant Guice through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxv.    Defendant Guice through NCDPS failed to implement adequate security inspections. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxvi.    Defendant Guice through NCDPS failed to implement adequate emergency management plans and responses. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxvii.    Defendant Guice through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxviii.    Defendant Guice through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxix.    Defendant Guice through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxx.    Defendant Guice through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxi.      Defendant Guice through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxii.     Defendant Guice through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxiii.    Defendant Guice through NCDPS failed to document searches on the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxiv.     Defendant Guice through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxv.      Defendant Guice through NCDPS failed to implement security preparedness drills and training. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxvi.     Defendant Guice through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxvii.    Defendant Guice through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxviii.   Defendant Guice through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxix.    Defendant Guice through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxx.    Defendant Guice through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxi.    Defendant Guice through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxii.    Defendant Guice through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxiii.    Defendant Guice through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxiv.    Defendant Guice through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxv.    Defendant Guice through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxvi.    Defendant Guice through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxvii. Defendant Guice through NCDPS failed to update "post orders" for staff per industry standard. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxviii. Defendant Guice through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxxxix. Defendant Guice through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Guice deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

213. Defendant Guice's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

214. Had Defendant Guice acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

215.	Further, it was foreseeable that Defendant Guice's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

216.	As outlined above, Defendant Guice acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Guice's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

217.	The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

218.	Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to

the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XVII**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT FELIX TAYLOR**

219.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

220.     Defendant, FELIX TAYLOR ("Defendant Taylor") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Taylor assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

221.     Defendant Taylor is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident

also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Taylor (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

222.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Taylor, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

223.    Unfortunately, Defendant Taylor, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank

Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

224.     Defendant Taylor intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

225.     Unfortunately, Defendant Taylor's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

226.     The result of Defendant Taylor's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XVIII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, FELIX TAYLOR**

227.          Plaintiffs hereby incorporate by reference all preceding

paragraphs as though fully set forth herein.

228.     Defendant Taylor is a "person" as defined under 42 U.S.C. § 1983.

229.     According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

230.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

231.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted

"affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

232.    At all times relevant to the allegations in this complaint, Defendant Taylor acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

233.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Taylor's actions and inactions infringed upon that Right.

234.    Alternatively, Defendant Taylor also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

235.    More specifically, Defendant Taylor (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections

Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Taylor directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

236.     The affirmative acts and/or deliberate inactions committed by Defendant Taylor include:

cdxl.     DEFENDANT TAYLOR knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxli.     Defendant Taylor was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

cdxlii.     Defendant Taylor knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxliii.     Defendant Taylor failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Taylor deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxliv.    The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Taylor was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxlv.    Defendant Taylor knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxlvi.    Defendant Taylor (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxlvii.    The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Taylor and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxlviii.    Defendant Taylor (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxlix.    Defendant Taylor knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdl.    Defendant Taylor through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Taylor deliberately failed

to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdli. Defendant Taylor's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlii. Defendant Taylor through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdliii. Defendant Taylor failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdliv. Defendant Taylor failed to properly staff critical positions. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlv. Defendant Taylor through NCDPS failed to properly monitor inmate movement. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlvi. Defendant Taylor through NCDPS failed to properly search for offenders within the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlvii. Defendant Taylor through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlviii.   Defendant Taylor, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlix.   Defendant Taylor, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlx.   Defendant Taylor through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxi.   Defendant Taylor through NCDPS failed to conduct adequate inmate searches. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxii.   Defendant Taylor through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxiii.   Defendant Taylor through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxiv.   Defendant Taylor through NCDPS failed to implement adequate control center operations. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxv.   Defendant Taylor through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take

any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxvi. Defendant Taylor through NCDPS failed to implement adequate hazard material management. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxvii. Defendant Taylor through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxviii. Defendant Taylor through NCDPS failed to implement adequate key control management. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxix. Defendant Taylor through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxx. Defendant Taylor through NCDPS failed to implement adequate security inspections. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxi. Defendant Taylor through NCDPS failed to implement adequate emergency management plans and responses. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxii. Defendant Taylor through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxiii. Defendant Taylor through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxiv.     Defendant Taylor through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxv.      Defendant Taylor through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxvi.     Defendant Taylor through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxvii.    Defendant Taylor through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxviii.   Defendant Taylor through NCDPS failed to document searches on the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxix.     Defendant Taylor through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxx.      Defendant Taylor through NCDPS failed to implement security preparedness drills and training. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxi.     Defendant Taylor through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant Taylor deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxii.    Defendant Taylor through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxiii.    Defendant Taylor through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxiv.    Defendant Taylor through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxv.    Defendant Taylor through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxvi.    Defendant Taylor through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxvii.    Defendant Taylor through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxviii.    Defendant Taylor through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdlxxxix. Defendant Taylor through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxc. Defendant Taylor through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxci. Defendant Taylor through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxcii. Defendant Taylor through NCDPS failed to update "post orders" for staff per industry standard. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxciii. Defendant Taylor through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxciv. Defendant Taylor through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Taylor deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

237. Defendant Taylor's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

238.    Had Defendant Taylor acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

239.    Further, it was foreseeable that Defendant Taylor's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

240.    As outlined above, Defendant Taylor acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Taylor's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life,

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 141 of 609

each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

241.    The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

242.    Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XIX**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT COLBERT RESPASS**

243.    Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

244.    Defendant, COLBERT RESPASS ("Defendant Respass") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North

Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Respass assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

245.    Defendant Respass is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Respass (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

246.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Respass, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional

officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

247.     Unfortunately, Defendant Respass, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

248.     Defendant Respass intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

249.     Unfortunately, Defendant Respass's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

250.    The result of Defendant Respass's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

### COUNT XX
### VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
### AS TO DEFENDANT, COLBERT RESPASS

251.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

252.    Defendant Respass is a "person" as defined under 42 U.S.C. § 1983.

253.    According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

254.    The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 145 of 609

state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

255.    To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

256.    At all times relevant to the allegations in this complaint, Defendant Respass acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

257.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Officers at Pasquotank Correctional Institution and Defendant Respass's actions and inactions infringed upon that Right.

258. Alternatively, Defendant Respass also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

259. More specifically, Defendant Respass (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Respass directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

260. The affirmative acts and/or deliberate inactions committed by Defendant Respass include:

cdxcv. DEFENDANT RESPASS knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxcvi. Defendant Respass was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

cdxcvii.    Defendant Respass knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxcviii.   Defendant Respass failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cdxcix.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Respass was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

d.      Defendant Respass knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

di.     Defendant Respass (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dii.    The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Respass and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

diii.   Defendant Respass (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

div.   Defendant Respass knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dv.   Defendant Respass through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dvi.   Defendant Respass's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dvii.   Defendant Respass through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dviii.   Defendant Respass failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dix.   Defendant Respass failed to properly staff critical positions. Defendant Respass deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dx. Defendant Respass through NCDPS failed to properly monitor inmate movement. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxi. Defendant Respass through NCDPS failed to properly search for offenders within the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxii. Defendant Respass through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxiii. Defendant Respass, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxiv. Defendant Respass, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxv. Defendant Respass through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxvi. Defendant Respass through NCDPS failed to conduct adequate inmate searches. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxvii. Defendant Respass through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxviii.  Defendant Respass through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxix.  Defendant Respass through NCDPS failed to implement adequate control center operations. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxx.  Defendant Respass through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxi.  Defendant Respass through NCDPS failed to implement adequate hazard material management. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxii.  Defendant Respass through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxiii.  Defendant Respass through NCDPS failed to implement adequate key control management. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxiv.  Defendant Respass through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxv.  Defendant Respass through NCDPS failed to implement adequate security inspections. Defendant Respass deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxvi. Defendant Respass through NCDPS failed to implement adequate emergency management plans and responses. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxvii. Defendant Respass through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxviii. Defendant Respass through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxix. Defendant Respass through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxx. Defendant Respass through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxi. Defendant Respass through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxii. Defendant Respass through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxiii. Defendant Respass through NCDPS failed to document searches on the subject premises. Defendant Respass deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxiv. Defendant Respass through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxv. Defendant Respass through NCDPS failed to implement security preparedness drills and training. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxvi. Defendant Respass through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxvii. Defendant Respass through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxviii. Defendant Respass through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxxxix. Defendant Respass through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxl. Defendant Respass through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxli.    Defendant Respass through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxlii.    Defendant Respass through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxliii.    Defendant Respass through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxliv.    Defendant Respass through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxlv.    Defendant Respass through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxlvi.    Defendant Respass through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxlvii.    Defendant Respass through NCDPS failed to update "post orders" for staff per industry standard. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxlviii.    Defendant Respass through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Respass deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxlix. Defendant Respass through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Respass deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

261. Defendant Respass's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

262. Had Defendant Respass acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

263. Further, it was foreseeable that Defendant Respass's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

264. As outlined above, Defendant Respass acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in

violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Respass's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

265. The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

266. Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT XXI
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## AS TO DEFENDANT FAY D. LASSITER

267. Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

268. Defendant, FAY D. LASSITER ("Defendant Lassiter") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant F. Lassiter assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

269. Defendant F. Lassiter is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant F. Lassiter (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 157 of 609

Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

270.    As Chief Executive Officer and/or Governor of North Carolina, Defendant F. Lassiter, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

271.    Unfortunately, Defendant F. Lassiter, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

272.    Defendant F. Lassiter intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

273.     Unfortunately, Defendant F. Lassiter's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

274.     The result of Defendant F. Lassiter's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

## COUNT XXII
## VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
## AS TO DEFENDANT, FAY LASSITER

275.      Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

276.      Defendant F. Lassiter is a "person" as defined under 42 U.S.C. § 1983.

277.      According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

278.        The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist*, 648 F.3d 965, 971–72 (9th Cir.2001).

279.        To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

280.		At all times relevant to the allegations in this complaint, Defendant F. Lassiter acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

281.		As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant F. Lassiter's actions and inactions infringed upon that Right.

282.		Alternatively, Defendant F. Lassiter also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

283.		More specifically, Defendant F. Lassiter (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant F. Lassiter directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing

requirements and minimized access to adequate resources to increase revenues and

profits from the merchandise produced by the Sewing Plant.

284.     The affirmative acts and/or deliberate inactions committed by

Defendant F. Lassiter include:

dl.     DEFENDANT F. LASSITER knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dli.     Defendant F. Lassiter was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

dlii.     Defendant F. Lassiter knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dliii.     Defendant F. Lassiter failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dliv.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant F. Lassiter was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlv.    Defendant F. Lassiter knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlvi.   Defendant F. Lassiter (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlvii.  The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant F. Lassiter and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlviii. Defendant F. Lassiter (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlix.   Defendant F. Lassiter knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlx.    Defendant F. Lassiter through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxi.   Defendant F. Lassiter's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel

wrongdoing thereby failing to deter same from recurrence. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxii.    Defendant F. Lassiter through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxiii.   Defendant F. Lassiter failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxiv.    Defendant F. Lassiter failed to properly staff critical positions. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxv.     Defendant F. Lassiter through NCDPS failed to properly monitor inmate movement. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxvi.    Defendant F. Lassiter through NCDPS failed to properly search for offenders within the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxvii.   Defendant F. Lassiter through NCDPS failed to properly staff designated search areas within the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxviii.  Defendant F. Lassiter, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxix.    Defendant F. Lassiter, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxx.    Defendant F. Lassiter through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxi.    Defendant F. Lassiter through NCDPS failed to conduct adequate inmate searches. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxii.    Defendant F. Lassiter through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxiii.    Defendant F. Lassiter through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxiv.    Defendant F. Lassiter through NCDPS failed to implement adequate control center operations. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxv.    Defendant F. Lassiter through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxvi.    Defendant F. Lassiter through NCDPS failed to implement adequate hazard material management. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxvii.    Defendant F. Lassiter through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxviii.   Defendant F. Lassiter through NCDPS failed to implement adequate key control management. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxix.     Defendant F. Lassiter through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxx.      Defendant F. Lassiter through NCDPS failed to implement adequate security inspections. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxi.     Defendant F. Lassiter through NCDPS failed to implement adequate emergency management plans and responses. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxii.    Defendant F. Lassiter through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxiii.   Defendant F. Lassiter through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxiv.    Defendant F. Lassiter through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because

doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxv.     Defendant F. Lassiter through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxvi.    Defendant F. Lassiter through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxvii.   Defendant F. Lassiter through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxviii.  Defendant F. Lassiter through NCDPS failed to document searches on the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dlxxxix.    Defendant F. Lassiter through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxc.        Defendant F. Lassiter through NCDPS failed to implement security preparedness drills and training. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxci.       Defendant F. Lassiter through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxcii.      Defendant F. Lassiter through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant F.

Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxciii. Defendant F. Lassiter through NCDPS failed to discontinue security notifications due to broken equipment. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxciv. Defendant F. Lassiter through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxcv. Defendant F. Lassiter through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxcvi. Defendant F. Lassiter through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxcvii. Defendant F. Lassiter through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxcviii. Defendant F. Lassiter through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dxcix. Defendant F. Lassiter through NCDPS negligently implemented Conflicting "security key" control policies. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dc.  Defendant F. Lassiter through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dci.  Defendant F. Lassiter through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcii.  Defendant F. Lassiter through NCDPS failed to update "post orders" for staff per industry standard. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dciii.  Defendant F. Lassiter through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dciv.  Defendant F. Lassiter through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant F. Lassiter deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

285.  Defendant F. Lassiter's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

286.  Had Defendant F. Lassiter acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately

suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

287.     Further, it was foreseeable that Defendant F. Lassiter's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

288.     As outlined above, Defendant F. Lassiter acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant F. Lassiter's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

289.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

290.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT XXIII
### VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
### AS TO DEFENDANT NICOLE SULLIVAN

291.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

292.     Defendant, NICOLE SULLIVAN ("Defendant Sullivan") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Sullivan assumed the ultimate supervisory

position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

293.     Defendant Sullivan is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Sullivan (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

294.     As Chief Executive Officer and/or Governor of North Carolina, Defendant Sullivan, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

295.    Unfortunately, Defendant Sullivan, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

296.    Defendant Sullivan intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

297.    Unfortunately, Defendant Sullivan's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

298.    The result of Defendant Sullivan's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank

Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XXIV**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, NICOLE SULLIVAN**

299.      Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

300.      Defendant Sullivan is a "person" as defined under 42 U.S.C. § 1983.

301.      According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

302.      The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 174 of 609

303.	To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

304.	At all times relevant to the allegations in this complaint, Defendant Sullivan acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

305.	As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Sullivan's actions and inactions infringed upon that Right.

306.        Alternatively, Defendant Sullivan also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

307.        More specifically, Defendant Sullivan (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Sullivan directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

308.        The affirmative acts and/or deliberate inactions committed by Defendant Sullivan include:

dcv.    DEFENDANT SULLIVAN knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcvi.    Defendant Sullivan was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

dcvii.    Defendant Sullivan knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security

inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcviii.   Defendant Sullivan failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcix.   The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Sullivan was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcx.   Defendant Sullivan knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxi.   Defendant Sullivan (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxii.   The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Sullivan and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxiii.   Defendant Sullivan (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the

subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxiv.     Defendant Sullivan knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxv.     Defendant Sullivan through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxvi.     Defendant Sullivan's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxvii.     Defendant Sullivan through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxviii.     Defendant Sullivan failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxix.     Defendant Sullivan failed to properly staff critical positions. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxx.     Defendant Sullivan through NCDPS failed to properly monitor inmate movement. Defendant Sullivan deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxi. Defendant Sullivan through NCDPS failed to properly search for offenders within the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxii. Defendant Sullivan through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxiii. Defendant Sullivan, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxiv. Defendant Sullivan, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxv. Defendant Sullivan through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxvi. Defendant Sullivan through NCDPS failed to conduct adequate inmate searches. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxvii. Defendant Sullivan through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxviii.  Defendant Sullivan through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxix.  Defendant Sullivan through NCDPS failed to implement adequate control center operations. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxx.  Defendant Sullivan through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxi.  Defendant Sullivan through NCDPS failed to implement adequate hazard material management. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxii.  Defendant Sullivan through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxiii.  Defendant Sullivan through NCDPS failed to implement adequate key control management. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxiv.  Defendant Sullivan through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxv.  Defendant Sullivan through NCDPS failed to implement adequate security inspections. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxvi.   Defendant Sullivan through NCDPS failed to implement adequate emergency management plans and responses. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxvii.   Defendant Sullivan through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxviii.   Defendant Sullivan through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxxxix.   Defendant Sullivan through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxl.   Defendant Sullivan through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxli.   Defendant Sullivan through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxlii.   Defendant Sullivan through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxliii.   Defendant Sullivan through NCDPS failed to document searches on the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxliv.    Defendant Sullivan through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxlv.    Defendant Sullivan through NCDPS failed to implement security preparedness drills and training. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxlvi.    Defendant Sullivan through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxlvii.    Defendant Sullivan through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxlviii.    Defendant Sullivan through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxlix.    Defendant Sullivan through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcl.    Defendant Sullivan through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcli.    Defendant Sullivan through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Sullivan deliberately failed to take any actions to direct

or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclii. Defendant Sullivan through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcliii. Defendant Sullivan through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcliv. Defendant Sullivan through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclv. Defendant Sullivan through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclvi. Defendant Sullivan through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclvii. Defendant Sullivan through NCDPS failed to update "post orders" for staff per industry standard. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclviii. Defendant Sullivan through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclix. Defendant Sullivan through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant

Sullivan deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

309.     Defendant Sullivan's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

310.     Had Defendant Sullivan acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

311.     Further, it was foreseeable that Defendant Sullivan's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

312.     As outlined above, Defendant Sullivan acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 184 of 609

relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Sullivan's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

313.    The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

314.    Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XXV**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT ANNIE HARVEY**

315.    Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

316.     Defendant, ANNIE HARVEY ("Defendant Harvey") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Harvey assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

317.     Defendant Harvey is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Harvey (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments

while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

318.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Harvey, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

319.    Unfortunately, Defendant Harvey, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

320.    Defendant Harvey intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

321.    Unfortunately, Defendant Harvey's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for

operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

322.     The result of Defendant Harvey's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XXVI**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, ANNIE HARVEY**

323.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

324.     Defendant Harvey is a "person" as defined under 42 U.S.C. § 1983.

325.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

326.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

327.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

328.     At all times relevant to the allegations in this complaint, Defendant Harvey acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution,

and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

329. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Harvey's actions and inactions infringed upon that Right.

330. Alternatively, Defendant Harvey also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

331. More specifically, Defendant Harvey (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Harvey directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

332. The affirmative acts and/or deliberate inactions committed by Defendant Harvey include:

dclx.    DEFENDANT HARVEY knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 190 of 609

standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxi. Defendant Harvey was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

dclxii. Defendant Harvey knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxiii. Defendant Harvey failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxiv. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Harvey was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxv. Defendant Harvey knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxvi. Defendant Harvey (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Harvey deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxvii.   The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Harvey and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxviii.   Defendant Harvey (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxix.   Defendant Harvey knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxx.   Defendant Harvey through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxi.   Defendant Harvey's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxii.   Defendant Harvey through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxiii.    Defendant Harvey failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxiv.    Defendant Harvey failed to properly staff critical positions. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxv.    Defendant Harvey through NCDPS failed to properly monitor inmate movement. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxvi.    Defendant Harvey through NCDPS failed to properly search for offenders within the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxvii.    Defendant Harvey through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxviii.    Defendant Harvey, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxix.    Defendant Harvey, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxx.    Defendant Harvey through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Harvey deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxi. Defendant Harvey through NCDPS failed to conduct adequate inmate searches. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxii. Defendant Harvey through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxiii. Defendant Harvey through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxiv. Defendant Harvey through NCDPS failed to implement adequate control center operations. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxv. Defendant Harvey through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxvi. Defendant Harvey through NCDPS failed to implement adequate hazard material management. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxvii. Defendant Harvey through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxviii. Defendant Harvey through NCDPS failed to implement adequate key control management. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dclxxxix.   Defendant Harvey through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxc.   Defendant Harvey through NCDPS failed to implement adequate security inspections. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxci.   Defendant Harvey through NCDPS failed to implement adequate emergency management plans and responses. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxcii.   Defendant Harvey through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxciii.   Defendant Harvey through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxciv.   Defendant Harvey through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxcv.   Defendant Harvey through NCDPS failed to staff critical monitoring stations in the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxcvi.   Defendant Harvey through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxcvii.    Defendant Harvey through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxcviii.   Defendant Harvey through NCDPS failed to document searches on the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcxcix.     Defendant Harvey through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcc.        Defendant Harvey through NCDPS failed to implement security preparedness drills and training. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcci.       Defendant Harvey through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccii.      Defendant Harvey through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcciii.     Defendant Harvey through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcciv.      Defendant Harvey through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccv.    Defendant Harvey through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccvi.   Defendant Harvey through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccvii.  Defendant Harvey through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccviii. Defendant Harvey through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccix.   Defendant Harvey through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccx.    Defendant Harvey through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxi.   Defendant Harvey through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxii.  Defendant Harvey through NCDPS failed to update "post orders" for staff per industry standard. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because

doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxiii.    Defendant Harvey through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxiv.    Defendant Harvey through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Harvey deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

333.    Defendant Harvey's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

334.    Had Defendant Harvey acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

335.    Further, it was foreseeable that Defendant Harvey's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          198

implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

336.     As outlined above, Defendant Harvey acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Harvey's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

337.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

338.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled

to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XXVII**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT JOSEPH HARRELL**

339.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

340.     Defendant, JOSEPH HARRELL ("Defendant Harrell") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Harrell assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

341.     Defendant Harrell is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title

and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Harrell (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

342.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Harrell, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

343.    Unfortunately, Defendant Harrell, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

344.    Defendant Harrell intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

345.    Unfortunately, Defendant Harrell's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

346.    The result of Defendant Harrell's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XXVIII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, JOSEPH HARRELL**

347.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

348.    Defendant Harrell is a "person" as defined under 42 U.S.C. §

1983.

349.     According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

350.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

351.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.)

The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

352.    At all times relevant to the allegations in this complaint, Defendant Harrell acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

353.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Harrell's actions and inactions infringed upon that Right.

354.    Alternatively, Defendant Harrell also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

355.    More specifically, Defendant Harrell (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own

discretionary fund. In doing so, Defendant Harrell directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

356.     The affirmative acts and/or deliberate inactions committed by Defendant Harrell include:

dccxv.     DEFENDANT HARRELL knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxvi.     Defendant Harrell was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

dccxvii.     Defendant Harrell knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxviii.     Defendant Harrell failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxix.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Harrell was well aware the subject

premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxx. Defendant Harrell knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxi. Defendant Harrell (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Harrell and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxiii. Defendant Harrell (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxiv. Defendant Harrell knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxv. Defendant Harrell through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxvi.      Defendant Harrell's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxvii.     Defendant Harrell through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxviii.    Defendant Harrell failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxix.      Defendant Harrell failed to properly staff critical positions. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxx.       Defendant Harrell through NCDPS failed to properly monitor inmate movement. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxi.      Defendant Harrell through NCDPS failed to properly search for offenders within the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxii.     Defendant Harrell through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxiii.    Defendant Harrell, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Harrell deliberately

failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxiv. Defendant Harrell, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxv. Defendant Harrell through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxvi. Defendant Harrell through NCDPS failed to conduct adequate inmate searches. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxvii. Defendant Harrell through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxviii. Defendant Harrell through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxxxix. Defendant Harrell through NCDPS failed to implement adequate control center operations. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxl. Defendant Harrell through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxli. Defendant Harrell through NCDPS failed to implement adequate hazard material management. Defendant Harrell deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxlii.    Defendant Harrell through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxliii.   Defendant Harrell through NCDPS failed to implement adequate key control management. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxliv.    Defendant Harrell through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxlv.     Defendant Harrell through NCDPS failed to implement adequate security inspections. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxlvi.    Defendant Harrell through NCDPS failed to implement adequate emergency management plans and responses. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxlvii.   Defendant Harrell through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxlviii.  Defendant Harrell through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxlix.    Defendant Harrell through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Harrell deliberately failed to take any actions to direct

or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccl. Defendant Harrell through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccli. Defendant Harrell through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclii. Defendant Harrell through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccliii. Defendant Harrell through NCDPS failed to document searches on the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccliv. Defendant Harrell through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclv. Defendant Harrell through NCDPS failed to implement security preparedness drills and training. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclvi. Defendant Harrell through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclvii. Defendant Harrell through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclviii. Defendant Harrell through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclix. Defendant Harrell through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclx. Defendant Harrell through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxi. Defendant Harrell through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxii. Defendant Harrell through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxiii. Defendant Harrell through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxiv. Defendant Harrell through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxv.   Defendant Harrell through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxvi.  Defendant Harrell through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxvii. Defendant Harrell through NCDPS failed to update "post orders" for staff per industry standard. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxviii. Defendant Harrell through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxix.  Defendant Harrell through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Harrell deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

357.     Defendant Harrell's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

358.     Had Defendant Harrell acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately

suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

359. Further, it was foreseeable that Defendant Harrell's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

360. As outlined above, Defendant Harrell acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Harrell's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

361.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

362.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT XXIX
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM
COMMITTED BY A THIRD PARTY
<u>AS TO DEFENDANT MARQUIS BETZ</u>**

363.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

364.     Defendant, MARQUIS BETZ ("Defendant Betz") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Betz assumed the ultimate supervisory position

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 214 of 609

of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

365.     Defendant Betz is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Betz (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

366.     As Chief Executive Officer and/or Governor of North Carolina, Defendant Betz, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

367.    Unfortunately, Defendant Betz, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

368.    Defendant Betz intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

369.    Unfortunately, Defendant Betz's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

370.    The result of Defendant Betz's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank

Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

## COUNT XXX
## VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
## AS TO DEFENDANT, MARQUIS BETZ

371.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

372.     Defendant Betz is a "person" as defined under 42 U.S.C. § 1983.

373.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

374.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

375.        To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

376.        At all times relevant to the allegations in this complaint, Defendant Betz acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

377.        As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Betz's actions and inactions infringed upon that Right.

378.     Alternatively, Defendant Betz also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

379.     More specifically, Defendant Betz (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Betz directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

380.     The affirmative acts and/or deliberate inactions committed by Defendant Betz include:

dcclxx.     DEFENDANT BETZ knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxi.     Defendant Betz was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

dcclxxii.     Defendant Betz knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies

and were incongruent with NCDPS' policies and procedures. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxiii.     Defendant Betz failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxiv.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Betz was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxv.     Defendant Betz knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxvi.     Defendant Betz (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxvii.     The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Betz and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxviii.     Defendant Betz (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Betz deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxix. Defendant Betz knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxx. Defendant Betz through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxi. Defendant Betz's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxii. Defendant Betz through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxiii. Defendant Betz failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxiv. Defendant Betz failed to properly staff critical positions. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxv. Defendant Betz through NCDPS failed to properly monitor inmate movement. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxvi. Defendant Betz through NCDPS failed to properly search for offenders within the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxvii. Defendant Betz through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxviii. Defendant Betz, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcclxxxix. Defendant Betz, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxc. Defendant Betz through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxci. Defendant Betz through NCDPS failed to conduct adequate inmate searches. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxcii. Defendant Betz through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxciii. Defendant Betz through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxciv. Defendant Betz through NCDPS failed to implement adequate control center operations. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxcv. Defendant Betz through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxcvi. Defendant Betz through NCDPS failed to implement adequate hazard material management. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxcvii. Defendant Betz through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxcviii. Defendant Betz through NCDPS failed to implement adequate key control management. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccxcix. Defendant Betz through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccc. Defendant Betz through NCDPS failed to implement adequate security inspections. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccci. Defendant Betz through NCDPS failed to implement adequate emergency management plans and responses. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccii.   Defendant Betz through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccciii.  Defendant Betz through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccciv.   Defendant Betz through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccv.    Defendant Betz through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccvi.   Defendant Betz through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccvii.  Defendant Betz through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccviii. Defendant Betz through NCDPS failed to document searches on the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccix.   Defendant Betz through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          224

dcccx.     Defendant Betz through NCDPS failed to implement security preparedness drills and training. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxi.    Defendant Betz through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxii.   Defendant Betz through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxiii.  Defendant Betz through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxiv.   Defendant Betz through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxv.    Defendant Betz through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxvi.   Defendant Betz through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxvii.  Defendant Betz through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxviii.    Defendant Betz through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxix.    Defendant Betz through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxx.    Defendant Betz through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxi.    Defendant Betz through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxii.    Defendant Betz through NCDPS failed to update "post orders" for staff per industry standard. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxiii.    Defendant Betz through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxiv.    Defendant Betz through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Betz deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

381.    Defendant Betz's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to

the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

382.     Had Defendant Betz acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

383.     Further, it was foreseeable that Defendant Betz's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

384.     As outlined above, Defendant Betz acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Betz's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises,

were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

385.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

386.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT XXXI
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## <u>AS TO DEFENDANT KAREN BROWN</u>

387.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

388.     Defendant, KAREN BROWN ("Defendant Brown") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific

and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Brown assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

389. Defendant Brown is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Brown (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

390. As Chief Executive Officer and/or Governor of North Carolina, Defendant Brown, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and

position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

391. Unfortunately, Defendant Brown, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

392. Defendant Brown intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

393. Unfortunately, Defendant Brown's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of

labor employing North Carolina's custodial inmates to preform those production efforts.

394.    The result of Defendant Brown's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

## COUNT XXXIII
## VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
## AS TO DEFENDANT, KAREN BROWN

395.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

396.    Defendant Brown is a "person" as defined under 42 U.S.C. § 1983.

397.    According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

398.    The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-

relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

399.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

400.     At all times relevant to the allegations in this complaint, Defendant Brown acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

401.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 232 of 609

had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Brown's actions and inactions infringed upon that Right.

402.     Alternatively, Defendant Brown also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

403.     More specifically, Defendant Brown (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Brown directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

404.     The affirmative acts and/or deliberate inactions committed by Defendant Brown include:

dcccxxv.     DEFENDANT BROWN knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxvi.     Defendant Brown was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations

dcccxxvii. Defendant Brown knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxviii. Defendant Brown failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxix. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Brown was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxx. Defendant Brown knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxi. Defendant Brown (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Brown and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxiii. Defendant Brown (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxiv. Defendant Brown knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxv. Defendant Brown through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxvi. Defendant Brown's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxvii. Defendant Brown through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxviii. Defendant Brown failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxxxix. Defendant Brown failed to properly staff critical positions. Defendant Brown deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxl.     Defendant Brown through NCDPS failed to properly monitor inmate movement. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxli.    Defendant Brown through NCDPS failed to properly search for offenders within the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxlii.   Defendant Brown through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxliii.  Defendant Brown, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxliv.   Defendant Brown, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxlv.    Defendant Brown through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxlvi.   Defendant Brown through NCDPS failed to conduct adequate inmate searches. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxlvii.  Defendant Brown through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxlviii.   Defendant Brown through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxlix.   Defendant Brown through NCDPS failed to implement adequate control center operations. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccl.   Defendant Brown through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccli.   Defendant Brown through NCDPS failed to implement adequate hazard material management. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclii.   Defendant Brown through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccliii.   Defendant Brown through NCDPS failed to implement adequate key control management. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccliv.   Defendant Brown through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclv.   Defendant Brown through NCDPS failed to implement adequate security inspections. Defendant Brown deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclvi. Defendant Brown through NCDPS failed to implement adequate emergency management plans and responses. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclvii. Defendant Brown through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclviii. Defendant Brown through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclix. Defendant Brown through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclx. Defendant Brown through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxi. Defendant Brown through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxii. Defendant Brown through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxiii. Defendant Brown through NCDPS failed to document searches on the subject premises. Defendant Brown deliberately failed to take any actions

to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxiv.    Defendant Brown through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxv.    Defendant Brown through NCDPS failed to implement security preparedness drills and training. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxvi.    Defendant Brown through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxvii.    Defendant Brown through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxviii.    Defendant Brown through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxix.    Defendant Brown through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxx.    Defendant Brown through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxi.    Defendant Brown through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security

keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxii. Defendant Brown through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxiii. Defendant Brown through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxiv. Defendant Brown through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxv. Defendant Brown through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxvi. Defendant Brown through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxvii. Defendant Brown through NCDPS failed to update "post orders" for staff per industry standard. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxviii. Defendant Brown through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxix.   Defendant Brown through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Brown deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

405.    Defendant Brown's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

406.    Had Defendant Brown acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

407.    Further, it was foreseeable that Defendant Brown's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

408.    As outlined above, Defendant Brown acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights

established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Brown's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

409.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

410.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XXXIII**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM
COMMITTED BY A THIRD PARTY
<u>AS TO DEFENDANT ROBERT LEON</u>**

411.    Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

412.    Defendant, ROBERT LEON ("Defendant Leon") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Leon assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

413.    Defendant Leon is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Leon (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by

Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

414.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Leon, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

415.    Unfortunately, Defendant Leon, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

416.    Defendant Leon intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

417.    Unfortunately, Defendant Leon's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution,

and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

418. The result of Defendant Leon's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XXXIV**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, ROBERT LEON**

419. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

420. Defendant Leon is a "person" as defined under 42 U.S.C. § 1983.

421. According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

422.    The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

423.    To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

424.    At all times relevant to the allegations in this complaint, Defendant Leon acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution,

and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

425. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Leon's actions and inactions infringed upon that Right.

426. Alternatively, Defendant Leon also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

427. More specifically, Defendant Leon (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Leon directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

428. The affirmative acts and/or deliberate inactions committed by Defendant Leon include:

dcccclxxx. DEFENDANT LEON knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry

standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxxi.    Defendant Leon was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

dccclxxxii.   Defendant Leon knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxxiii.  Defendant Leon failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxxiv.   The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Leon was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxxv.    Defendant Leon knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxxvi.   Defendant Leon (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Leon deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxxvii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Leon and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxxviii. Defendant Leon (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dccclxxxix. Defendant Leon knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxc. Defendant Leon through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxci. Defendant Leon's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxcii. Defendant Leon through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxciii.     Defendant Leon failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxciv.     Defendant Leon failed to properly staff critical positions. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxcv.     Defendant Leon through NCDPS failed to properly monitor inmate movement. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxcvi.     Defendant Leon through NCDPS failed to properly search for offenders within the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxcvii.     Defendant Leon through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxcviii.     Defendant Leon, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plant at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

dcccxcix.     Defendant Leon, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cm.     Defendant Leon through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Leon deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmi.  Defendant Leon through NCDPS failed to conduct adequate inmate searches. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmii.  Defendant Leon through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmiii.  Defendant Leon through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmiv.  Defendant Leon through NCDPS failed to implement adequate control center operations. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmv.  Defendant Leon through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmvi.  Defendant Leon through NCDPS failed to implement adequate hazard material management. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmvii.  Defendant Leon through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmviii.  Defendant Leon through NCDPS failed to implement adequate key control management. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmix.    Defendant Leon through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmx.    Defendant Leon through NCDPS failed to implement adequate security inspections. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxi.    Defendant Leon through NCDPS failed to implement adequate emergency management plans and responses. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxii.    Defendant Leon through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxiii.    Defendant Leon through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxiv.    Defendant Leon through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxv.    Defendant Leon through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxvi.    Defendant Leon through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxvii.    Defendant Leon through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxviii.   Defendant Leon through NCDPS failed to document searches on the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxix.     Defendant Leon through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxx.      Defendant Leon through NCDPS failed to implement security preparedness drills and training. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxi.     Defendant Leon through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxii.    Defendant Leon through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxiii.   Defendant Leon through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxiv.    Defendant Leon through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxv.    Defendant Leon through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxvi.   Defendant Leon through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxvii.  Defendant Leon through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxviii. Defendant Leon through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxix.   Defendant Leon through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxx.    Defendant Leon through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxxi.   Defendant Leon through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxxii.  Defendant Leon through NCDPS failed to update "post orders" for staff per industry standard. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because

doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxxiii.   Defendant Leon through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxxiv.   Defendant Leon through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Leon deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

429.      Defendant Leon's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

430.      Had Defendant Leon acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

431.      Further, it was foreseeable that Defendant Leon's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were

implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

432.     As outlined above, Defendant Leon acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Leon's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

433.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

434.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled

to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT XXXV
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## AS TO DEFENDANT JEFFREY BAKER

435. Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

436. Defendant, JEFFREY BAKER ("Defendant Baker") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Baker assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

437. Defendant Baker is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title

and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Baker (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

438. As Chief Executive Officer and/or Governor of North Carolina, Defendant Baker, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

439. Unfortunately, Defendant Baker, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

440.    Defendant Baker intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

441.    Unfortunately, Defendant Baker's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

442.    The result of Defendant Baker's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XXXVI**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**<u>AS TO DEFENDANT, JEFFREY BAKER</u>**

443.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

444.    Defendant Baker is a "person" as defined under 42 U.S.C. §

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND                259

1983.

445.    According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

446.    The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

447.    To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.)

The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

448.     At all times relevant to the allegations in this complaint, Defendant Baker acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

449.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Baker's actions and inactions infringed upon that Right.

450.     Alternatively, Defendant Baker also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

451.     More specifically, Defendant Baker (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own

discretionary fund. In doing so, Defendant Baker directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

452.    The affirmative acts and/or deliberate inactions committed by Defendant Baker include:

cmxxxv.    DEFENDANT BAKER knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxxvi.    Defendant Baker was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

cmxxxvii.    Defendant Baker knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxxviii.    Defendant Baker failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxxxix.    The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Baker was well aware the subject

premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxl.  Defendant Baker knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxli.  Defendant Baker (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxlii.  The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Baker and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxliii.  Defendant Baker (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxliv.  Defendant Baker knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxlv.  Defendant Baker through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxlvi. Defendant Baker's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxlvii. Defendant Baker through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxlviii. Defendant Baker failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxlix. Defendant Baker failed to properly staff critical positions. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cml. Defendant Baker through NCDPS failed to properly monitor inmate movement. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmli. Defendant Baker through NCDPS failed to properly search for offenders within the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlii. Defendant Baker through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmliii. Defendant Baker, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Baker deliberately failed

to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmliv.     Defendant Baker, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlv.      Defendant Baker through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlvi.     Defendant Baker through NCDPS failed to conduct adequate inmate searches. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlvii.    Defendant Baker through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlviii.   Defendant Baker through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlix.     Defendant Baker through NCDPS failed to implement adequate control center operations. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlx.      Defendant Baker through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxi.     Defendant Baker through NCDPS failed to implement adequate hazard material management. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because

doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxii.    Defendant Baker through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxiii.   Defendant Baker through NCDPS failed to implement adequate key control management. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxiv.   Defendant Baker through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxv.    Defendant Baker through NCDPS failed to implement adequate security inspections. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxvi.   Defendant Baker through NCDPS failed to implement adequate emergency management plans and responses. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxvii.  Defendant Baker through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxviii. Defendant Baker through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxix.   Defendant Baker through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Baker deliberately failed to take any actions to direct or

take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxx.     Defendant Baker through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxi.    Defendant Baker through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxii.   Defendant Baker through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxiii.  Defendant Baker through NCDPS failed to document searches on the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxiv.   Defendant Baker through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxv.    Defendant Baker through NCDPS failed to implement security preparedness drills and training. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxvi.   Defendant Baker through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxvii.  Defendant Baker through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxviii. Defendant Baker through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxix. Defendant Baker through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxx. Defendant Baker through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxi. Defendant Baker through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxii. Defendant Baker through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxiii. Defendant Baker through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxiv. Defendant Baker through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxv.    Defendant Baker through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxvi.   Defendant Baker through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxvii.  Defendant Baker through NCDPS failed to update "post orders" for staff per industry standard. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxviii. Defendant Baker through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmlxxxix.   Defendant Baker through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Baker deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

453.    Defendant Baker's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

454.    Had Defendant Baker acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately

suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

455. Further, it was foreseeable that Defendant Baker's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

456. As outlined above, Defendant Baker acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Baker's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

457.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

458.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

### COUNT XXXVII
### VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
### AS TO DEFENDANT RICHARD TURNER

459.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

460.     Defendant, RICHARD TURNER ("Defendant Turner") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Turner assumed the ultimate supervisory

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          271

position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

461.    Defendant Turner is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Turner (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

462.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Turner, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

463. Unfortunately, Defendant Turner, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

464. Defendant Turner intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

465. Unfortunately, Defendant Turner's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

466. The result of Defendant Turner's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank

Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XXXVIII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
<u>**AS TO DEFENDANT, RICHARD TURNER**</u>

467.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

468.     Defendant Turner is a "person" as defined under 42 U.S.C. § 1983.

469.     According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

470.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          274

471.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

472.     At all times relevant to the allegations in this complaint, Defendant Turner acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

473.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Turner's actions and inactions infringed upon that Right.

474.     Alternatively, Defendant Turner also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

475.     More specifically, Defendant Turner (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Turner directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

476.     The affirmative acts and/or deliberate inactions committed by Defendant Turner include:

cmxc.   DEFENDANT TURNER knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxci.   Defendant Turner was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

cmxcii.   Defendant Turner knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security

inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxciii.  Defendant Turner failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxciv.  The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Turner was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxcv.  Defendant Turner knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxcvi.  Defendant Turner (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxcvii.  The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Turner and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxcviii.  Defendant Turner (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Turner deliberately failed to take any actions

to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

cmxcix. Defendant Turner knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

m. Defendant Turner through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mi. Defendant Turner's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mii. Defendant Turner through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

miii. Defendant Turner failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

miv. Defendant Turner failed to properly staff critical positions. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mv. Defendant Turner through NCDPS failed to properly monitor inmate movement. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mvi. Defendant Turner through NCDPS failed to properly search for offenders within the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mvii. Defendant Turner through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mviii. Defendant Turner, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mix. Defendant Turner, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mx. Defendant Turner through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxi. Defendant Turner through NCDPS failed to conduct adequate inmate searches. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxii. Defendant Turner through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxiii. Defendant Turner through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxiv.   Defendant Turner through NCDPS failed to implement adequate control center operations. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxv.   Defendant Turner through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxvi.   Defendant Turner through NCDPS failed to implement adequate hazard material management. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxvii.   Defendant Turner through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxviii.   Defendant Turner through NCDPS failed to implement adequate key control management. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxix.   Defendant Turner through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxx.   Defendant Turner through NCDPS failed to implement adequate security inspections. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxi.   Defendant Turner through NCDPS failed to implement adequate emergency management plans and responses. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxii.      Defendant Turner through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxiii.     Defendant Turner through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxiv.      Defendant Turner through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxv.       Defendant Turner through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxvi.      Defendant Turner through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxvii.     Defendant Turner through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxviii.    Defendant Turner through NCDPS failed to document searches on the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxix.      Defendant Turner through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxx. Defendant Turner through NCDPS failed to implement security preparedness drills and training. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxi. Defendant Turner through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxii. Defendant Turner through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxiii. Defendant Turner through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxiv. Defendant Turner through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxv. Defendant Turner through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxvi. Defendant Turner through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxvii. Defendant Turner through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxviii.   Defendant Turner through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxxxix.   Defendant Turner through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxl.   Defendant Turner through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxli.   Defendant Turner through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxlii.   Defendant Turner through NCDPS failed to update "post orders" for staff per industry standard. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxliii.   Defendant Turner through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxliv.   Defendant Turner through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Turner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

477.   Defendant Turner's acts and/or deliberate inactions created a

risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody"

inmates were able to gain unfettered access to dangerous tools and objects due to

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          283

the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

478.     Had Defendant Turner acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

479.     Further, it was foreseeable that Defendant Turner's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

480.     As outlined above, Defendant Turner acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Turner's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject

premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

481.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

482.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XXXIX**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT LORIS SUTTON**

483.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

484.     Defendant, LORIS SUTTON ("Defendant Sutton") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific

and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Sutton assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

485.     Defendant Sutton is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Sutton (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

486.     As Chief Executive Officer and/or Governor of North Carolina, Defendant Sutton, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and

position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

487.    Unfortunately, Defendant Sutton, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

488.    Defendant Sutton intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

489.    Unfortunately, Defendant Sutton's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of

labor employing North Carolina's custodial inmates to preform those production efforts.

490.     The result of Defendant Sutton's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XL**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, LORIS SUTTON**

491.      Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

492.      Defendant Sutton is a "person" as defined under 42 U.S.C. § 1983.

493.      According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

494.      The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-

relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

495.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

496.     At all times relevant to the allegations in this complaint, Defendant Sutton acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

497.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they

had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Sutton's actions and inactions infringed upon that Right.

498.     Alternatively, Defendant Sutton also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

499.     More specifically, Defendant Sutton (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Sutton directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

500.     The affirmative acts and/or deliberate inactions committed by Defendant Sutton include:

mxlv.     DEFENDANT SUTTON knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxlvi.     Defendant Sutton was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations

mxlvii. Defendant Sutton knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxlviii. Defendant Sutton failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxlix. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Sutton was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ml. Defendant Sutton knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mli. Defendant Sutton (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Sutton and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mliii.     Defendant Sutton (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mliv.     Defendant Sutton knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlv.     Defendant Sutton through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations*.*

mlvi.     Defendant Sutton's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlvii.     Defendant Sutton through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlviii.     Defendant Sutton failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlix.     Defendant Sutton failed to properly staff critical positions. Defendant Sutton deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlx.   Defendant Sutton through NCDPS failed to properly monitor inmate movement. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxi.   Defendant Sutton through NCDPS failed to properly search for offenders within the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxii.   Defendant Sutton through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxiii.   Defendant Sutton, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxiv.   Defendant Sutton, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxv.   Defendant Sutton through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxvi.   Defendant Sutton through NCDPS failed to conduct adequate inmate searches. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxvii.   Defendant Sutton through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxviii.  Defendant Sutton through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxix.  Defendant Sutton through NCDPS failed to implement adequate control center operations. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxx.  Defendant Sutton through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxi.  Defendant Sutton through NCDPS failed to implement adequate hazard material management. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxii.  Defendant Sutton through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxiii.  Defendant Sutton through NCDPS failed to implement adequate key control management. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxiv.  Defendant Sutton through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxv.  Defendant Sutton through NCDPS failed to implement adequate security inspections. Defendant Sutton deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxvi.  Defendant Sutton through NCDPS failed to implement adequate emergency management plans and responses. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxvii.  Defendant Sutton through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxviii.  Defendant Sutton through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxix.  Defendant Sutton through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxx.  Defendant Sutton through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxi.  Defendant Sutton through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxii.  Defendant Sutton through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxiii.  Defendant Sutton through NCDPS failed to document searches on the subject premises. Defendant Sutton deliberately failed to take any actions

to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxiv. Defendant Sutton through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxv. Defendant Sutton through NCDPS failed to implement security preparedness drills and training. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxvi. Defendant Sutton through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxvii. Defendant Sutton through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxviii. Defendant Sutton through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mlxxxix. Defendant Sutton through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxc. Defendant Sutton through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxci. Defendant Sutton through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security

keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxcii. Defendant Sutton through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxciii. Defendant Sutton through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxciv. Defendant Sutton through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxcv. Defendant Sutton through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxcvi. Defendant Sutton through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxcvii. Defendant Sutton through NCDPS failed to update "post orders" for staff per industry standard. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxcviii. Defendant Sutton through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mxcix.　Defendant Sutton through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Sutton deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

501.　　Defendant Sutton's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

502.　　Had Defendant Sutton acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

503.　　Further, it was foreseeable that Defendant Sutton's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

504.　　As outlined above, Defendant Sutton acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights

established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Sutton's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

505.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

506.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.


**COUNT XLI**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT VIVIAN JOHNSON**

507.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

508.     Defendant, VIVIAN JOHNSON ("Defendant Johnson") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Johnson assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

509.     Defendant Johnson is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Johnson (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees

(specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

510.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Johnson, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

511.    Unfortunately, Defendant Johnson, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

512.    Defendant Johnson intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

513.    Unfortunately, Defendant Johnson's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command

at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

514.    The result of Defendant Johnson's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XLII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**<u>AS TO DEFENDANT, VIVIAN JOHNSON</u>**

515.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

516.    Defendant Johnson is a "person" as defined under 42 U.S.C. § 1983.

517.    According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

518.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

519.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

520.     At all times relevant to the allegations in this complaint, Defendant Johnson acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

521.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Johnson's actions and inactions infringed upon that Right.

522.     Alternatively, Defendant Johnson also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

523.     More specifically, Defendant Johnson (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Johnson directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

524. The affirmative acts and/or deliberate inactions committed by

Defendant Johnson include:

mc. DEFENDANT JOHNSON knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mci. Defendant Johnson was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mcii. Defendant Johnson knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mciii. Defendant Johnson failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mciv. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Johnson was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcv. Defendant Johnson knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Johnson deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcvi. Defendant Johnson (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcvii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Johnson and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcviii. Defendant Johnson (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcix. Defendant Johnson knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcx. Defendant Johnson through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxi. Defendant Johnson's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxii.    Defendant Johnson through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxiii.   Defendant Johnson failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxiv.    Defendant Johnson failed to properly staff critical positions. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxv.     Defendant Johnson through NCDPS failed to properly monitor inmate movement. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxvi.    Defendant Johnson through NCDPS failed to properly search for offenders within the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxvii.   Defendant Johnson through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxviii.  Defendant Johnson, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxix.    Defendant Johnson, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Johnson deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxx.    Defendant Johnson through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxi.    Defendant Johnson through NCDPS failed to conduct adequate inmate searches. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxii.    Defendant Johnson through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxiii.    Defendant Johnson through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxiv.    Defendant Johnson through NCDPS failed to implement adequate control center operations. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxv.    Defendant Johnson through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxvi.    Defendant Johnson through NCDPS failed to implement adequate hazard material management. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxvii.    Defendant Johnson through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Johnson deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxviii.   Defendant Johnson through NCDPS failed to implement adequate key control management. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxix.   Defendant Johnson through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxx.   Defendant Johnson through NCDPS failed to implement adequate security inspections. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxi.   Defendant Johnson through NCDPS failed to implement adequate emergency management plans and responses. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxii.   Defendant Johnson through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxiii.   Defendant Johnson through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxiv.   Defendant Johnson through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxv.   Defendant Johnson through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxvi.      Defendant Johnson through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxvii.     Defendant Johnson through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxviii.    Defendant Johnson through NCDPS failed to document searches on the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxxxix.      Defendant Johnson through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxl.         Defendant Johnson through NCDPS failed to implement security preparedness drills and training. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxli.        Defendant Johnson through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxlii.       Defendant Johnson through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxliii.      Defendant Johnson through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Johnson deliberately

failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxliv. Defendant Johnson through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxlv. Defendant Johnson through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxlvi. Defendant Johnson through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxlvii. Defendant Johnson through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxlviii. Defendant Johnson through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxlix. Defendant Johnson through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcl. Defendant Johnson through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcli.   Defendant Johnson through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclii.  Defendant Johnson through NCDPS failed to update "post orders" for staff per industry standard. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcliii. Defendant Johnson through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcliv.  Defendant Johnson through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Johnson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

525.    Defendant Johnson's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

526.    Had Defendant Johnson acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          312

527.    Further, it was foreseeable that Defendant Johnson's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

528.    As outlined above, Defendant Johnson acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Johnson's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

529.    The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

530.    Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to

the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT XLIII
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## AS TO DEFENDANT THOMAS ASHLEY

531.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

532.     Defendant, THOMAS ASHLEY ("Defendant Ashley") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Ashley assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

533.     Defendant Ashley is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident

also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Ashley (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

534.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Ashley, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

535.    Unfortunately, Defendant Ashley, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank

Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

536. Defendant Ashley intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

537. Unfortunately, Defendant Ashley's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

538. The result of Defendant Ashley's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XLIV**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, THOMAS ASHLEY**

539. Plaintiffs hereby incorporate by reference all preceding

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          316

paragraphs as though fully set forth herein.

540.     Defendant Ashley is a "person" as defined under 42 U.S.C. § 1983.

541.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

542.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

543.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted

"affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

544. At all times relevant to the allegations in this complaint, Defendant Ashley acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

545. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Ashley's actions and inactions infringed upon that Right.

546. Alternatively, Defendant Ashley also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

547. More specifically, Defendant Ashley (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections

Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Ashley directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

548. The affirmative acts and/or deliberate inactions committed by Defendant Ashley include:

mclv. DEFENDANT ASHLEY knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclvi. Defendant Ashley was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mclvii. Defendant Ashley knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclviii. Defendant Ashley failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Ashley deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclix. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Ashley was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclx. Defendant Ashley knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxi. Defendant Ashley (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Ashley and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxiii. Defendant Ashley (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxiv. Defendant Ashley knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxv. Defendant Ashley through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Ashley deliberately failed

to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxvi. Defendant Ashley's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxvii. Defendant Ashley through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxviii. Defendant Ashley failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxix. Defendant Ashley failed to properly staff critical positions. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxx. Defendant Ashley through NCDPS failed to properly monitor inmate movement. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxi. Defendant Ashley through NCDPS failed to properly search for offenders within the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxii. Defendant Ashley through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxiii.     Defendant Ashley, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxiv.     Defendant Ashley, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxv.     Defendant Ashley through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxvi.     Defendant Ashley through NCDPS failed to conduct adequate inmate searches. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxvii.    Defendant Ashley through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxviii.   Defendant Ashley through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxix.     Defendant Ashley through NCDPS failed to implement adequate control center operations. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxx.     Defendant Ashley through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take

any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxi. Defendant Ashley through NCDPS failed to implement adequate hazard material management. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxii. Defendant Ashley through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxiii. Defendant Ashley through NCDPS failed to implement adequate key control management. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxiv. Defendant Ashley through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxv. Defendant Ashley through NCDPS failed to implement adequate security inspections. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxvi. Defendant Ashley through NCDPS failed to implement adequate emergency management plans and responses. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxvii. Defendant Ashley through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxviii. Defendant Ashley through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mclxxxix. Defendant Ashley through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxc. Defendant Ashley through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxci. Defendant Ashley through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxcii. Defendant Ashley through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxciii. Defendant Ashley through NCDPS failed to document searches on the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxciv. Defendant Ashley through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxcv. Defendant Ashley through NCDPS failed to implement security preparedness drills and training. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxcvi. Defendant Ashley through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxcvii. Defendant Ashley through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxcviii. Defendant Ashley through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcxcix. Defendant Ashley through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcc. Defendant Ashley through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcci. Defendant Ashley through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccii. Defendant Ashley through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcciii. Defendant Ashley through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcciv.   Defendant Ashley through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccv.   Defendant Ashley through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccvi.   Defendant Ashley through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccvii.   Defendant Ashley through NCDPS failed to update "post orders" for staff per industry standard. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccviii.   Defendant Ashley through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccix.   Defendant Ashley through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Ashley deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

549.   Defendant Ashley's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

550.        Had Defendant Ashley acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

551.        Further, it was foreseeable that Defendant Ashley's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

552.        As outlined above, Defendant Ashley acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Ashley's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life,

each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

553.    The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

554.    Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XLV**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT REGINA FEREBEE**

555.    Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

556.    Defendant, REGINA FEREBEE ("Defendant Ferebee") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          328

Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Ferebee assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

557.     Defendant Ferebee is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Ferebee (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

558.     As Chief Executive Officer and/or Governor of North Carolina, Defendant Ferebee, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional

officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

559. Unfortunately, Defendant Ferebee, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

560. Defendant Ferebee intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

561. Unfortunately, Defendant Ferebee's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

562.     The result of Defendant Ferebee's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XLVI**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, REGINA FEREBEE**

563.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

564.     Defendant Ferebee is a "person" as defined under 42 U.S.C. § 1983.

565.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

566.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 331 of 609

state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist*, 648 F.3d 965, 971–72 (9th Cir.2001).

567.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

568.     At all times relevant to the allegations in this complaint, Defendant Ferebee acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

569.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Officers at Pasquotank Correctional Institution and Defendant Ferebee's actions and inactions infringed upon that Right.

570.     Alternatively, Defendant Ferebee also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

571.     More specifically, Defendant Ferebee (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Ferebee directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

572.     The affirmative acts and/or deliberate inactions committed by Defendant Ferebee include:

mccx.     DEFENDANT FEREBEE knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxi.     Defendant Ferebee was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mccxii.   Defendant Ferebee knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxiii.   Defendant Ferebee failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxiv.   The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Ferebee was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxv.   Defendant Ferebee knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxvi.   Defendant Ferebee (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxvii.   The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Ferebee and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxviii. Defendant Ferebee (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxix. Defendant Ferebee knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxx. Defendant Ferebee through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxi. Defendant Ferebee's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxii. Defendant Ferebee through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxiii. Defendant Ferebee failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxiv. Defendant Ferebee failed to properly staff critical positions. Defendant Ferebee deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxv.     Defendant Ferebee through NCDPS failed to properly monitor inmate movement. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxvi.    Defendant Ferebee through NCDPS failed to properly search for offenders within the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxvii.   Defendant Ferebee through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxviii.  Defendant Ferebee, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plant at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxix.    Defendant Ferebee, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxx.     Defendant Ferebee through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxi.    Defendant Ferebee through NCDPS failed to conduct adequate inmate searches. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxii.   Defendant Ferebee through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxiii. Defendant Ferebee through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxiv. Defendant Ferebee through NCDPS failed to implement adequate control center operations. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxv. Defendant Ferebee through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxvi. Defendant Ferebee through NCDPS failed to implement adequate hazard material management. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxvii. Defendant Ferebee through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxviii. Defendant Ferebee through NCDPS failed to implement adequate key control management. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxxxix. Defendant Ferebee through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxl. Defendant Ferebee through NCDPS failed to implement adequate security inspections. Defendant Ferebee deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxli. Defendant Ferebee through NCDPS failed to implement adequate emergency management plans and responses. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxlii. Defendant Ferebee through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxliii. Defendant Ferebee through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxliv. Defendant Ferebee through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxlv. Defendant Ferebee through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxlvi. Defendant Ferebee through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxlvii. Defendant Ferebee through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxlviii. Defendant Ferebee through NCDPS failed to document searches on the subject premises. Defendant Ferebee deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxlix. Defendant Ferebee through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccl. Defendant Ferebee through NCDPS failed to implement security preparedness drills and training. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccli. Defendant Ferebee through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclii. Defendant Ferebee through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccliii. Defendant Ferebee through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccliv. Defendant Ferebee through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclv. Defendant Ferebee through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclvi.      Defendant Ferebee through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclvii.     Defendant Ferebee through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclviii.    Defendant Ferebee through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclix.      Defendant Ferebee through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclx.       Defendant Ferebee through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxi.      Defendant Ferebee through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxii.     Defendant Ferebee through NCDPS failed to update "post orders" for staff per industry standard. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxiii.    Defendant Ferebee through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxiv.  Defendant Ferebee through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Ferebee deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

573.  Defendant Ferebee's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

574.  Had Defendant Ferebee acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

575.  Further, it was foreseeable that Defendant Ferebee's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

576.  As outlined above, Defendant Ferebee acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in

violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Ferebee's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

577.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

578.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XLVII**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT JERMAINE GRIFFIN**

579.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

580.     Defendant, JERMAINE GRIFFIN ("Defendant Griffin") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Griffin assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

581.     Defendant Griffin is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Griffin (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically  placing  profits  over  State  Correctional  Institution  Employees

(specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

582.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Griffin, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

583.    Unfortunately, Defendant Griffin, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

584.    Defendant Griffin intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

585.    Unfortunately, Defendant Griffin's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command

at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

586.    The result of Defendant Griffin's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT XLVIII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, JERMAINE GRIFFIN**

587.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

588.     Defendant Griffin is a "person" as defined under 42 U.S.C. § 1983.

589.     According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

590.       The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

591.       To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

592.       At all times relevant to the allegations in this complaint, Defendant Griffin acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

593.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Griffin's actions and inactions infringed upon that Right.

594.    Alternatively, Defendant Griffin also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

595.    More specifically, Defendant Griffin (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Griffin directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

596.     The affirmative acts and/or deliberate inactions committed by

Defendant Griffin include:

mcclxv.     DEFENDANT GRIFFIN knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxvi.     Defendant Griffin was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mcclxvii.     Defendant Griffin knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxviii.     Defendant Griffin failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxix.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Griffin was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxx.     Defendant Griffin knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Griffin deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxi. Defendant Griffin (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Griffin and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxiii. Defendant Griffin (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxiv. Defendant Griffin knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxv. Defendant Griffin through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxvi. Defendant Griffin's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxvii. Defendant Griffin through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory

time at Pasquotank Correctional Institution. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxviii. Defendant Griffin failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxix. Defendant Griffin failed to properly staff critical positions. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxx. Defendant Griffin through NCDPS failed to properly monitor inmate movement. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxi. Defendant Griffin through NCDPS failed to properly search for offenders within the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxii. Defendant Griffin through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxiii. Defendant Griffin, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxiv. Defendant Griffin, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxv.    Defendant Griffin through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxvi.    Defendant Griffin through NCDPS failed to conduct adequate inmate searches. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxvii.    Defendant Griffin through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxviii.    Defendant Griffin through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcclxxxix.    Defendant Griffin through NCDPS failed to implement adequate control center operations. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxc.    Defendant Griffin through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxci.    Defendant Griffin through NCDPS failed to implement adequate hazard material management. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxcii.    Defendant Griffin through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxciii.   Defendant Griffin through NCDPS failed to implement adequate key control management. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxciv.   Defendant Griffin through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxcv.   Defendant Griffin through NCDPS failed to implement adequate security inspections. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxcvi.   Defendant Griffin through NCDPS failed to implement adequate emergency management plans and responses. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxcvii.   Defendant Griffin through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxcviii.   Defendant Griffin through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccxcix.   Defendant Griffin through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccc.   Defendant Griffin through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccci.     Defendant Griffin through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccii.    Defendant Griffin through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccciii.   Defendant Griffin through NCDPS failed to document searches on the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccciv.    Defendant Griffin through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccv.     Defendant Griffin through NCDPS failed to implement security preparedness drills and training. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccvi.    Defendant Griffin through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccvii.   Defendant Griffin through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccviii.  Defendant Griffin through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccix.    Defendant Griffin through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccx.     Defendant Griffin through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxi.    Defendant Griffin through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxii.   Defendant Griffin through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxiii.  Defendant Griffin through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxiv.   Defendant Griffin through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxv.    Defendant Griffin through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxvi.   Defendant Griffin through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxvii.    Defendant Griffin through NCDPS failed to update "post orders" for staff per industry standard. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxviii.    Defendant Griffin through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxix.    Defendant Griffin through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Griffin deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

597.    Defendant Griffin's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

598.    Had Defendant Griffin acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

599.    Further, it was foreseeable that Defendant Griffin's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

600.    As outlined above, Defendant Griffin acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Griffin's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

601.    The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

602.    Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to

the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT XLIX**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT JESSE ROGERS**

603.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

604.     Defendant, JESSE ROGERS ("Defendant Rogers") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Rogers assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

605.     Defendant Rogers is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident

also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Rogers (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

606.     As Chief Executive Officer and/or Governor of North Carolina, Defendant Rogers, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

607.     Unfortunately, Defendant Rogers, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank

Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

608.     Defendant Rogers intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

609.     Unfortunately, Defendant Rogers's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

610.     The result of Defendant Rogers's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT L**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, JESSE ROGERS**

611.          Plaintiffs hereby incorporate by reference all preceding

paragraphs as though fully set forth herein.

612.     Defendant Rogers is a "person" as defined under 42 U.S.C. § 1983.

613.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

614.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

615.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted

"affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

616.     At all times relevant to the allegations in this complaint, Defendant Rogers acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

617.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Rogers's actions and inactions infringed upon that Right.

618.     Alternatively, Defendant Rogers also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

619.     More specifically, Defendant Rogers (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections

Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Rogers directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

620.    The affirmative acts and/or deliberate inactions committed by Defendant Rogers include:

mcccxx.    DEFENDANT ROGERS knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxxi.    Defendant Rogers was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mcccxxii.    Defendant Rogers knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxxiii.    Defendant Rogers failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Rogers deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxiv.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Rogers was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxv.     Defendant Rogers knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxvi.     Defendant Rogers (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxvii.     The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Rogers and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxviii.     Defendant Rogers (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxix.     Defendant Rogers knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxx.     Defendant Rogers through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Rogers deliberately failed

to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxxxi. Defendant Rogers's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxxii. Defendant Rogers through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxxiii. Defendant Rogers failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxxiv. Defendant Rogers failed to properly staff critical positions. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxxv. Defendant Rogers through NCDPS failed to properly monitor inmate movement. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxxvi. Defendant Rogers through NCDPS failed to properly search for offenders within the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccccxxxvii. Defendant Rogers through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxxxviii.      Defendant Rogers, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxxxix.      Defendant Rogers, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxl.      Defendant Rogers through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxli.      Defendant Rogers through NCDPS failed to conduct adequate inmate searches. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxlii.      Defendant Rogers through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxliii.      Defendant Rogers through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxliv.      Defendant Rogers through NCDPS failed to implement adequate control center operations. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxlv.      Defendant Rogers through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take

any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxlvi.  Defendant Rogers through NCDPS failed to implement adequate hazard material management. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxlvii.  Defendant Rogers through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxlviii.  Defendant Rogers through NCDPS failed to implement adequate key control management. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxlix.  Defendant Rogers through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccl.  Defendant Rogers through NCDPS failed to implement adequate security inspections. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccli.  Defendant Rogers through NCDPS failed to implement adequate emergency management plans and responses. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclii.  Defendant Rogers through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccliii.  Defendant Rogers through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccliv. Defendant Rogers through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclv. Defendant Rogers through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclvi. Defendant Rogers through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclvii. Defendant Rogers through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclviii. Defendant Rogers through NCDPS failed to document searches on the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclix. Defendant Rogers through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccln. Defendant Rogers through NCDPS failed to implement security preparedness drills and training. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccnxi. Defendant Rogers through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxii.   Defendant Rogers through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxiii.  Defendant Rogers through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxiv.  Defendant Rogers through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxv.   Defendant Rogers through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxvi.  Defendant Rogers through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxvii. Defendant Rogers through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxviii. Defendant Rogers through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxix.   Defendant Rogers through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxx.   Defendant Rogers through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxi.   Defendant Rogers through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxii.   Defendant Rogers through NCDPS failed to update "post orders" for staff per industry standard. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxiii.   Defendant Rogers through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxiv.   Defendant Rogers through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Rogers deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

621.   Defendant Rogers's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

622.    Had Defendant Rogers acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

623.    Further, it was foreseeable that Defendant Rogers's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

624.    As outlined above, Defendant Rogers acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Rogers's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life,

each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

625.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

626.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LI**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT LEARY MATTHEW CASPER**

627.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

628.     Defendant, LEARY MATTHEW CASPER ("Defendant L.M.Casper") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of

North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant L.M.Casper assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

629. Defendant L.M.Casper is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant L.M.Casper (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

630. As Chief Executive Officer and/or Governor of North Carolina, Defendant L.M.Casper, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known

of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

631. Unfortunately, Defendant L.M.Casper, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

632. Defendant L.M.Casper intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

633. Unfortunately, Defendant L.M.Casper's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

634.    The result of Defendant L.M.Casper's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

### COUNT LII
### VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
### AS TO DEFENDANT, LEARY MATTHEW CASPER

635.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

636.     Defendant L.M.Casper is a "person" as defined under 42 U.S.C. § 1983.

637.     According to  42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

638.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 374 of 609

danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

639.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

640.     At all times relevant to the allegations in this complaint, Defendant L.M.Casper acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

641.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Officers at Pasquotank Correctional Institution and Defendant L.M.Casper's actions and inactions infringed upon that Right.

642.     Alternatively, Defendant L.M.Casper also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

643.     More specifically, Defendant L.M.Casper (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant L.M.Casper directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

644.     The affirmative acts and/or deliberate inactions committed by Defendant L.M.Casper include:

mccclxxv.     DEFENDANT L.M.CASPER knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxvi.     Defendant L.M.Casper was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mccclxxvii.     Defendant L.M.Casper knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxviii.    Defendant L.M.Casper failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxix.      The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant L.M.Casper was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxx.       Defendant L.M.Casper knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxi.      Defendant L.M.Casper (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxii.     The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant L.M.Casper and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxiii.      Defendant L.M.Casper (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxiv.      Defendant L.M.Casper knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxv.      Defendant L.M.Casper through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxvi.      Defendant L.M.Casper's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxvii.      Defendant L.M.Casper through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxviii.      Defendant L.M.Casper failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mccclxxxix.      Defendant L.M.Casper failed to properly staff critical positions. Defendant L.M.Casper deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxc. Defendant L.M.Casper through NCDPS failed to properly monitor inmate movement. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxci. Defendant L.M.Casper through NCDPS failed to properly search for offenders within the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxcii. Defendant L.M.Casper through NCDPS failed to properly staff designated search areas within the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxciii. Defendant L.M.Casper, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxciv. Defendant L.M.Casper, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxcv. Defendant L.M.Casper through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxcvi. Defendant L.M.Casper through NCDPS failed to conduct adequate inmate searches. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxcvii. Defendant L.M.Casper through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxcviii. Defendant L.M.Casper through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcccxcix. Defendant L.M.Casper through NCDPS failed to implement adequate control center operations. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcd. Defendant L.M.Casper through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdi. Defendant L.M.Casper through NCDPS failed to implement adequate hazard material management. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdii. Defendant L.M.Casper through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdiii. Defendant L.M.Casper through NCDPS failed to implement adequate key control management. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdiv. Defendant L.M.Casper through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdv. Defendant L.M.Casper through NCDPS failed to implement adequate security inspections. Defendant L.M.Casper deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdvi. Defendant L.M.Casper through NCDPS failed to implement adequate emergency management plans and responses. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdvii. Defendant L.M.Casper through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdviii. Defendant L.M.Casper through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdix. Defendant L.M.Casper through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdx. Defendant L.M.Casper through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxi. Defendant L.M.Casper through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxii. Defendant L.M.Casper through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxiii.    Defendant L.M.Casper through NCDPS failed to document searches on the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxiv.    Defendant L.M.Casper through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxv.    Defendant L.M.Casper through NCDPS failed to implement security preparedness drills and training. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxvi.    Defendant L.M.Casper through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxvii.    Defendant L.M.Casper through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxviii.    Defendant L.M.Casper through NCDPS failed to discontinue security notifications due to broken equipment. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxix.    Defendant L.M.Casper through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxx.    Defendant L.M.Casper through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxi.     Defendant L.M.Casper through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxii.    Defendant L.M.Casper through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxiii.   Defendant L.M.Casper through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxiv.    Defendant L.M.Casper through NCDPS negligently implemented Conflicting "security key" control policies. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxv.     Defendant L.M.Casper through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxvi.    Defendant L.M.Casper through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxvii.   Defendant L.M.Casper through NCDPS failed to update "post orders" for staff per industry standard. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxviii.  Defendant L.M.Casper through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxix.  Defendant L.M.Casper through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant L.M.Casper deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

645.     Defendant L.M.Casper's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

646.     Had Defendant L.M.Casper acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

647.     Further, it was foreseeable that Defendant L.M.Casper's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

648.     As outlined above, Defendant L.M.Casper acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant L.M.Casper's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

649.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

650.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT LIII

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          385

**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM
COMMITTED BY A THIRD PARTY
AS TO DEFENDANT WILLIAM DAVENPORT**

651.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

652.     Defendant, WILLIAM DAVENPORT ("Defendant William Davenport") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Davenport assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

653.     Defendant Davenport is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant

Davenport (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

654. As Chief Executive Officer and/or Governor of North Carolina, Defendant Davenport, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

655. Unfortunately, Defendant Davenport, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

656. Defendant Davenport intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of

exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

657.    Unfortunately, Defendant Davenport's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

658.    The result of Defendant Davenport's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT LIV**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, WILLIAM DAVENPORT**

659.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

660.    Defendant Davenport is a "person" as defined under 42 U.S.C. § 1983.

661. According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

662. The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

663. To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 389 of 609

danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

664.     At all times relevant to the allegations in this complaint, Defendant Davenport acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

665.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Davenport's actions and inactions infringed upon that Right.

666.     Alternatively, Defendant Davenport also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

667.     More specifically, Defendant Davenport (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Davenport directed, permitted,

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          390

encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

668. The affirmative acts and/or deliberate inactions committed by Defendant Davenport include:

mcdxxx. DEFENDANT DAVENPORT knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxxi. Defendant Davenport was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mcdxxxii. Defendant Davenport knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxxiii. Defendant Davenport failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxxiv. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Davenport was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Davenport

deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxxv. Defendant Davenport knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxxvi. Defendant Davenport (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxxvii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Davenport and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxxviii. Defendant Davenport (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxxxix. Defendant Davenport knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxl. Defendant Davenport through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxli.      Defendant Davenport's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxlii.     Defendant Davenport through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxliii.    Defendant Davenport failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxliv.     Defendant Davenport failed to properly staff critical positions. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxlv.      Defendant Davenport through NCDPS failed to properly monitor inmate movement. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxlvi.     Defendant Davenport through NCDPS failed to properly search for offenders within the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxlvii.    Defendant Davenport through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxlviii.   Defendant Davenport, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Davenport

deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxlix. Defendant Davenport, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdl. Defendant Davenport through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdli. Defendant Davenport through NCDPS failed to conduct adequate inmate searches. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlii. Defendant Davenport through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdliii. Defendant Davenport through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdliv. Defendant Davenport through NCDPS failed to implement adequate control center operations. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlv. Defendant Davenport through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlvi. Defendant Davenport through NCDPS failed to implement adequate hazard material management. Defendant Davenport deliberately failed to

take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlvii. Defendant Davenport through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlviii. Defendant Davenport through NCDPS failed to implement adequate key control management. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlix. Defendant Davenport through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlx. Defendant Davenport through NCDPS failed to implement adequate security inspections. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxi. Defendant Davenport through NCDPS failed to implement adequate emergency management plans and responses. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxii. Defendant Davenport through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxiii. Defendant Davenport through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxiv.    Defendant Davenport through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxv.    Defendant Davenport through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxvi.    Defendant Davenport through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxvii.    Defendant Davenport through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxviii.    Defendant Davenport through NCDPS failed to document searches on the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxix.    Defendant Davenport through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxx.    Defendant Davenport through NCDPS failed to implement security preparedness drills and training. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxi.    Defendant Davenport through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxii.    Defendant Davenport through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxiii.   Defendant Davenport through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxiv.    Defendant Davenport through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxv.     Defendant Davenport through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxvi.    Defendant Davenport through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxvii.   Defendant Davenport through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxviii.  Defendant Davenport through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxix.   Defendant Davenport through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxx.   Defendant Davenport through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxxi.   Defendant Davenport through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxxii.   Defendant Davenport through NCDPS failed to update "post orders" for staff per industry standard. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxxiii.   Defendant Davenport through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxxiv.   Defendant Davenport through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Davenport deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

669.     Defendant Davenport's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

670.     Had Defendant Davenport acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

671.     Further, it was foreseeable that Defendant Davenport's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

672.     As outlined above, Defendant Davenport acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Davenport's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life,

each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

673.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

674.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LV**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT STEVEN GARDNER**

675.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

676.     Defendant, STEVEN GARDNER ("Defendant Gardner") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North

Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Gardner assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

677.    Defendant Gardner is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Gardner (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

678.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Gardner, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional

officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

679.    Unfortunately, Defendant Gardner, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

680.    Defendant Gardner intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

681.    Unfortunately, Defendant Gardner's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

682.     The result of Defendant Gardner's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT LVI**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, STEPHEN GARDNER**

683.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

684.     Defendant Gardner is a "person" as defined under 42 U.S.C. § 1983.

685.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

686.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the

state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

687.　　　To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

688.　　　At all times relevant to the allegations in this complaint, Defendant Gardner acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.　As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

689.　　　As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Officers at Pasquotank Correctional Institution and Defendant Gardner's actions and inactions infringed upon that Right.

690.    Alternatively, Defendant Gardner also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

691.    More specifically, Defendant Gardner (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Gardner directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

692.    The affirmative acts and/or deliberate inactions committed by Defendant Gardner include:

mcdlxxxv.    DEFENDANT GARDNER knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxxvi.    Defendant Gardner was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mcdlxxxvii.  Defendant Gardner knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxxviii.  Defendant Gardner failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdlxxxix.  The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Gardner was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxc.  Defendant Gardner knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxci.  Defendant Gardner (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxcii.  The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Gardner and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxciii.     Defendant Gardner (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxciv.     Defendant Gardner knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxcv.      Defendant Gardner through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxcvi.     Defendant Gardner's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxcvii.    Defendant Gardner through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxcviii.   Defendant Gardner failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcdxcix.     Defendant Gardner failed to properly staff critical positions. Defendant Gardner deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

md.     Defendant Gardner through NCDPS failed to properly monitor inmate movement. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdi.    Defendant Gardner through NCDPS failed to properly search for offenders within the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdii.   Defendant Gardner through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdiii.  Defendant Gardner, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdiv.   Defendant Gardner, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdv.    Defendant Gardner through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdvi.   Defendant Gardner through NCDPS failed to conduct adequate inmate searches. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdvii.  Defendant Gardner through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdviii.   Defendant Gardner through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdix.   Defendant Gardner through NCDPS failed to implement adequate control center operations. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdx.   Defendant Gardner through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxi.   Defendant Gardner through NCDPS failed to implement adequate hazard material management. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxii.   Defendant Gardner through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxiii.   Defendant Gardner through NCDPS failed to implement adequate key control management. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxiv.   Defendant Gardner through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxv.   Defendant Gardner through NCDPS failed to implement adequate security inspections. Defendant Gardner deliberately failed to take any actions to

direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxvi. Defendant Gardner through NCDPS failed to implement adequate emergency management plans and responses. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxvii. Defendant Gardner through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxviii. Defendant Gardner through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxix. Defendant Gardner through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxx. Defendant Gardner through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxi. Defendant Gardner through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxii. Defendant Gardner through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxiii. Defendant Gardner through NCDPS failed to document searches on the subject premises. Defendant Gardner deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxiv. Defendant Gardner through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxv. Defendant Gardner through NCDPS failed to implement security preparedness drills and training. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxvi. Defendant Gardner through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxvii. Defendant Gardner through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxviii. Defendant Gardner through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxix. Defendant Gardner through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxx. Defendant Gardner through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxi.    Defendant Gardner through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxii.    Defendant Gardner through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxiii.    Defendant Gardner through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxiv.    Defendant Gardner through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxv.    Defendant Gardner through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxvi.    Defendant Gardner through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxvii.    Defendant Gardner through NCDPS failed to update "post orders" for staff per industry standard. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxviii.    Defendant Gardner through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Gardner deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxxxix.    Defendant Gardner through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Gardner deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

693.    Defendant Gardner's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

694.    Had Defendant Gardner acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

695.    Further, it was foreseeable that Defendant Gardner's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

696.    As outlined above, Defendant Gardner acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          413

violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Gardner's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

697.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

698.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LVII**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT CARLTON RICHARDSON**

699.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

700.     Defendant, CARLTON RICHARDSON ("Defendant Richardson") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Richardson assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

701.     Defendant Richardson is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Richardson (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution

Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

702.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Richardson, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

703.    Unfortunately, Defendant Richardson, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

704.    Defendant Richardson intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

705.    Unfortunately, Defendant Richardson's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

706.    The result of Defendant Richardson's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

### COUNT LVIII
### VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
### AS TO DEFENDANT, CARLTON RICHARDSON

707.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

708.     Defendant Richardson is a "person" as defined under 42 U.S.C. § 1983.

709.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or

the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

710.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

711.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v.*

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 418 of 609

*Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

712.        At all times relevant to the allegations in this complaint, Defendant Richardson acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

713.        As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Richardson's actions and inactions infringed upon that Right.

714.        Alternatively, Defendant Richardson also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

715.        More specifically, Defendant Richardson (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Richardson directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 419 of 609

to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

716.　　　The affirmative acts and/or deliberate inactions committed by Defendant Richardson include:

mdxl.　　DEFENDANT RICHARDSON knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxli.　　Defendant Richardson was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mdxlii.　　Defendant Richardson knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxliii.　　Defendant Richardson failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxliv.　　The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Richardson was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Richardson deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxlv. Defendant Richardson knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxlvi. Defendant Richardson (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxlvii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Richardson and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxlviii. Defendant Richardson (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxlix. Defendant Richardson knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdl. Defendant Richardson through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdli. Defendant Richardson's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlii. Defendant Richardson through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdliii. Defendant Richardson failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdliv. Defendant Richardson failed to properly staff critical positions. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlv. Defendant Richardson through NCDPS failed to properly monitor inmate movement. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlvi. Defendant Richardson through NCDPS failed to properly search for offenders within the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlvii. Defendant Richardson through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlviii. Defendant Richardson, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Richardson

deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlix. Defendant Richardson, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlx. Defendant Richardson through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxi. Defendant Richardson through NCDPS failed to conduct adequate inmate searches. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxii. Defendant Richardson through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxiii. Defendant Richardson through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxiv. Defendant Richardson through NCDPS failed to implement adequate control center operations. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxv. Defendant Richardson through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxvi. Defendant Richardson through NCDPS failed to implement adequate hazard material management. Defendant Richardson deliberately failed

to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxvii. Defendant Richardson through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxviii. Defendant Richardson through NCDPS failed to implement adequate key control management. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxix. Defendant Richardson through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxx. Defendant Richardson through NCDPS failed to implement adequate security inspections. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxi. Defendant Richardson through NCDPS failed to implement adequate emergency management plans and responses. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxii. Defendant Richardson through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxiii. Defendant Richardson through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxiv.   Defendant Richardson through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxv.   Defendant Richardson through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxvi.   Defendant Richardson through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxvii.   Defendant Richardson through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxviii.   Defendant Richardson through NCDPS failed to document searches on the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxix.   Defendant Richardson through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxx.   Defendant Richardson through NCDPS failed to implement security preparedness drills and training. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxxi.   Defendant Richardson through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxxii.  Defendant Richardson through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxxiii.  Defendant Richardson through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxxiv.  Defendant Richardson through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxxv.  Defendant Richardson through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxxvi.  Defendant Richardson through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxxvii.  Defendant Richardson through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdlxxxviii.  Defendant Richardson through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          426

mdlxxxix.  Defendant Richardson through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxc.  Defendant Richardson through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxci.  Defendant Richardson through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxcii.  Defendant Richardson through NCDPS failed to update "post orders" for staff per industry standard. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxciii.  Defendant Richardson through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxciv.  Defendant Richardson through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Richardson deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

717.  Defendant Richardson's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

718.        Had Defendant Richardson acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

719.        Further, it was foreseeable that Defendant Richardson's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

720.        As outlined above, Defendant Richardson acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Richardson's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life,

each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

721.       The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

722.       Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LIX**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT LEON WILLIAMS**

723.       Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

724.       Defendant, LEON WILLIAMS ("Defendant Williams") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North

Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Williams assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

725.    Defendant Williams is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Williams (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

726.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Williams, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional

officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

727.     Unfortunately, Defendant Williams, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

728.     Defendant Williams intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

729.     Unfortunately, Defendant Williams's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

730.     The result of Defendant Williams's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT LX**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, LEON WILLIAMS**

731.      Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

732.      Defendant Williams is a "person" as defined under 42 U.S.C. § 1983.

733.      According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

734.      The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the

state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

735.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

736.     At all times relevant to the allegations in this complaint, Defendant Williams acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

737.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 433 of 609

Officers at Pasquotank Correctional Institution and Defendant Williams's actions and inactions infringed upon that Right.

738.     Alternatively, Defendant Williams also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

739.     More specifically, Defendant Williams (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Williams directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

740.     The affirmative acts and/or deliberate inactions committed by Defendant Williams include:

mdxcv.     DEFENDANT WILLIAMS knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxcvi.     Defendant Williams was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mdxcvii. Defendant Williams knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxcviii. Defendant Williams failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdxcix. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Williams was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdc. Defendant Williams knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdci. Defendant Williams (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Williams and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdciii.   Defendant Williams (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdciv.   Defendant Williams knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcv.   Defendant Williams through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcvi.   Defendant Williams's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcvii.   Defendant Williams through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcviii.   Defendant Williams failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcix.   Defendant Williams failed to properly staff critical positions. Defendant Williams deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcx. Defendant Williams through NCDPS failed to properly monitor inmate movement. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxi. Defendant Williams through NCDPS failed to properly search for offenders within the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxii. Defendant Williams through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxiii. Defendant Williams, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxiv. Defendant Williams, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxv. Defendant Williams through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxvi. Defendant Williams through NCDPS failed to conduct adequate inmate searches. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxvii. Defendant Williams through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxviii.  Defendant Williams through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxix.  Defendant Williams through NCDPS failed to implement adequate control center operations. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxx.  Defendant Williams through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxi.  Defendant Williams through NCDPS failed to implement adequate hazard material management. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxii.  Defendant Williams through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxiii.  Defendant Williams through NCDPS failed to implement adequate key control management. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxiv.  Defendant Williams through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxv.  Defendant Williams through NCDPS failed to implement adequate security inspections. Defendant Williams deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxvi. Defendant Williams through NCDPS failed to implement adequate emergency management plans and responses. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxvii. Defendant Williams through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxviii. Defendant Williams through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxix. Defendant Williams through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxx. Defendant Williams through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxi. Defendant Williams through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxii. Defendant Williams through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxiii. Defendant Williams through NCDPS failed to document searches on the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxiv. Defendant Williams through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxv. Defendant Williams through NCDPS failed to implement security preparedness drills and training. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxvi. Defendant Williams through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxvii. Defendant Williams through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxviii. Defendant Williams through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxxxix. Defendant Williams through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxl. Defendant Williams through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxli.     Defendant Williams through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxlii.    Defendant Williams through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxliii.   Defendant Williams through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxliv.    Defendant Williams through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxlv.     Defendant Williams through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxlvi.    Defendant Williams through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxlvii.   Defendant Williams through NCDPS failed to update "post orders" for staff per industry standard. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxlviii.  Defendant Williams through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Williams deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxlix. Defendant Williams through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Williams deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

741. Defendant Williams's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

742. Had Defendant Williams acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

743. Further, it was foreseeable that Defendant Williams's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

744. As outlined above, Defendant Williams acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in

violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Williams's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

745.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

746.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LXi**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT KATINA JORDAN**

747.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

748.     Defendant, KATINA JORDAN ("Defendant Jordan") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant JORDAN assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

749.     Defendant JORDAN is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant JORDAN (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees

(specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

750. As Chief Executive Officer and/or Governor of North Carolina, Defendant JORDAN, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

751. Unfortunately, Defendant JORDAN, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

752. Defendant JORDAN intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

753. Unfortunately, Defendant JORDAN's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command

at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

754.    The result of Defendant JORDAN's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT LXII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, KATINA JORDAN**

755.        Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

756.        Defendant JORDAN is a "person" as defined under 42 U.S.C. § 1983.

757.        According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

758.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

759.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

760.     At all times relevant to the allegations in this complaint, Defendant JORDAN acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

761. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant JORDAN's actions and inactions infringed upon that Right.

762. Alternatively, Defendant JORDAN also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

763. More specifically, Defendant JORDAN (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant JORDAN directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

764. The affirmative acts and/or deliberate inactions committed by

Defendant JORDAN include:

mdcl. DEFENDANT JORDAN knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcli. Defendant JORDAN was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mdclii. Defendant JORDAN knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcliii. Defendant JORDAN failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcliv. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant JORDAN was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclv. Defendant JORDAN knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant JORDAN deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclvi. Defendant JORDAN (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclvii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant JORDAN and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclviii. Defendant JORDAN (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclix. Defendant JORDAN knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclx. Defendant JORDAN through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxi. Defendant JORDAN's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxii.   Defendant JORDAN through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxiii.   Defendant JORDAN failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxiv.   Defendant JORDAN failed to properly staff critical positions. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxv.   Defendant JORDAN through NCDPS failed to properly monitor inmate movement. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxvi.   Defendant JORDAN through NCDPS failed to properly search for offenders within the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxvii.   Defendant JORDAN through NCDPS failed to properly staff designated search areas within the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxviii.   Defendant JORDAN, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxix.   Defendant JORDAN, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxx.    Defendant JORDAN through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxi.   Defendant JORDAN through NCDPS failed to conduct adequate inmate searches. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxii.  Defendant JORDAN through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxiii. Defendant JORDAN through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxiv.  Defendant JORDAN through NCDPS failed to implement adequate control center operations. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxv.   Defendant JORDAN through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxvi.  Defendant JORDAN through NCDPS failed to implement adequate hazard material management. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxvii. Defendant JORDAN through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxviii.    Defendant JORDAN through NCDPS failed to implement adequate key control management. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxix.    Defendant JORDAN through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxx.    Defendant JORDAN through NCDPS failed to implement adequate security inspections. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxi.    Defendant JORDAN through NCDPS failed to implement adequate emergency management plans and responses. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxii.    Defendant JORDAN through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxiii.    Defendant JORDAN through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxiv.    Defendant JORDAN through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxv.    Defendant JORDAN through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxvi.  Defendant JORDAN through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxvii.  Defendant JORDAN through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxviii.  Defendant JORDAN through NCDPS failed to document searches on the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdclxxxix.  Defendant JORDAN through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxc.  Defendant JORDAN through NCDPS failed to implement security preparedness drills and training. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxci.  Defendant JORDAN through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxcii.  Defendant JORDAN through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxciii.  Defendant JORDAN through NCDPS failed to discontinue security notifications due to broken equipment. Defendant JORDAN deliberately

failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxciv. Defendant JORDAN through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxcv. Defendant JORDAN through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxcvi. Defendant JORDAN through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxcvii. Defendant JORDAN through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxcviii. Defendant JORDAN through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcxcix. Defendant JORDAN through NCDPS negligently implemented Conflicting "security key" control policies. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcc. Defendant JORDAN through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcci.    Defendant JORDAN through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccii.   Defendant JORDAN through NCDPS failed to update "post orders" for staff per industry standard. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcciii.  Defendant JORDAN through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcciv.   Defendant JORDAN through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant JORDAN deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

765.    Defendant JORDAN's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

766.    Had Defendant JORDAN acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

767.     Further, it was foreseeable that Defendant JORDAN's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

768.     As outlined above, Defendant JORDAN acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant JORDAN's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

769.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

770.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to

the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT LXiII
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## AS TO DEFENDANT STEPHANIE FREEMAN

771.    Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

772.    Defendant, STEPHANIE FREEMAN ("Defendant Freeman") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Freeman assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

773.    Defendant Freeman is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident

also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Freeman (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

774.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Freeman, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

775.    Unfortunately, Defendant Freeman, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank

Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

776.     Defendant Freeman intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

777.     Unfortunately, Defendant Freeman's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

778.     The result of Defendant Freeman's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT LXIV**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, STEPHANIE FREEMAN**

779.          Plaintiffs hereby incorporate by reference all preceding

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          460

paragraphs as though fully set forth herein.

780. Defendant Freeman is a "person" as defined under 42 U.S.C. § 1983.

781. According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

782. The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

783. To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted

"affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

784.    At all times relevant to the allegations in this complaint, Defendant Freeman acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

785.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Freeman's actions and inactions infringed upon that Right.

786.    Alternatively, Defendant Freeman also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

787.    More specifically, Defendant Freeman (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections

Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Freeman directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

788.     The affirmative acts and/or deliberate inactions committed by Defendant Freeman include:

mdccv.     DEFENDANT FREEMAN knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccvi.     Defendant Freeman was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mdccvii.     Defendant Freeman knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccviii.     Defendant Freeman failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Freeman deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccix.    The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Freeman was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccx.    Defendant Freeman knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxi.    Defendant Freeman (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxii.    The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Freeman and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxiii.    Defendant Freeman (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxiv.    Defendant Freeman knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxv.    Defendant Freeman through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxvi.   Defendant Freeman's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxvii.  Defendant Freeman through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxviii. Defendant Freeman failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxix.   Defendant Freeman failed to properly staff critical positions. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxx.    Defendant Freeman through NCDPS failed to properly monitor inmate movement. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxi.   Defendant Freeman through NCDPS failed to properly search for offenders within the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxii.  Defendant Freeman through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxiii.    Defendant Freeman, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxiv.    Defendant Freeman, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxv.    Defendant Freeman through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxvi.    Defendant Freeman through NCDPS failed to conduct adequate inmate searches. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxvii.    Defendant Freeman through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxviii.    Defendant Freeman through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxix.    Defendant Freeman through NCDPS failed to implement adequate control center operations. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxx.  Defendant Freeman through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxi.  Defendant Freeman through NCDPS failed to implement adequate hazard material management. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxii.  Defendant Freeman through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxiii.  Defendant Freeman through NCDPS failed to implement adequate key control management. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxiv.  Defendant Freeman through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxv.  Defendant Freeman through NCDPS failed to implement adequate security inspections. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxvi.  Defendant Freeman through NCDPS failed to implement adequate emergency management plans and responses. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxvii.  Defendant Freeman through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxviii.    Defendant Freeman through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxxxix.    Defendant Freeman through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxl.    Defendant Freeman through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxli.    Defendant Freeman through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxlii.    Defendant Freeman through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxliii.    Defendant Freeman through NCDPS failed to document searches on the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxliv.    Defendant Freeman through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxlv.    Defendant Freeman through NCDPS failed to implement security preparedness drills and training. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxlvi.    Defendant Freeman through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxlvii.   Defendant Freeman through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxlviii.  Defendant Freeman through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxlix.    Defendant Freeman through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccl.       Defendant Freeman through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccli.      Defendant Freeman through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclii.     Defendant Freeman through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccliii.    Defendant Freeman through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Freeman deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccliv.    Defendant Freeman through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclv.    Defendant Freeman through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclvi.    Defendant Freeman through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclvii.    Defendant Freeman through NCDPS failed to update "post orders" for staff per industry standard. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclviii.    Defendant Freeman through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclix.    Defendant Freeman through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Freeman deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

789.    Defendant Freeman's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

790. Had Defendant Freeman acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

791. Further, it was foreseeable that Defendant Freeman's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

792. As outlined above, Defendant Freeman acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Freeman's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life,

each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

793.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

794.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT LXV
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## AS TO DEFENDANT KAREN STEINOUR

795.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

796.     Defendant, KAREN STEINOUR ("Defendant Steinour") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North

Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Steinour assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

797.    Defendant Steinour is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Steinour (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

798.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Steinour, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional

officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

799.    Unfortunately, Defendant Steinour, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

800.    Defendant Steinour intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

801.    Unfortunately, Defendant Steinour's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

802. The result of Defendant Steinour's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

## COUNT LXVI
### VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
### AS TO DEFENDANT, KAREN STEINOUR

803. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

804. Defendant Steinour is a "person" as defined under 42 U.S.C. § 1983.

805. According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

806. The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the

state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

807.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

808.     At all times relevant to the allegations in this complaint, Defendant Steinour acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

809.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Officers at Pasquotank Correctional Institution and Defendant Steinour's actions and inactions infringed upon that Right.

810. Alternatively, Defendant Steinour also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

811. More specifically, Defendant Steinour (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Steinour directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

812. The affirmative acts and/or deliberate inactions committed by Defendant Steinour include:

mdcclx. DEFENDANT STEINOUR knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxi. Defendant Steinour was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mdcclxii.     Defendant Steinour knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxiii.    Defendant Steinour failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxiv.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Steinour was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxv.      Defendant Steinour knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxvi.     Defendant Steinour (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxvii.    The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Steinour and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxviii.  Defendant Steinour (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxix.  Defendant Steinour knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxx.  Defendant Steinour through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxi.  Defendant Steinour's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxii.  Defendant Steinour through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxiii.  Defendant Steinour failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxiv.  Defendant Steinour failed to properly staff critical positions. Defendant Steinour deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxv.    Defendant Steinour through NCDPS failed to properly monitor inmate movement. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxvi.    Defendant Steinour through NCDPS failed to properly search for offenders within the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxvii.    Defendant Steinour through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxviii.    Defendant Steinour, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxix.    Defendant Steinour, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxx.    Defendant Steinour through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxi.    Defendant Steinour through NCDPS failed to conduct adequate inmate searches. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxii.    Defendant Steinour through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too.

Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxiii. Defendant Steinour through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxiv. Defendant Steinour through NCDPS failed to implement adequate control center operations. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxv. Defendant Steinour through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxvi. Defendant Steinour through NCDPS failed to implement adequate hazard material management. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxvii. Defendant Steinour through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxviii. Defendant Steinour through NCDPS failed to implement adequate key control management. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcclxxxix. Defendant Steinour through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxc. Defendant Steinour through NCDPS failed to implement adequate security inspections. Defendant Steinour deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxci. Defendant Steinour through NCDPS failed to implement adequate emergency management plans and responses. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcii. Defendant Steinour through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxciii. Defendant Steinour through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxciv. Defendant Steinour through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcv. Defendant Steinour through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcvi. Defendant Steinour through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcvii. Defendant Steinour through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcviii.  Defendant Steinour through NCDPS failed to document searches on the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcix.  Defendant Steinour through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccc.  Defendant Steinour through NCDPS failed to implement security preparedness drills and training. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccci.  Defendant Steinour through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccii.  Defendant Steinour through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccciii.  Defendant Steinour through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccciv.  Defendant Steinour through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccv.  Defendant Steinour through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccccvi.  Defendant Steinour through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccccvii.  Defendant Steinour through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccccviii.  Defendant Steinour through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccccix.  Defendant Steinour through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccccx.  Defendant Steinour through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccccxi.  Defendant Steinour through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccccxii.  Defendant Steinour through NCDPS failed to update "post orders" for staff per industry standard. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccccxiii.  Defendant Steinour through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Steinour deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxiv.    Defendant Steinour through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Steinour deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

813.    Defendant Steinour's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

814.    Had Defendant Steinour acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

815.    Further, it was foreseeable that Defendant Steinour's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

816.    As outlined above, Defendant Steinour acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND        485

violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Steinour's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

817.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

818.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LXVII**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT JOE PRATER**

819.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

820.     Defendant, JOE PRATER ("Defendant Prater") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Prater assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

821.     Defendant Prater is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Prater (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by

Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

822. As Chief Executive Officer and/or Governor of North Carolina, Defendant Prater, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

823. Unfortunately, Defendant Prater, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

824. Defendant Prater intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

825. Unfortunately, Defendant Prater's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution,

and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

826.    The result of Defendant Prater's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

### COUNT LXVIII
### VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
### AS TO DEFENDANT, JOE PRATER

827.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

828.    Defendant Prater is a "person" as defined under 42 U.S.C. § 1983.

829.    According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

830.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

831.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

832.     At all times relevant to the allegations in this complaint, Defendant Prater acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

833. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Prater's actions and inactions infringed upon that Right.

834. Alternatively, Defendant Prater also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

835. More specifically, Defendant Prater (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Prater directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

836.     The affirmative acts and/or deliberate inactions committed by

Defendant Prater include:

mdccxv.     DEFENDANT PRATER knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxvi.     Defendant Prater was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mdccxvii.     Defendant Prater knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxviii.     Defendant Prater failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxix.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Prater was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxx.     Defendant Prater knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Prater deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxi. Defendant Prater (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Prater and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxiii. Defendant Prater (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxiv. Defendant Prater knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxv. Defendant Prater through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxvi. Defendant Prater's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxvii. Defendant Prater through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory

time at Pasquotank Correctional Institution. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxviii. Defendant Prater failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxix. Defendant Prater failed to properly staff critical positions. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxx. Defendant Prater through NCDPS failed to properly monitor inmate movement. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxi. Defendant Prater through NCDPS failed to properly search for offenders within the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxii. Defendant Prater through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxiii. Defendant Prater, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxiv. Defendant Prater, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxv.     Defendant Prater through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxvi.    Defendant Prater through NCDPS failed to conduct adequate inmate searches. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxvii.   Defendant Prater through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxviii.  Defendant Prater through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxxxix.    Defendant Prater through NCDPS failed to implement adequate control center operations. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxl.       Defendant Prater through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxli.      Defendant Prater through NCDPS failed to implement adequate hazard material management. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxlii.     Defendant Prater through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxliii.    Defendant Prater through NCDPS failed to implement adequate key control management. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxliv.    Defendant Prater through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxlv.    Defendant Prater through NCDPS failed to implement adequate security inspections. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxlvi.    Defendant Prater through NCDPS failed to implement adequate emergency management plans and responses. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxlvii.    Defendant Prater through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxlviii.    Defendant Prater through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxlix.    Defendant Prater through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccl.    Defendant Prater through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccli.     Defendant Prater through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclii.    Defendant Prater through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccliii.   Defendant Prater through NCDPS failed to document searches on the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccliv.    Defendant Prater through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclv.     Defendant Prater through NCDPS failed to implement security preparedness drills and training. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclvi.    Defendant Prater through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclvii.   Defendant Prater through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclviii.  Defendant Prater through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccclix.    Defendant Prater through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccclx.    Defendant Prater through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccclxi.    Defendant Prater through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccclxii.    Defendant Prater through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccclxiii.    Defendant Prater through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccclxiv.    Defendant Prater through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccclxv.    Defendant Prater through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccclxvi.    Defendant Prater through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxvii.    Defendant Prater through NCDPS failed to update "post orders" for staff per industry standard. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxviii.    Defendant Prater through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxix.    Defendant Prater through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Prater deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

837.    Defendant Prater's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

838.    Had Defendant Prater acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

839.     Further, it was foreseeable that Defendant Prater's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

840.     As outlined above, Defendant Prater acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Prater's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

841.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

842.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to

the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LXIX**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT TONY TAYLOR**

843.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

844.     Defendant, TONY TAYLOR ("Defendant T.TAYLOR") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant T.TAYLOR assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

845.     Defendant T.TAYLOR is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of

incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant T.TAYLOR (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

846. As Chief Executive Officer and/or Governor of North Carolina, Defendant T.TAYLOR, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

847. Unfortunately, Defendant T.TAYLOR, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank

Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

848.     Defendant T.TAYLOR intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

849.     Unfortunately, Defendant T.TAYLOR's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

850.     The result of Defendant T.TAYLOR's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT LXX**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, TONY TAYLOR**

851.          Plaintiffs hereby incorporate by reference all preceding

paragraphs as though fully set forth herein.

852.     Defendant T.TAYLOR is a "person" as defined under 42 U.S.C. § 1983.

853.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

854.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist*, 648 F.3d 965, 971–72 (9th Cir.2001).

855.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted

"affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

856.    At all times relevant to the allegations in this complaint, Defendant T.TAYLOR acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

857.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant T.TAYLOR's actions and inactions infringed upon that Right.

858.    Alternatively, Defendant T.TAYLOR also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

859.    More specifically, Defendant T.TAYLOR (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections

Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant T.TAYLOR directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

860.     The affirmative acts and/or deliberate inactions committed by Defendant T.TAYLOR include:

mdccclxx.     DEFENDANT T.TAYLOR knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxi.     Defendant T.TAYLOR was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mdccclxxii.     Defendant T.TAYLOR knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxiii.     Defendant T.TAYLOR failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxiv. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant T.TAYLOR was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxv. Defendant T.TAYLOR knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxvi. Defendant T.TAYLOR (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxvii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant T.TAYLOR and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxviii. Defendant T.TAYLOR (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxix. Defendant T.TAYLOR knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxx.   Defendant T.TAYLOR through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxi.   Defendant T.TAYLOR's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxii.   Defendant T.TAYLOR through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxiii.   Defendant T.TAYLOR failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxiv.   Defendant T.TAYLOR failed to properly staff critical positions. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxv.   Defendant T.TAYLOR through NCDPS failed to properly monitor inmate movement. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxvi.   Defendant T.TAYLOR through NCDPS failed to properly search for offenders within the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxvii.   Defendant T.TAYLOR through NCDPS failed to properly staff designated search areas within the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxviii. Defendant T.TAYLOR, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccclxxxix. Defendant T.TAYLOR, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxc. Defendant T.TAYLOR through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxci. Defendant T.TAYLOR through NCDPS failed to conduct adequate inmate searches. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxcii. Defendant T.TAYLOR through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxciii. Defendant T.TAYLOR through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdcccxciv. Defendant T.TAYLOR through NCDPS failed to implement adequate control center operations. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcv.    Defendant T.TAYLOR through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcvi.    Defendant T.TAYLOR through NCDPS failed to implement adequate hazard material management. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcvii.    Defendant T.TAYLOR through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcviii.    Defendant T.TAYLOR through NCDPS failed to implement adequate key control management. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mdccxcix.    Defendant T.TAYLOR through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcm.    Defendant T.TAYLOR through NCDPS failed to implement adequate security inspections. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmi.    Defendant T.TAYLOR through NCDPS failed to implement adequate emergency management plans and responses. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmii.    Defendant T.TAYLOR through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmiii.   Defendant T.TAYLOR through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmiv.   Defendant T.TAYLOR through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmv.   Defendant T.TAYLOR through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmvi.   Defendant T.TAYLOR through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmvii.   Defendant T.TAYLOR through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmviii.   Defendant T.TAYLOR through NCDPS failed to document searches on the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmix.   Defendant T.TAYLOR through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmx.   Defendant T.TAYLOR through NCDPS failed to implement security preparedness drills and training. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxi. Defendant T.TAYLOR through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxii. Defendant T.TAYLOR through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxiii. Defendant T.TAYLOR through NCDPS failed to discontinue security notifications due to broken equipment. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxiv. Defendant T.TAYLOR through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxv. Defendant T.TAYLOR through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxvi. Defendant T.TAYLOR through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxvii. Defendant T.TAYLOR through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxviii. Defendant T.TAYLOR through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections

Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxix. Defendant T.TAYLOR through NCDPS negligently implemented Conflicting "security key" control policies. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxx. Defendant T.TAYLOR through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxi. Defendant T.TAYLOR through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxii. Defendant T.TAYLOR through NCDPS failed to update "post orders" for staff per industry standard. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxiii. Defendant T.TAYLOR through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxiv. Defendant T.TAYLOR through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant T.TAYLOR deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

861. Defendant T.TAYLOR's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and

gross deficiencies in staffing and/or access to adequate resources (as outlined above).

862.     Had Defendant T.TAYLOR acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

863.     Further, it was foreseeable that Defendant T.TAYLOR's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

864.     As outlined above, Defendant T.TAYLOR acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant T.TAYLOR's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject

premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

865. The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

866. Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT LXXI
### VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
### AS TO DEFENDANT TIM MOOSE

867. Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

868. Defendant, TIM MOOSE ("Defendant Moose") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct

knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Moose assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

869. Defendant Moose is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Moose (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

870. As Chief Executive Officer and/or Governor of North Carolina, Defendant Moose, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known

of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

871.    Unfortunately, Defendant Moose, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

872.    Defendant Moose intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

873.    Unfortunately, Defendant Moose's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

874. The result of Defendant Moose's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

## COUNT LXXII
## VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
## AS TO DEFENDANT, TIM MOOSE

875. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

876. Defendant Moose is a "person" as defined under 42 U.S.C. § 1983.

877. According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

878. The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the

state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

879.	To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

880.	At all times relevant to the allegations in this complaint, Defendant Moose acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

881.	As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Officers at Pasquotank Correctional Institution and Defendant Moose's actions and inactions infringed upon that Right.

882. Alternatively, Defendant Moose also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

883. More specifically, Defendant Moose (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Moose directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

884. The affirmative acts and/or deliberate inactions committed by Defendant Moose include:

mcmxxv. DEFENDANT MOOSE knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxvi. Defendant Moose was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mcmxxvii.      Defendant Moose knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxviii.     Defendant Moose failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxix.       The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Moose was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxx.        Defendant Moose knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxi.       Defendant Moose (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxii.      The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Moose and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxiii.     Defendant Moose (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the

highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxiv. Defendant Moose knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxv. Defendant Moose through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxvi. Defendant Moose's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxvii. Defendant Moose through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxviii. Defendant Moose failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxxxix. Defendant Moose failed to properly staff critical positions. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxl.     Defendant Moose through NCDPS failed to properly monitor inmate movement. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxli.    Defendant Moose through NCDPS failed to properly search for offenders within the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxlii.   Defendant Moose through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxliii.  Defendant Moose, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxliv.   Defendant Moose, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxlv.    Defendant Moose through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxlvi.   Defendant Moose through NCDPS failed to conduct adequate inmate searches. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxlvii.  Defendant Moose through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxlviii.    Defendant Moose through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxlix.    Defendant Moose through NCDPS failed to implement adequate control center operations. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcml.    Defendant Moose through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmli.    Defendant Moose through NCDPS failed to implement adequate hazard material management. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlii.    Defendant Moose through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmliii.    Defendant Moose through NCDPS failed to implement adequate key control management. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmliv.    Defendant Moose through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlv.    Defendant Moose through NCDPS failed to implement adequate security inspections. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlvi.    Defendant Moose through NCDPS failed to implement adequate emergency management plans and responses. Defendant Moose

deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlvii.    Defendant Moose through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlviii.   Defendant Moose through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlix.    Defendant Moose through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlx.     Defendant Moose through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxi.    Defendant Moose through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxii.   Defendant Moose through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxiii.  Defendant Moose through NCDPS failed to document searches on the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxiv.   Defendant Moose through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Moose deliberately failed to take any

actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxv. Defendant Moose through NCDPS failed to implement security preparedness drills and training. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxvi. Defendant Moose through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxvii. Defendant Moose through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxviii. Defendant Moose through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxix. Defendant Moose through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxx. Defendant Moose through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxi. Defendant Moose through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxii.    Defendant Moose through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxiii.   Defendant Moose through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxiv.    Defendant Moose through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxv.     Defendant Moose through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxvi.    Defendant Moose through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxvii.   Defendant Moose through NCDPS failed to update "post orders" for staff per industry standard. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxviii.  Defendant Moose through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxix.    Defendant Moose through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Moose deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

885.         Defendant Moose's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

886.         Had Defendant Moose acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

887.         Further, it was foreseeable that Defendant Moose's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

888.         As outlined above, Defendant Moose acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to

them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Moose's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

889. The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

890. Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT LXXIII
## VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
## AS TO DEFENDANT ANGELA SINTEF

891. Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

892. Defendant, ANGELA SINTEF ("Defendant Sintef") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as

the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Sintef assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

893.     Defendant Sintef is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Sintef (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

894.     As Chief Executive Officer and/or Governor of North Carolina, Defendant Sintef, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

895.     Unfortunately, Defendant Sintef, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

896.     Defendant Sintef intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

897.     Unfortunately, Defendant Sintef's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third

party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

898.     The result of Defendant Sintef's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

## COUNT LXXIV
### VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE AS TO DEFENDANT, ANGELA SINTEF

899.      Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

900.      Defendant Sintef is a "person" as defined under 42 U.S.C. § 1983.

901.      According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

902.      The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227

F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist*, 648 F.3d 965, 971–72 (9th Cir.2001).

903.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

904.     At all times relevant to the allegations in this complaint, Defendant Sintef acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

905.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Sintef's actions and inactions infringed upon that Right.

906.     Alternatively, Defendant Sintef also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

907.     More specifically, Defendant Sintef (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Sintef directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

908.     The affirmative acts and/or deliberate inactions committed by Defendant Sintef include:

mcmlxxx.     DEFENDANT SINTEF knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxxi.     Defendant Sintef was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mcmlxxxii.    Defendant Sintef knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxxiii.   Defendant Sintef failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxxiv.    The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Sintef was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxxv.     Defendant Sintef knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxxvi.    Defendant Sintef (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxxvii.   The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant

Sintef and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxxviii. Defendant Sintef (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmlxxxix. Defendant Sintef knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxc. Defendant Sintef through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxci. Defendant Sintef's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxcii. Defendant Sintef through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxciii. Defendant Sintef failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Sintef deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxciv. Defendant Sintef failed to properly staff critical positions. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxcv. Defendant Sintef through NCDPS failed to properly monitor inmate movement. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxcvi. Defendant Sintef through NCDPS failed to properly search for offenders within the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxcvii. Defendant Sintef through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxcviii. Defendant Sintef, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mcmxcix. Defendant Sintef, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mm. Defendant Sintef through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmi. Defendant Sintef through NCDPS failed to conduct adequate inmate searches. Defendant Sintef deliberately failed to take any actions to direct

or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmii.   Defendant Sintef through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmiii.   Defendant Sintef through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmiv.   Defendant Sintef through NCDPS failed to implement adequate control center operations. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmv.   Defendant Sintef through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmvi.   Defendant Sintef through NCDPS failed to implement adequate hazard material management. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmvii.   Defendant Sintef through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmviii.   Defendant Sintef through NCDPS failed to implement adequate key control management. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmix.   Defendant Sintef through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmx. Defendant Sintef through NCDPS failed to implement adequate security inspections. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxi. Defendant Sintef through NCDPS failed to implement adequate emergency management plans and responses. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxii. Defendant Sintef through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxiii. Defendant Sintef through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxiv. Defendant Sintef through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxv. Defendant Sintef through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxvi. Defendant Sintef through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxvii. Defendant Sintef through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxviii.    Defendant Sintef through NCDPS failed to document searches on the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxix.    Defendant Sintef through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxx.    Defendant Sintef through NCDPS failed to implement security preparedness drills and training. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxi.    Defendant Sintef through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxii.    Defendant Sintef through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxiii.    Defendant Sintef through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxiv.    Defendant Sintef through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxv.    Defendant Sintef through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxvi. Defendant Sintef through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxvii. Defendant Sintef through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxviii. Defendant Sintef through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxix. Defendant Sintef through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxx. Defendant Sintef through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxxi. Defendant Sintef through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxxii. Defendant Sintef through NCDPS failed to update "post orders" for staff per industry standard. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxxiii. Defendant Sintef through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxxiv. Defendant Sintef through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Sintef deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

909. Defendant Sintef's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

910. Had Defendant Sintef acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

911. Further, it was foreseeable that Defendant Sintef's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

912. As outlined above, Defendant Sintef acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND 542

violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Sintef's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

913.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

914.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LXXV**
**VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM**
**COMMITTED BY A THIRD PARTY**
**AS TO DEFENDANT BILL STOVAL**

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 543 of 609

915.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

916.     Defendant, BILL STOVAL ("Defendant Stoval") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Stoval assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

917.     Defendant Stoval is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Stoval (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by

Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

918.    As Chief Executive Officer and/or Governor of North Carolina, Defendant Stoval, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

919.    Unfortunately, Defendant Stoval, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

920.    Defendant Stoval intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

921.    Unfortunately, Defendant Stoval's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution,

and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

922.     The result of Defendant Stoval's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

## COUNT LXXVI
## VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
## AS TO DEFENDANT, BILL STOVAL

923.      Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

924.      Defendant Stoval is a "person" as defined under 42 U.S.C. § 1983.

925.      According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

926.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

927.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

928.     At all times relevant to the allegations in this complaint, Defendant Stoval acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

929. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Stoval's actions and inactions infringed upon that Right.

930. Alternatively, Defendant Stoval also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

931. More specifically, Defendant Stoval (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Stoval directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

932.     The affirmative acts and/or deliberate inactions committed by Defendant Stoval include:

mmxxxv.     DEFENDANT STOVAL knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxxvi.     Defendant Stoval was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mmxxxvii.     Defendant Stoval knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxxviii.     Defendant Stoval failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxxxix.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Stoval was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxl.     Defendant Stoval knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Stoval deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxli. Defendant Stoval (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxlii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Stoval and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxliii. Defendant Stoval (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxliv. Defendant Stoval knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxlv. Defendant Stoval through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxlvi. Defendant Stoval's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxlvii. Defendant Stoval through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory

time at Pasquotank Correctional Institution. Defendant Stoval deliberately failed to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxlviii. Defendant Stoval failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxlix. Defendant Stoval failed to properly staff critical positions. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mml. Defendant Stoval through NCDPS failed to properly monitor inmate movement. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmli. Defendant Stoval through NCDPS failed to properly search for offenders within the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlii. Defendant Stoval through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmliii. Defendant Stoval, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmliv. Defendant Stoval, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlv.      Defendant Stoval through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlvi.      Defendant Stoval through NCDPS failed to conduct adequate inmate searches. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlvii.      Defendant Stoval through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlviii.      Defendant Stoval through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlix.      Defendant Stoval through NCDPS failed to implement adequate control center operations. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlx.      Defendant Stoval through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxi.      Defendant Stoval through NCDPS failed to implement adequate hazard material management. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxii.      Defendant Stoval through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxiii.    Defendant Stoval through NCDPS failed to implement adequate key control management. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxiv.    Defendant Stoval through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxv.    Defendant Stoval through NCDPS failed to implement adequate security inspections. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxvi.    Defendant Stoval through NCDPS failed to implement adequate emergency management plans and responses. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxvii.    Defendant Stoval through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxviii.    Defendant Stoval through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxix.    Defendant Stoval through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxx.    Defendant Stoval through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxi.    Defendant Stoval through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxii.    Defendant Stoval through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxiii.    Defendant Stoval through NCDPS failed to document searches on the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxiv.    Defendant Stoval through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxv.    Defendant Stoval through NCDPS failed to implement security preparedness drills and training. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxvi.    Defendant Stoval through NCDPS failed to implement adequate and up to date emergency plans at the subject premises.  Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxvii.    Defendant Stoval through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxviii.    Defendant Stoval through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxix.    Defendant Stoval through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxx.    Defendant Stoval through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxi.    Defendant Stoval through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxii.    Defendant Stoval through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxiii.    Defendant Stoval through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxiv.    Defendant Stoval through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxv.    Defendant Stoval through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxvi.    Defendant Stoval through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxvii. Defendant Stoval through NCDPS failed to update "post orders" for staff per industry standard. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxviii. Defendant Stoval through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmlxxxix. Defendant Stoval through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Stoval deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

933. Defendant Stoval's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

934. Had Defendant Stoval acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

935.     Further, it was foreseeable that Defendant Stoval's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

936.     As outlined above, Defendant Stoval acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Stoval's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

937.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

938.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to

the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

## COUNT LXXVII
### VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
### AS TO DEFENDANT JERRY CARROLL

939.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

940.     Defendant, JERRY CARROLL ("Defendant Carroll") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant Carroll assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

941.     Defendant Carroll is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident

also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant Carroll (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

942. As Chief Executive Officer and/or Governor of North Carolina, Defendant Carroll, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

943. Unfortunately, Defendant Carroll, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank

Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

944.     Defendant Carroll intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

945.     Unfortunately, Defendant Carroll's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

946.     The result of Defendant Carroll's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT LXXVIII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, JERRY CARROLL**

947.          Plaintiffs hereby incorporate by reference all preceding

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          560

paragraphs as though fully set forth herein.

948.     Defendant Carroll is a "person" as defined under 42 U.S.C. § 1983.

949.     According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

950.     The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

951.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted

"affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

952.    At all times relevant to the allegations in this complaint, Defendant Carroll acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

953.    As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant Carroll's actions and inactions infringed upon that Right.

954.    Alternatively, Defendant Carroll also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

955.    More specifically, Defendant Carroll (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections

Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant Carroll directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

956.     The affirmative acts and/or deliberate inactions committed by Defendant Carroll include:

mmxc.     DEFENDANT CARROLL knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxci.     Defendant Carroll was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mmxcii.     Defendant Carroll knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxciii.     Defendant Carroll failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant Carroll deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxciv. The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant Carroll was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxcv. Defendant Carroll knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxcvi. Defendant Carroll (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxcvii. The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant Carroll and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxcviii. Defendant Carroll (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmxcix. Defendant Carroll knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmc. Defendant Carroll through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant Carroll deliberately failed

to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmci.    Defendant Carroll's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcii.    Defendant Carroll through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmciii.    Defendant Carroll failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmciv.    Defendant Carroll failed to properly staff critical positions. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcv.    Defendant Carroll through NCDPS failed to properly monitor inmate movement. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcvi.    Defendant Carroll through NCDPS failed to properly search for offenders within the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcvii.    Defendant Carroll through NCDPS failed to properly staff designated search areas within the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcviii.   Defendant Carroll, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcix.   Defendant Carroll, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcx.   Defendant Carroll through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxi.   Defendant Carroll through NCDPS failed to conduct adequate inmate searches. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxii.   Defendant Carroll through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxiii.   Defendant Carroll through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxiv.   Defendant Carroll through NCDPS failed to implement adequate control center operations. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxv.   Defendant Carroll through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take

any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxvi. Defendant Carroll through NCDPS failed to implement adequate hazard material management. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxvii. Defendant Carroll through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxviii. Defendant Carroll through NCDPS failed to implement adequate key control management. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxix. Defendant Carroll through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxx. Defendant Carroll through NCDPS failed to implement adequate security inspections. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxi. Defendant Carroll through NCDPS failed to implement adequate emergency management plans and responses. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxii. Defendant Carroll through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxiii. Defendant Carroll through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxiv.    Defendant Carroll through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxv.    Defendant Carroll through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxvi.    Defendant Carroll through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxvii.    Defendant Carroll through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxviii.    Defendant Carroll through NCDPS failed to document searches on the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxix.    Defendant Carroll through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxx.    Defendant Carroll through NCDPS failed to implement security preparedness drills and training. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxi.    Defendant Carroll through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial

actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxii.    Defendant Carroll through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxiii.    Defendant Carroll through NCDPS failed to discontinue security notifications due to broken equipment. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxiv.    Defendant Carroll through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxv.    Defendant Carroll through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxvi.    Defendant Carroll through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxvii.    Defendant Carroll through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxviii.    Defendant Carroll through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxxxix.    Defendant Carroll through NCDPS negligently implemented Conflicting "security key" control policies. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxl.    Defendant Carroll through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxli.    Defendant Carroll through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxlii.    Defendant Carroll through NCDPS failed to update "post orders" for staff per industry standard. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxliii.    Defendant Carroll through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxliv.    Defendant Carroll through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant Carroll deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

957.    Defendant Carroll's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

958. Had Defendant Carroll acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

959. Further, it was foreseeable that Defendant Carroll's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

960. As outlined above, Defendant Carroll acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant Carroll's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life,

each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

961.    The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

962.    Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**COUNT LXXVIX**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE**
**INDIFFERENCE AS TO DEFENDANT CORRECTION**
**ENTERPRISES**

963.    Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

964.    Defendant, CORRECTION ENTERPRISES ("Defendant C.E.") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          572

North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant C.E. assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

965.     Defendant C.E. is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant C.E. (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees (specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

966.     As Chief Executive Officer and/or Governor of North Carolina, Defendant C.E., was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional

officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

967.    Unfortunately, Defendant C.E., acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

968.    Defendant C.E. intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

969.    Unfortunately, Defendant C.E.'s intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

970.    The result of Defendant C.E.'s actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

## COUNT LXXX
## VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE
## AS TO DEFENDANT, CORRECTION ENTERPRISES

971.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

972.    Defendant C.E. is a "person" as defined under 42 U.S.C. § 1983.

973.    According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

974.    The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the

state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

975.     To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

976.     At all times relevant to the allegations in this complaint, Defendant C.E. acted under the color of North Carolina State law, as outlined previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina.  As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

977.     As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections

Officers at Pasquotank Correctional Institution and Defendant C.E.'s actions and inactions infringed upon that Right.

978.     Alternatively, Defendant C.E. also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

979.     More specifically, Defendant C.E. (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant C.E. directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

980.     The affirmative acts and/or deliberate inactions committed by Defendant C.E. include:

mmcxlv.     DEFENDANT C.E. knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxlvi.     Defendant C.E. was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mmcxlvii.    Defendant C.E. knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxlviii.   Defendant C.E. failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxlix.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant C.E. was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcl.        Defendant C.E. knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcli.       Defendant C.E. (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclii.      The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant C.E. and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcliii.     Defendant C.E. (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest

custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcliv. Defendant C.E. knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclv. Defendant C.E. through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclvi. Defendant C.E.'s loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclvii. Defendant C.E. through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory time at Pasquotank Correctional Institution. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclviii. Defendant C.E. failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclix. Defendant C.E. failed to properly staff critical positions. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclx.    Defendant C.E. through NCDPS failed to properly monitor inmate movement. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxi.    Defendant C.E. through NCDPS failed to properly search for offenders within the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxii.    Defendant C.E. through NCDPS failed to properly staff designated search areas within the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxiii.    Defendant C.E., through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxiv.    Defendant C.E., through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxv.    Defendant C.E. through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxvi.    Defendant C.E. through NCDPS failed to conduct adequate inmate searches. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxvii.    Defendant C.E. through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxviii.  Defendant C.E. through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxix.  Defendant C.E. through NCDPS failed to implement adequate control center operations. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxx.  Defendant C.E. through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxi.  Defendant C.E. through NCDPS failed to implement adequate hazard material management. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxii.  Defendant C.E. through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxiii.  Defendant C.E. through NCDPS failed to implement adequate key control management. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxiv.  Defendant C.E. through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxv.  Defendant C.E. through NCDPS failed to implement adequate security inspections. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxvi.  Defendant C.E. through NCDPS failed to implement adequate emergency management plans and responses. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxvii. Defendant C.E. through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxviii. Defendant C.E. through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxix. Defendant C.E. through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxx. Defendant C.E. through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxi. Defendant C.E. through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxii. Defendant C.E. through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxiii. Defendant C.E. through NCDPS failed to document searches on the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxiv. Defendant C.E. through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because

doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxv.   Defendant C.E. through NCDPS failed to implement security preparedness drills and training. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxvi.   Defendant C.E. through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxvii.   Defendant C.E. through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxviii.   Defendant C.E. through NCDPS failed to discontinue security notifications due to broken equipment. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmclxxxix.   Defendant C.E. through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxc.   Defendant C.E. through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxci.   Defendant C.E. through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxcii.   Defendant C.E. through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct

same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxciii. Defendant C.E. through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxciv. Defendant C.E. through NCDPS negligently implemented Conflicting "security key" control policies. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxcv. Defendant C.E. through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxcvi. Defendant C.E. through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxcvii. Defendant C.E. through NCDPS failed to update "post orders" for staff per industry standard. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxcviii. Defendant C.E. through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcxcix. Defendant C.E. through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant C.E. deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

981. Defendant C.E.'s acts and/or deliberate inactions created a risk

of death or serious bodily injury to Plaintiff as violent and/or "Close Custody"

inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

982.     Had Defendant C.E. acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

983.     Further, it was foreseeable that Defendant C.E.'s acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

984.     As outlined above, Defendant C.E. acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant C.E.'s actions and/or omissions.

When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

985.      The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

986.      Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**A. CORRECTIONS ENTERPRISES is not entitled to Sovereign Immunity Protections, pursuant to this Honorable Court's analysis and Dismissal should be *without* prejudice.**

As noted by this Honorable Court, when considering an entity as an agency of the state (in regards to applying Eleventh Amendment Sovereign Immunity Protections), a determinative factor is whether judgements rendered against that entity would be paid from the state's treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 US 30, 48-50 (1994). In *Hess*, the Honorable Court were considering whether Sovereign Immunity

Protections should be granted to the New York Port Authority. The Court reasoned that, although the State exercised some control over the Port Authority, "the Port Authority is financially self-sufficient; it generates its own revenues, and it pays its own debts. Requiring the Port Authority to answer in federal court to injured railroad workers who assert a federal statutory right, under the FELA, to recover damages does not touch the concerns — the States' solvency and dignity — that underpin the Eleventh Amendment." *Id.* at 52-53. In support of this ruling the Court reasoned, "The proper focus is not on the use of profits or surplus, but rather is on losses and debts. If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is "No" — both legally and practically — then the Eleventh Amendment's core concern is not implicated." *Id.* at 51.

According to N.C. Gen. Stat. § 148-129(5), CORRECTIONS ENTERPRISES is an entity that "shall…Generate sufficient funds from the sale of goods and services to be a **self-supporting operation** (*emphasis added*). According to N.C. Gen. Stat. § 148-130:

> **(a) All revenues** from the sale of articles and commodities manufactured or produced by Correction Enterprises shall be deposited with the State Treasurer to be kept and maintained as a special **revolving working-capital fund** designated "Correction Enterprises Fund (emphasis added).

> **(b)** Revenue in the Correction Enterprises Fund **shall be applied** first to **capital and operating expenditures**, including salaries and wages of personnel necessary to develop and operate Correction Enterprises and incentive wages for inmates employed by Correction Enterprises or participating in work assignments established by the Section of Prisons of the Division of Adult Correction and Juvenile Justice. **Of the remaining revenue** in the Fund, five percent (5%) of the net proceeds, before expansion costs, shall be credited to the **Crime Victims**

**Compensation Fund** established in G.S. 15B-23 as soon as practicable after net proceeds have been determined for the previous year. At the direction of the Governor, **the remainder** shall be used for other purposes within the **State prison system or** shall be transferred to the **General Fund** (emphasis added).

**(c)** The Correction Enterprises Fund **shall be the source of all incentive wages and allowances** paid to inmates employed by Correction Enterprises and inmates participating in work assignments established by the Section of Prisons of the Division of Adult Correction and Juvenile Justice (*emphasis added*).

CORRECTIONS ENTERPRISES, like the Port Authority in *HESS*, also serves both interstate and intrastate objectives. According to N.C. Gen. Stat. § 148-132, CORRECTIONS ENTERPRISES is empowered and authorized to market and sell products and services produced by Correction Enterprises to any of the following entities:

(1) Any public agency or institution owned, managed, or controlled by the State.
(2) Any county, city, or town in this State.
(3) **Any federal, state, or local public agency or institution in any other state of the union** (*emphasis added*).
(4) An entity or organization that has tax-exempt status pursuant to section 501(c)(3) of the Internal Revenue Code. Products purchased by an entity pursuant to this subdivision may not be resold.
(5) Any current employee or retiree of the State of North Carolina, member, employee, or retiree of the North Carolina National Guard, or of a unit of local government of this State, verified through federal or State-issued identification, or through proof of retirement status, but purchases by a State employee or retiree, National Guard member, employee, or retiree, or local governmental employee or retiree may not exceed two thousand five hundred dollars ($2,500) during any calendar year. Products purchased by State employees or retirees, National Guard members, employees or retirees, and local governmental employees and retirees under this section may not be resold.

(6) **Private contractors** when the goods purchased will be
used to perform work under a contract with a public agency
(*emphasis added*).

Although, this Honorable Court was correct in that the funds generated by CORRECTIONS ENTERPRISES would be deposited to the North Carolina State Treasury, the operation of same is just the vehicle used to disseminate these "revolving" funds back to CORRECTIONS ENTERPRISES to fully sustain itself. These funds are not technically held in the State's Treasury as noted above. There are no State Resources or Funds generated from other North Carolina governmental entities that contribute to the operations, sales of products, manufacturing, *etc.* provided to CORRECTIONS ENTERPRISES. As noted above, North Carolina requires CORRECTIONS ENTERPRISES to be a "self-supporting operation." Further, CORRECTIONS ENTERPRISES, as the Port Authority in *Hess*, "consumes no State Resources but contributes to the State's wealth. *Id.* at 51, citing *Borchard, Government Liability in Tort*, 34 Yale L. J. 1, 4 (1924); *see also Muskopf v. Corning Hospital Dist.*, 55 Cal.2d 211, 213-216, and n. 1, 359 P.2d 457, 458-460, and n. 1 (1961) (Traynor, J.). As such, the holding in *Hess* is applicable here as CORRECTIONS ENTERPRISES is responsible for generating its own revenues and it pays its own debts. Therefore, it should not be entitled to Sovereign Immunity protections under a well pled theory of liability.

## COUNT LXXXI
### VIOLATION OF 42 U.S.C. § 1983 – RIGHT TO PROTECTIONS FROM HARM COMMITTED BY A THIRD PARTY
### AS TO DEFENDANT NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY

987.     Plaintiff hereby incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

988.     Defendant, NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY ("Defendant NCDPS") is a resident of or holds his principal office in Wake County, North Carolina and is currently serving as the 75th Governor of the State of North Carolina, and has been serving in such capacity since January 1, 2017. At all times material hereto, he had authority over the control, supervision, and/or ownership of the Subject Premises and specific and/or distinct knowledge and involvement during all relevant time periods referenced herein. More specifically, as head of the Executive Branch of North Carolina and serving as the ultimate authority at the North Carolina Department of Public Safety ("NCDPS"), Defendant NCDPS assumed the ultimate supervisory position of all Corrections Officers in the State of North Carolina and had ultimate authority over the policies and procedures of North Carolina State prisons and/or corrections institutions.

989.     Defendant NCDPS is a Public Figure in Wake County, North Carolina. Defendant's role for the State of North Carolina and actions at the time of incident also allowed him to have and establish sufficient minimum contacts in this Judicial District and he is subject to this Court's Jurisdiction. Lastly, under his official title and position with the State of North Carolina, Defendant is a "State Actor" pursuant to 42 U.S.C. § 1983, as the actions taken herein were committed under the Color of North Carolina State Law. As further described, herein, Defendant NCDPS (during his term as Governor of North Carolina) demonstrated his intent to harm Plaintiffs by specifically placing profits over State Correctional Institution Employees

(specifically Plaintiffs) and those similarly situated by diverting profits garnered by Corrections Enterprises to benefit his office and other State agencies/departments while failing to appropriately enforce and/or properly apportion adequate resources and/or funding to ensure a safe environment for Plaintiffs.

990. As Chief Executive Officer and/or Governor of North Carolina, Defendant NCDPS, was aware that there was a special relationship that existed (detailed above) between Plaintiffs and the State of North Carolina. In his role and position in the North Carolina Executive Branch he knew and/or should have known of the glaring issues regarding staffing concerns, prior incident of a correctional officer's death and comprehensive studies undertaken by the Secretary of NCDPS discussed in Paragraph 8, above.

991. Unfortunately, Defendant NCDPS, acting under the Color of North Carolina Authority and/or Law, acted in contravention of ensuring adequate safety and security at Pasquotank Correctional Institution by intentionally diverting State funding, Corrections Enterprises profits, and State resources from Pasquotank Corrections Institution to other State of North Carolina Agencies and Offices, including his own Discretionary Fund.

992. Defendant NCDPS intended to harm Plaintiffs as he knew the consequence of inadequate funding and resources would lead to greater risks of exposure to physical injury to Corrections Officers and Inmates of North Carolina's Correctional Facilities, including, Pasquotank Correctional Institution.

993. Unfortunately, Defendant NCDPS's intent was rather to place "profits over people" in that he directed and encouraged those under his Chain of Command

at North Carolina Department of Public Safety, Pasquotank Corrections Institution, and Corrections Enterprises to drive down costs for overhead and expenses for operations at North Carolina's Corrections Facilities, meanwhile increasing revenues and profits from the Corrections Enterprise Sewing Plant and other third party companies affiliated with North Carolina's Prison System to garner profits from the production and sale of merchandise derived from the inexpensive cost of labor employing North Carolina's custodial inmates to preform those production efforts.

994.    The result of Defendant NCDPS's actions led to gross understaffing and below standards in adequate safety and security measures at Pasquotank Correctional Institution, inevitably creating the danger which was the causal and/or proximate cause of the injuries and damages incurred by Plaintiffs discussed herein.

**COUNT LXXXII**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE**
**AS TO DEFENDANT, NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY**

995.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

996.    Defendant NCDPS is a "person" as defined under 42 U.S.C. § 1983.

997.    According to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

998.          The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *see also, Patel v. Kent Sch. Dist* , 648 F.3d 965, 971–72 (9th Cir.2001).

999.          To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in "affirmative conduct" that placed him or her in danger. This "affirmative conduct" requirement has several components. A plaintiff must show not only that the defendant acted "affirmatively," but also that the affirmative conduct: 1.) placed him in a worse position than that in which he would have been had [the state] not acted at all; 2.) The affirmative act must have exposed the plaintiff to an actual, particularized danger; and 3.) the resulting harm must have been foreseeable. *See, Pauluk v. Savage*, 836 F.3d 1117, 1124-1125 (9th Cir. 2016) Second, the state actor must have acted with deliberate indifference to a known or obvious danger. *Id.*

1000.          At all times relevant to the allegations in this complaint, Defendant NCDPS acted under the color of North Carolina State law, as outlined

previously, and served agents, contractors, servants, and/or employees of the North Carolina Department of Public Safety, the Pasquotank Correctional Institution, and/or the State of North Carolina. As such, he was responsible for upholding the laws of the United States and of the State of North Carolina.

1001. As noted previously, Plaintiffs had a Constitutional Right to be protected from harm committed by third parties due to the special relationship they had with the State of North Carolina related to their employment as Corrections Officers at Pasquotank Correctional Institution and Defendant NCDPS's actions and inactions infringed upon that Right.

1002. Alternatively, Defendant NCDPS also acted with Deliberate Indifference to Plaintiff by affirmatively placing Plaintiff in danger of physical harm or death to a known or obvious danger of violent inmates attempting to escape the Pasquotank Correctional Institution.

1003. More specifically, Defendant NCDPS (through supervisory control of NCDPS) aimed to maximize profits and revenue from the Corrections Enterprises Sewing Plant located on the Pasquotank Correctional Institution premises in order to divert those funds to other State interests as well as his own discretionary fund. In doing so, Defendant NCDPS directed, permitted, encouraged, and/or used his influence (as Governor of North Carolina) over NCDPS to ensure that Pasquotank Correctional Institution operated at below staffing requirements and minimized access to adequate resources to increase revenues and profits from the merchandise produced by the Sewing Plant.

1004.     The affirmative acts and/or deliberate inactions committed by

Defendant NCDPS include:

mmcc.     DEFENDANT NCDPS knew that the Pasquotank Correctional Institution security policies were outdated and not succinctly written per industry standard; however, deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcci.     Defendant NCDPS was well aware of the NCDPS' deficient and outdated security policies, which he also knew effected the safety of correctional staff, inmates, and the public's safety; however, he deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations

mmccii.     Defendant NCDPS knew that Corrections Enterprises had its own safety and security policies which were separate and distinct from NCDPS' policies; however, their policies and procedures contained security inaccuracies and were incongruent with NCDPS' policies and procedures. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcciii.     Defendant NCDPS failed to address the security needs of correctional staff, inmates and the public. These issues were known for years and went unaddressed. The overarching results created inconsistencies in the application of security practices in Pasquotank Correctional Institution, as well as the Corrections Enterprises security operations. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcciv.     The Pasquotank Correctional Institution was operating with an alarming 25% staff deficiency. Defendant NCDPS was well aware the subject premises was operating below critical staffing levels which placed correctional staff, inmates and the public at risk. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccv.     Defendant NCDPS knew that the Pasquotank Correctional Institution was operating without proper safety equipment and/or failed to properly train their employees to utilize such equipment they did have. Defendant NCDPS deliberately failed to take any actions to direct or take any

remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccvi.    Defendant NCDPS (through his role over NCDPS) failed to provide proper training and refresher courses to employees of Pasquotank Correctional Institution. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccvii.   The Pasquotank Correctional Institution was lacking an appropriate Incident Command System (ICS), which was to be provided by Defendant NCDPS and those under his Chain of Command at NCDPS and Corrections Enterprises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccviii.  Defendant NCDPS (through his supervisory role over NCDPS) failed to follow industry standards in work assignments by allowing one of the highest custody inmates (*i.e.,* Defendant, MIKEL E. BRADY, II) to work and be employed by CORRECTION ENTERPRISES at their Sewing Plant on the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccix.    Defendant NCDPS knew or should have known that there was low morale among staff of Pasquotank Correctional Institution and Corrections Enterprises, due to the staffing and policy/procedure deficiencies. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccx.     Defendant NCDPS through NCDPS employed mandatory overtime requirements further supporting their knowledge of staff shortages at Pasquotank Correctional Institution. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxi.    Defendant NCDPS's loss of control over inmates of Pasquotank Correctional Facility and/or employees of Corrections Enterprises led to a reduction in disciplinary sanctions against inmate/personnel wrongdoing thereby failing to deter same from recurrence. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxii.   Defendant NCDPS through NCDPS failed to provide adequate supervision of inmates and/or employees and also failed to spend adequate time supervising inmates and/or employees when they did supply supervisory

time at Pasquotank Correctional Institution. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxiii. Defendant NCDPS failed to enforce safety and security policies that either existed in some form and/or the safety and security policies that are generally commonplace in corrections institutions. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxiv. Defendant NCDPS failed to properly staff critical positions. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxv. Defendant NCDPS through NCDPS failed to properly monitor inmate movement. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxvi. Defendant NCDPS through NCDPS failed to properly search for offenders within the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxvii. Defendant NCDPS through NCDPS failed to properly staff designated search areas within the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxviii. Defendant NCDPS, through NCDPS and Corrections Enterprises, attempted to operate the Sewing Plaint at full capacity without adequate staffing consisting of the appropriate number and/or industry standard of Corrections Officers to Inmate ratios. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxix. Defendant NCDPS, through NCDPS, preformed inadequate security audits and quality training for security auditors. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxx.  Defendant NCDPS through NCDPS failed to implement tool and sensitive items control within the subject premises, thereby limiting and/or adequately monitoring inmate access to sharp and blunt objects which could be used, as in this matter, as deadly weapons. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxi.  Defendant NCDPS through NCDPS failed to conduct adequate inmate searches. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxii.  Defendant NCDPS through NCDPS failed to adequately control and store nonlethal as well as lethal equipment which inmates had access too. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxiii.  Defendant NCDPS through NCDPS failed to implement adequate communications and alert systems at the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxiv.  Defendant NCDPS through NCDPS failed to implement adequate control center operations. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxv.  Defendant NCDPS through NCDPS failed to implement adequate and controlled inmate movement procedures within the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxvi.  Defendant NCDPS through NCDPS failed to implement adequate hazard material management. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxvii.  Defendant NCDPS through NCDPS failed to implement adequate classification standards for inmate work assignments. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxviii.  Defendant NCDPS through NCDPS failed to implement adequate key control management. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxix.  Defendant NCDPS through NCDPS failed to implement adequate standard operating procedures, which are generally accepted by their respective industry. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxx.  Defendant NCDPS through NCDPS failed to implement adequate security inspections. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxi.  Defendant NCDPS through NCDPS failed to implement adequate emergency management plans and responses. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxii.  Defendant NCDPS through NCDPS failed to implement adequate security cameras to monitor inmate movement and areas of heightened security risk within the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxiii.  Defendant NCDPS through NCDPS utilized untrained staff to supervise security functions at the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxiv.  Defendant NCDPS through NCDPS failed to establish proper procedures and control access to restricted areas such as the elevators and back docks. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxv.  Defendant NCDPS through NCDPS failed to staff critical monitoring stations within the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxvi.    Defendant NCDPS through NCDPS failed to maintain updated policies for internal movement of inmates on the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxvii.   Defendant NCDPS through NCDPS failed to comply with policies requiring mass searches of the Sewing Plant and other areas within facility on the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxviii.  Defendant NCDPS through NCDPS failed to document searches on the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxxxix.    Defendant NCDPS through NCDPS failed to remedy "Search Rooms" which were too small to safely process inmate searches and lacked privacy at the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxl.       Defendant NCDPS through NCDPS failed to implement security preparedness drills and training. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxli.      Defendant NCDPS through NCDPS failed to implement adequate and up to date emergency plans at the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxlii.     Defendant NCDPS through NCDPS failed to maintain security devices to ensure they are operational on the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxliii.    Defendant NCDPS through NCDPS failed to discontinue security notifications due to broken equipment. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxliv.    Defendant NCDPS through NCDPS failed to conduct security checks and tests of security measures on the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxlv.    Defendant NCDPS through NCDPS failed to designate adequate "police areas" and keep clutter removed from areas which created "blind spots" at the subject premises where criminal acts occurred. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxlvi.    Defendant NCDPS through NCDPS failed to implement adequate supervision and monitoring, which allowed unfettered access to "security keys" on the subject premises for unauthorized entry and exit of the facility. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxlvii.    Defendant NCDPS through NCDPS failed to establish a comprehensive security audit system per industry standard. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxlviii.    Defendant NCDPS through NCDPS failed to implement adequate controls to access of "security keys" by allowing employees of Corrections Enterprises Sewing Plant to possess "security keys" which would allow them unauthorized entry and exit of the subject premises. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccxlix.    Defendant NCDPS through NCDPS negligently implemented Conflicting "security key" control policies. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccl.    Defendant NCDPS through NCDPS failed to maintain a daily "security key" audit per industry standard. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccli.    Defendant NCDPS through NCDPS failed to establish a trained "lock and key position" per industry standard. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same

because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmcclii. Defendant NCDPS through NCDPS failed to update "post orders" for staff per industry standard. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccliii. Defendant NCDPS through NCDPS failed to adequately enforce staff to read "post orders" per industry standards. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

mmccliv. Defendant NCDPS through NCDPS failed provide adequate emergency equipment such as radios and communications equipment. Defendant NCDPS deliberately failed to take any actions to direct or take any remedial actions to correct same because doing so would detract from the profit driven goal of the Sewing Plant operations.

1005. Defendant NCDPS's acts and/or deliberate inactions created a risk of death or serious bodily injury to Plaintiff as violent and/or "Close Custody" inmates were able to gain unfettered access to dangerous tools and objects due to the lax and uncontrolled application of inadequate policies, procedures and gross deficiencies in staffing and/or access to adequate resources (as outlined above).

1006. Had Defendant NCDPS acted appropriately in committing to reasonable and adequate remedial measures to correct issues previously identified as early as February of 2017 within the North Carolina Correctional System, Plaintiffs would not have been exposed to the violent attacks they unfortunately suffered as there would have been adequate supervision, staffing, and control mechanisms to ensure that violent and/or Close Custody inmates would not have access to dangerous tools and objects from the Sewing Plant.

1007.     Further, it was foreseeable that Defendant NCDPS's acts and or deliberate inactions of relaxing staffing and/or investing resources for adequate operations policies and procedures at Pasquotank Correctional Institution were implemented that a Close Custody Inmate(s) would abscond with tools and objects from the sewing plant to commit harm on Correctional Staff.

1008.     As outlined above, Defendant NCDPS acted with deliberate indifference and/or reckless disregard to Plaintiffs' safety and well-being in violation of Plaintiffs' Fourteenth Amendment rights, more specifically, their rights established to be protected from harm inflicted by a third party due to the special relationship each had with the State of North Carolina. Defendants' conduct deprived Plaintiffs of their entitled rights, privileges, and/or immunities granted to them by the laws of the United States of America and the United States Constitution. Each Plaintiff lost their lives due to the Defendant NCDPS's actions and/or omissions. When the incident occurred, the Plaintiffs were locked inside the subject premises, were deprived of their liberty, and left to defend themselves against violent offenders wielding scissors and claw hammers. Lastly, due to the loss of life, each Plaintiff was deprived of their current and/or future earnings, real property interests, other property, and/or their enjoyment of same.

1009.     The acts and/or omissions of all Defendants were the legal and proximate cause of Plaintiffs' injuries and the deprivation of Plaintiffs' rights to life, liberty and property.

1010.     Plaintiffs' Damages include but are not limited to: burial costs and funeral expenses; Expenses for care, treatment and hospitalization incident to

the injury resulting in death; loss of income; loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

**B. NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, (hereinafter, "NCDPS") should not be granted Sovereign Immunity Protections and dismissal should be *without* prejudice.**

As noted by this Honorable Court and noted above, when considering an entity as an agency of the state (in regards to applying Eleventh Amendment Sovereign Immunity Protections), a determinative factor is whether judgements rendered against that entity would be paid from the state's treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 US 30, 48-50 (1994). As it pertains to Defendant, NCDPS, there is a genuine issue of fact as to whether the North Carolina State Treasury, in fact, pays its debts. It is Plaintiffs contention, supported by North Carolina Law and pre-suit discovery efforts, that NCDPS is an entity whose debts, specifically pertaining to 42 U.S.C. §1983 and/or other Federal Claims whereas sovereign immunity protections do not extend, are paid through insurance sources secured by North Carolina's Public Employees Liability Insurance Commission. As such, if adequately pled, NCDPS should be subject to suit as an entity wholly separate from the State of North Carolina in applicable circumstances.

N.C. Gen. Stat. § 58-32-10 discusses the powers and the duties of the North Carolina Public Employees Liability Insurance Commission. It states in pertinent part:

> The Commission may acquire from an insurance company
> or insurance companies a group plan of professional

ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND          604

liability insurance covering the **law-enforcement officers and/or public officers and employees** of any political subdivision of the State. The Commission has full authority to negotiate with insurance companies submitting bids or proposals and shall award its group plan master contract on the basis of the company or companies found by it to offer maximum coverage at the most reasonable premium. The Commission may enter into a master policy contract of any term that it finds to be in the best interests of the law-enforcement officers and/or public officers and employees of the political subdivisions of the State, not to exceed five years. The Commission, in negotiating for the contract, is **not authorized to pledge or offer the credit of the State of North Carolina**. The insurance **premiums shall be <u>paid by the political subdivisions whose employees are covered</u> by the professional liability insurance**. Any political subdivision may elect coverage for any or all of its employees on a departmental basis. All employees in a department must be covered if coverage is elected for that department. Nothing in this section requires any political subdivision to participate in any group plan of professional liability insurance (*emphasis added*).

Of significance, N.C. Gen. Stat. § 58-32-20 indicates that the State of North Carolina, through the Public Employees Liability Insurance Commission merely acts as a liaison between the professional liability insurers and their insureds. Thereby, no funds or premiums are paid using resources from the State Treasury of North Carolina. It is also important to note that the North Carolina Legislature recognized that adequate protections from liability pursuant to Federal Causes of Action, as the case at bar, were necessary in excess or in exclusion of any Sovereign Immunity Protections to serve a Public Purpose for the State as it indicated specifically in N.C. Gen. Stat. § 58-32-30, that the "The payment by any county or municipality of funds as premiums for professional liability insurance through the plan provided herein, covering the law-enforcement officers or public officials or employees of such subdivision of government, is declared to be for a public purpose."

It is Plaintiffs contention that Defendant, NCDPS, is an entity and/or agency of North Carolina that has elected Professional Liability Insurance Coverage through the North Carolina Public Employees Liability Commission in order to insure and obtain defense for Federal causes of action such as the case at bar. Through pre-suit discovery, Plaintiffs have procured a copy of the policy of insurance elected by NCDPS and have attached same as an ***exhibit*** to this filing. The evidence of a purported policy of insurance elected by NCDPS and potential future discovery detailing NCDPS procurement of same through the North Carolina Public Employees Professional Liability Commission creates a genuine issue of fact as to whether the North Carolina State Treasury, in fact, pays the debts of Federal Claims not subject to State Sovereign Immunity protections. As the statutes outline, above, the premiums for these policies are paid directly by the entity electing the coverage and the State of North Carolina is merely a liaison for how this coverage is procured.

**COUNT LXXXIII**
**VIOLATION OF 42 U.S.C. § 1983**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**PURSUANT TO THE FOURTEENTH AMENDMENT VIOLATIONS (RIGHT**
**TO THE PURSUIT OF HAPPINESS)**
**AS TO ALL DEFENDANTS**

1011.     Plaintiffs hereby incorporate all preceding paragraghs.

1012.     Defendants caused emotional distress by engaging in the actions outlined all of the preceding paragraghs.

**COUNT LXXXIV**
**VIOLATION OF 42 U.S.C. § 1983**
**PURSUANT TO THE FOURTEENTH AMENDMENT VIOLATIONS**
**(RIGHT TO THE PURSUIT OF HAPPINESS) INTENTIONAL INFLICTION**
**OF EMOTIONAL DISTRESS**

Case 1:20-cv-00953-TDS-LPA   Document 1   Filed 10/15/20   Page 606 of 609

**AS TO DEFENDANTS REGINA FEREBEE, ROBERT KADAHL, MIKEL BRADY, WISEZAH BUCKMON, SETH FRAZIER, AND JONATHAN MONK**

1013.　　　Plaintiffs hereby incorporate all preceding paragraghs.

1014.　　　Defendants caused emotional distress by engaging in the actions outlined all of the preceding paragraghs.

**COUNT LXXXV**
**VIOLATION OF 42 U.S.C. § 1983-**
**FOURTEEN AMENDMENT SUBSTANTIVE DUE PROCESS (LIBERTY INTEREST) FALSE IMPRISONMENT**
**AS TO DEFENDANTS REGINA FEREBEE, ROBERT KADAHL, MIKEL BRADY, WISEZAH BUCKMON, SETH FRAZIER, AND JONATHAN MONK.**

1015.　　　Plaintiffs hereby incorporate all preceding paragraghs.

1016.　　　Defendants violated Plaintiff's rights to liberty by engaging in the actions outlined in all of the preceding paragraghs.

**COUNT XXXIII**
**VIOLATION OF 42 U.S.C. § 1983 – LOSS OF CONSORTIUM (CLOSE FAMILIAL RELATIONSHIP)**
**AS TO ALL DEFENDANTS**

1017.　　　PLAINTIFFS asserts this claim against ALL DFENDANTS and incorporates all preceding paragraphs.

1018.　　　 Plaintiffs ROSA SHANNON, TAMMY SHANNON, and ARNETTA SHEARD bring this claim pursuant to 42 U.S.C. § 1983.

1019.　　　PLAINTIFFS present the following facts to support their claims:

1020.　　　Each Plaintiff had a loving and life long relationship with WENDY SHANNON;

1021.    Since the events of October 12, 2017 their lives have been

irreversibly changed to their detriment; and

1022.    WENDY SHANNON is no longer able to provide them care,

companionship, advice, among other things due to her death.

1023.    Plaintiffs have suffered both physical and mental injuries as a

result of WENDY SHANNONS's  tragic death.


**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs pray that this Court enter judgment against each

Defendant, and grant:

A.    All compensatory damages allowable by law;

B.    Attorneys' fees and the costs associated with this action, including expert

witness fees, on all claims as allowed by law;

C.    Pre- and post-judgment interest at the lawful rate; and

D.    Any further relief that this Court deems just and proper, and any other

appropriate relief available at law and equity.


**PLAINTIFFS REQUEST A TRIAL BY JURY.**

/s/ Donnya N. Banks
Donnya N.Banks
Attorney at Law
Entering Special Appearance
Illinois State Bar #6323521
The Banks Law Firm
20 West Kinzie Street
Chicago, IL 60654
t. 312.366.3399
f. 312.366.3457


ROSA SHANNON ORIGINAL COMPLAINT WITH JURY DEMAND         608

e. dnb@thebankslawfirm.com

/s/ Ryan S. Luft
Ryan S. Luft
Attorney at Law
Local Counsel
North Carolina State Bar #35717
Luft Law Group
3125 Kathleen Avenue #116
Greensboro, North Carolina 27408
t. 336.638.1789
f. 336.464.2599
e. ryan@luftlaw.com
w. www.luftlaw.com