# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ROSA SHANNON, et al.,        )
                             )
             Plaintiffs,     )
                             )
     v.                      )          1:20CV953
                             )
MIKEL E. BRADY II, et al.,   )
                             )
                             )
             Defendants.     )
```

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on the "Response to Order to Show Cause" (Docket Entry 25 (the "Show Cause Response")) and the "Motion for Enlargement of Time to File Response to Order to Show Cause" (Docket Entry 28 (the "Enlargement Motion")). For the reasons that follow, the Court (i) will deny the Enlargement Motion and (ii) should dismiss this action as to Defendants Mikel E. Brady II, Wisezah D. Buckman, and Jonathan M. Monk.[1]

## BACKGROUND

On October 15, 2020, Plaintiffs (through counsel) commenced this action by filing their Complaint, which (across 609 cut-and-pasted pages) seeks relief, pursuant to 42 U.S.C. § 1983 ("Section 1983"), (A) against 39 individuals and two entities all

---

[1] This lawsuit constitutes one of eight related cases alleging substantially similar claims, brought by the same attorneys, against the same Defendants, and arising from the same underlying events. See Midgett v. Cooper, No. 1:20CV941 (M.D.N.C.); Casper v. Cooper, No. 1:20CV942 (M.D.N.C.); Nowell v. Cooper, No. 1:20CV943 (M.D.N.C.); Mathewson v. Cooper, No. 1:20CV944 (M.D.N.C.); Darden v. Cooper, No. 1:20CV947 (M.D.N.C.); Mathewson v. Cooper, No. 1:20CV951 (M.D.N.C.); Shannon v. Cooper, No. 1:20CV952 (M.D.N.C.).

inexplicably identified as North Carolina's "Governor" (Docket Entry 1, ¶¶ 20-22, 35, 44-46, 59, 68-70, 76-78, 91, 100-02, 115, 124-26, 139, 148-50, 163, 172-74, 187, 196-98, 211, 220-22, 235, 244-46, 259, 268-70, 283, 292-94, 307, 316-18, 331, 340-42, 355, 364-66, 379, 388-90, 403, 412-14, 427, 436-38, 451, 460-62, 475, 484-86, 499, 508-10, 523, 532-34, 547, 556-58, 571, 580-82, 595, 604-06, 619, 628-30, 643, 652-54, 667, 676-78, 691, 700-02, 715, 724-26, 739, 748-50, 763, 772-74, 787, 796-98, 811, 820-22, 835, 844-46, 859, 868-70, 883, 892-94, 907, 916-18, 931, 940-42, 955, 964-66, 979, 988-90, 1003) (see id., ¶¶ 1-1010), as well as (B) against Mikel E. Brady II (identified as "one of the highest custody inmates" (id., ¶ 36 viii; accord, e.g., id., ¶¶ 60 lxiii, 92 cxviii, 116 clxxiii, 140 ccxxviii)), Wisezah D. Buckman (or Buckmon), Seth J. Frazier, and Jonathan M. Monk (each of the latter three not further identified) (see id., ¶¶ 1013-16), in connection with "three [] brutal[] murder[s of state prison employees] in an attempted escape" (id., ¶ 3).[2]

---

[2] The Complaint's Caption identifies Plaintiffs as "Dyrel Rosa Shannon, Tammy Shannon, and Arnetta Sheard" (Docket Entry 1 at 1 (all-caps font omitted); see also id., ¶¶ 1018 (referring to "Plaintiffs Rosa Shannon, Tammy Shannon, and Arnetta Sheart" (all-caps font omitted)), 1020 (alleging that "[e]ach Plaintiff had a loving and life long relationship with Wendy Shannon")), but elsewhere the Complaint mentions "Plaintiff Justin Smith" (id., ¶ 11 (all-caps font and comma omitted); accord id., ¶¶ 15, 17 (all-caps font and comma omitted)), as well as "Plaintiff Darden" and "Plaintiff Shannon" (id., ¶ 15 (all-caps font omitted)), and their deaths during the escape attempt (see id.; see also, e.g., id., ¶ 3 (describing "Plaintiffs" as "employees at the Pasquotank Correctional Institution" in conjunction with allegation that "all three [of them] were brutally murdered")). The Complaint purports to state: (1) 82 separate Section 1983 claims against Defendants other than Defendants Brady, Buckman, Frazier, and Monk for violation of Plaintiffs' "right to protections from harm committed by a third party" and for "deliberate indifference" (id., ¶¶ 19-1010 (quotations
(continued...)

## I. Extension for Service of Process

Via Notice dated March 15, 2021, the Clerk advised Plaintiffs that "[t]he [D]ocket in this action d[id] not reflect that service ha[d] been obtained upon any Defendants." (Docket Entry 3 at 1 (all-caps font and emphasis omitted).) That Notice emphasized the strictures of Federal Rule of Civil Procedure 4(m)[3] and gave Plaintiffs "14 days to respond to th[e N]otice." (Id.) The day after that deadline passed, Plaintiffs filed a Response to Notice to Counsel of Failure to Make Service within 90 Days and Motion to Enlarge Time to Serve Defendants (Docket Entry 4 ("Service Extension Request")), which Service Extension Request the Court (per the undersigned Magistrate Judge) granted in part by extending the deadline for service until May 7, 2021 (see Text Order dated Apr. 6, 2021; see also id. ("Given the length of time this case has

---

[2](...continued)
from accompanying headings with emphasis and all-caps font omitted)); (2) a Section 1983 claim for "negligent infliction of emotional distress pursuant to the Fourteenth Amendment violations (right to the pursuit of happiness) as to all Defendants" (id., ¶¶ 1011-12 (quotation from accompanying heading with emphasis and all-caps font omitted)); (3) a Section 1983 claim "pursuant to the Fourteenth Amendment violations (right to the pursuit of happiness) intentional infliction of emotional distress as to Defendants Regina Ferebee, Robert Kadahl, [] Brady, [] Buckm[a]n, [] Frazier, and [] Monk" (id., ¶¶ 1013-14 (quotation from accompanying heading with emphasis and all-caps font omitted)); (4) a Section 1983 claim for "Fourteenth Amendment substantive due process (liberty interest) false imprisonment as to Defendants [] Ferebee, [] Kadahl, [] Brady, [] Buckm[a]n, [] Frazier, and [] Monk" (id., ¶¶ 1015-16 (quotation from accompanying heading with emphasis and all-caps font omitted)); and (5) a Section 1983 claim for "loss of consortium (close familial relationship) as to all Defendants" (id., ¶¶ 1017-23 (quotation from accompanying heading with emphasis and all-caps font omitted)).

[3] "If a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

-3-

languished . . . , the Court does not find good cause for the lengthier extension requested by Plaintiffs.")).

## II. Amendment, Answer, and Dismissal

On May 7, 2021, the deadline for service of process, Plaintiffs filed their First Amended Complaint (Docket Entry 8).[4] The Caption of the First Amended Complaint lists "Plaintiffs" as "Rosa Shannon," "Tammy Shannon," "Arnetta Sheard." (Id. at 1 (all-caps font omitted); see also id. at 2 ("Plaintiffs Rosa Shannon, Tammy Shannon, and Arnetta Sheard file this [First] Amended [C]omplaint . . . ." (all-caps font omitted)); but see id. at 31 (retaining reference to "Plaintiff Smith" (all-caps font and comma omitted)).)[5] The First Amended Complaint deletes the Complaint's mistaken references to dozens of Defendants as the Governor of North Carolina (and drops any entities as Defendants), in favor of naming as Defendants (A) Defendant Cooper (alone identified as Governor), (B) 35 other Defendants (identified as prison officials/employees), and (C) Defendants Brady, Buckman, Frazier,

---

[4] The First Amended Complaint restarts the paragraph numbers after paragraph 60 and (duplicate) paragraph 23 (see Docket Entry 8 at 31, 44) and alters the page numbers by labeling page 110 as page 98 (see id. at 110). See Midgett v. Cooper, No. 1:20CV941, 2021 WL 4973634, at *2 n.7 (M.D.N.C. Oct. 26, 2021) (unpublished) (noting similar errors in First Amended Complaint filed in that case). As a result, all pin citations to the First Amended Complaint refer to the page numbers that appear in the footer appended at the time of docketing in the Court's CM/ECF system.

[5] In its body, the First Amended Complaint alleges that "Plaintiffs are close family members of employee Wendy Shannon who worked at the Pasquotank Correctional Facility . . . . Wendy Shannon was brutally attacked in an attempted escape . . . . Wendy Shannon died weeks later from the horrific injuries she suffered at the hands of multiple inmates." (Id. at 23.)

-4-

and Monk (identified as prison inmates).  (See id. at 11-22.)
Otherwise, the First Amended Complaint generally repeats the claims
from the Complaint (see id. at 31-517), while interspersing four
new, entirely unspecified claims against Defendants Brady, Buckman,
Frazier, and Monk (see id. at 240-44), and tacking on three more
conclusory Section 1983 claims "against all individual Defendants
for Fourteenth Amendment violations," against unspecified
Defendants for "failure to train and supervise for Fourteenth
Amendment violations," and against unspecified Defendants for
"Fourteenth Amendment state created danger" (id. at 517-19
(emphasis, all-caps font, and parentheses omitted)).

　　　　Defendant Frazier thereafter filed an undated Answer, which
the Clerk docketed on May 20, 2021.  (See Docket Entry 11.)  After
obtaining an extension of time (see Text Order dated May 28, 2021),
"all [D]efendants except [i]nmate Defendants Brady, Buckman,
Frazier, and Monk" (Docket Entry 18 at 1 n.1) timely moved to
dismiss the claims against them for "failure of service of process
and lack of jurisdiction, improper amendment, lack of standing, res
judicata, qualified immunity, and failure to state a claim" (id. at
1).  See also Midgett v. Cooper, No. 1:20CV941, Docket Entry 18 at
11 (M.D.N.C. June 30, 2021) ("Plaintiffs did not effect proper

-5-

service on a single Defendant by May 7[, 2021], the date ordered by this Court.").[6]

Upon review of that motion in _Midgett_, the Court (per Chief United States District Judge Thomas D. Schroeder) dismissed the claims (except as to Defendants Brady, Buckman, Frazier, and Monk) based on lack of prudential standing, without considering the other asserted bases for dismissal. See _Midgett v. Cooper_, No. 1:20CV941, 2021 WL 4973634, at *1, 4 (M.D.N.C. Oct. 26, 2021) (unpublished).[7] Several months later, in this action, the Court (per Chief Judge Schroeder) likewise dismissed the claims against the same set of Defendants "for lack of prudential standing" (Docket Entry 32 (the "Dismissal Order") at 8 (citing resolution of substantially identical dismissal motion in _Midgett_)). In so doing, the Court rejected the proposed amended complaints tendered in the related cases (including this one (see Docket Entry 26; see also Docket Entry 26-1 (proposed second amended complaint))). (See Docket Entry 32 at 8–15 (denying amendment as futile).)

---

[6] The above-referenced Defendants sought dismissal in each of the eight related cases but filed the supporting memorandum only in _Midgett_, as ordered by the Court (per Chief United States District Judge Thomas D. Schroeder). See _Midgett_, No. 1:20CV941, Docket Entry 16 at 4 (M.D.N.C. June 30, 2021) (directing Defendants to file any dismissal motions separately in each case but clarifying that "briefing will proceed only as to case number 1:20-cv-00941").

[7] Chief Judge Schroeder stayed briefing in the seven related cases, including this one, during the pendency of the dismissal motion in _Midgett_, see _Midgett_, No. 1:20CV941, Docket Entry 16 at 5 (M.D.N.C. June 30, 2021). (See also Docket Entry 22 at 4 (lifting stay in this action).)

### III. Show Cause Order and Response

During the time between the dismissal in <u>Midgett</u> and the Dismissal Order in this action, the Court (per the undersigned Magistrate Judge) "requir[ed] Plaintiffs to show cause in writing, on or before 11/17/2021, why the Court should not dismiss this action as to Defendants [] Brady, [] Buckman, and [] Monk, pursuant to Federal Rule of Civil Procedure 4(m)." (Text Order dated Nov. 10, 2021; <u>see also</u> <u>id.</u> (cautioning that "[f]ailure by Plaintiffs to comply with th[at] Text Order will result in the dismissal of this action as to th[o]se Defendants.").) On November 18, 2021, Plaintiffs belatedly filed the Show Cause Response, "point[ing] this Court to [Plaintiffs'] contemporaneous Motion for Leave to File Second Amended Complaint, which alleges related new claims against these four [sic] Defendants. In addition, Plaintiffs [] attach[ed] documents [to] demonstrat[e] that Plaintiffs did effectuate service pursuant to Federal Rule of Civil Procedure 4." (Docket Entry 25 at 2 (referring to Docket Entry 26 and Docket Entry 25-1, respectively).)[8]

Later that day, Plaintiffs filed a Motion for Enlargement of Time to File Response to Order to Show Cause (Docket Entry 28 (the "Enlargement Motion")), asking the Court to "accept Plaintiff's

---

[8] As already discussed, the Court (per Chief Judge Schroeder) since has rejected Plaintiffs' efforts to amend the First Amended Complaint. (<u>See</u> Docket Entry 32 at 8–15.)

[sic] [Show Cause] Response as timely" (id. at 3 (parenthetical citation omitted)).[9]

**DISCUSSION**

## I. Enlargement Motion

"All motions, unless made during a hearing or at trial, . . . shall be accompanied by a brief except as provided in section (j) of [Local R]ule [7.3]." M.D.N.C. LR 7.3(a). That cross-referenced provision excludes from the briefing requirement nine specific motions, including motions "for extension of time for the performance of an act required or allowed to be done, provided request therefor is made before the expiration of the period originally prescribed or as extended by previous orders," M.D.N.C. LR 7.3(j), but not post-deadline extension motions, see id.

Despite the above-quoted, unambiguous requirement, Plaintiffs did not file a brief in support of the Enlargement Motion. (See Docket Entries dated Nov. 10, 2021, to present.) "A motion unaccompanied by a required brief may, in the discretion of the

---

[9] During that same time, the Court (per the undersigned Magistrate Judge) issued an order in Midgett "requir[ing those p]laintiffs to show cause in writing, on or before 11/17/2021, why the Court should not dismiss th[at] action as to Defendants [] Brady, [] Buckman, and [] Monk, pursuant to Federal Rule of Civil Procedure 4(m)." Midgett, No. 1:20CV941, Text Order dated Nov. 10, 2021 (M.D.N.C.). After a written response to that order, accompanied by a filing that mirrors the Enlargement Motion, the undersigned (for reasons explained in the Discussion that follows above) recommended that the Court dismiss that action as to Defendants Brady, Buckman, and Monk. See Midgett, No. 1:20CV941, Docket Entry 31 (M.D.N.C. Dec. 3, 2021). The plaintiffs in that action objected to that recommendation, see Midgett, No. 1:20CV941, Docket Entry 33 (M.D.N.C. Dec. 17, 2021), which objections Chief Judge Schroeder overruled in adopting the recommendation and dismissing that action as to Defendants Brady, Buckman, and Monk, see Midgett v. Cooper, No. 20CV941, 2022 WL 795762, at *1–4 (M.D.N.C. Mar. 16, 2022) (unpublished), appeal filed, No. 22-1416 (4th Cir. Apr. 18, 2022).

–8–

Court, be summarily denied." M.D.N.C. LR 7.3(k). In this instance, the Court exercises its discretion to summarily deny the Enlargement Motion for several reasons. To begin, the Enlargement Motion represents the second motion that Plaintiffs have filed without a supporting brief, in contravention of Local Rules 7.3(a) and (j). (See Docket Entry 4 (moving without supporting brief for extension of 90-day deadline under Federal Rule of Civil Procedure 4(m) more than two months after deadline ran).)[10] Plaintiffs also have ignored other Local Rules; for example, they disregarded another deadline (imposed by the Court pursuant to the Local Rules, see, e.g., M.D.N.C. LR 7.3(f) (setting response times and authorizing judicial reductions)) by filing a response out of time without requesting leave. (See Text Order dated May 28, 2021 (discussing Plaintiffs' untimely response opposing timely motion for extension of time as to which Court had shortened deadline).)[11]

Finally (and as an alternative, non-summary ground for denial of the Enlargement Motion), under the Local Rules' briefing standard, which requires articulation of (A) "fact[s] . . . supported by reference to a part of the official record," M.D.N.C.

---

[10] The Court (per the undersigned Magistrate Judge) effectively excused that failure by granting a belated extension to Plaintiffs to make service of process. (See Text Order dated Apr. 6, 2021.)

[11] Moreover, as noted in the opposition to Plaintiffs' motion for leave to file a second amended complaint, Plaintiffs have failed to state with particularity the grounds therefor, as required by Local Rule 7.3(b). (See Docket Entry 29 at 11 (citing M.D.N.C. LR 7.3); see also id. ("Plaintiffs set forth the bare bones elements required for amendment and conclude that they meet them, but they make[] no effort to explain with particularity how the law applies to the circumstances here or why amendment should be permitted.").)

-9-

LR 7.2(a)(2); see also M.D.N.C. LR 7.3(e) ("When allegations of fact not appearing of record are relied upon to support a motion, affidavits . . . [or] other pertinent documents then available shall accompany the motion or related brief."), and (B) "argument," M.D.N.C. LR 7.2(a)(4), the Enlargement Motion falls short on the merits. In that regard, although the Enlargement Motion (somewhat cryptically) acknowledges that Plaintiffs must show "excusable neglect" for missing the show-cause deadline (Docket Entry 28 at 2-3 (citing Federal Rule of Civil Procedure 6(b)(1)(B) and Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 308 (1993))), the Enlargement Motion lacks sufficient (properly supported) facts and adequate argument to do so (see id.).

Regarding the former deficiency, although the Enlargement Motion asserts that "Plaintiffs' counsel attempted to complete the filing on November 17, [2021,] but the ECF system would not accept the filing" (id. at 2; see also id. ("Plaintiff's [sic] counsel received several 'Syntax error' notifications when trying to correctly label the filing as a 'Response' in the ECF system. . . . It took quite a while for counsel to locate the problem and figure out a work-around.")),[12] the Enlargement Motion provides no "support[ for that assertion] by reference to a part of

_____

[12] Contrary to Plaintiffs' suggestion that the Court mandated the filing of a document styled "as a 'Response' in the ECF system" (Docket Entry 28 at 2), the Court, in fact, simply "requir[ed] Plaintiffs to show cause in writing . . . why the Court should not dismiss this action as to Defendants [] Brady [], [] Buckman, and [] Monk" (Text Order dated Nov. 10, 2021 (emphasis added)).

the official record," M.D.N.C. LR 7.2(a)(2), or to "affidavits . . . [or] other pertinent documents," M.D.N.C. LR 7.3(e), which would substantiate any "allegations of fact not appearing of record," id. Nor does the Enlargement Motion disclose when, on November 17, 2021, Plaintiffs' counsel logged into the CM/ECF system to attempt to file the Show Cause Response (see Docket Entry 28 at 2-3); without that information, the Court could not find that Plaintiffs (through their counsel) acted in a manner that warrants belated relief from the filing deadline, see M.D.N.C. LR 5.3(g)(1) ("A technical failure does not relieve a party of exercising due diligence to timely file and serve documents.").[13]

As to inadequate argument, the Enlargement Motion neglects to address the controlling principle that "'[e]xcusable neglect' is not easily demonstrated, nor was it intended to be." Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996). Moreover, the Enlargement Motion's bald declarations that "Plaintiffs' counsel acted in good faith" (Docket Entry 28 at 3) and that the brief delay "poses no danger of prejudice" (id.) ignores the broader pattern (detailed previously) of Plaintiffs'

---

[13] Put another way, if the (omitted) facts revealed that Plaintiffs' counsel waited until near midnight on the night of November 17, 2021, to begin the filing process, the Court likely would conclude that Plaintiffs' counsel did not take reasonable steps to comply with the deadline and thus the stated "reason for the [filing] delay," Pioneer, 507 U.S. at 395, "[t]he most important of the factors identified in Pioneer for determining whether 'neglect' is 'excusable,'" Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996), would weigh against relief, because the decision to delay to the last minute before attempting to electronically file the Show Cause Response rested "within the reasonable control of [Plaintiffs' counsel]," Pioneer, 507 U.S. at 395.

-11-

haphazard and dilatory approach to this litigation, see Tyndall v. Maynor, 288 F.R.D. 103, 110 (M.D.N.C. 2013) (observing that litigant's conduct in other aspects of case "indicate[d] a possible lack of good faith" in concluding that record did not support "finding of excusable neglect" (emphasis omitted)); Kenion v. Town of Atl. Beach, No. 4:10CV1745, 2012 WL 1752386, at *2 (D.S.C. May 15, 2012) (unpublished) (recognizing that "unwarranted delay is certainly prejudicial to [the d]efendants" (emphasis added)).

Ultimately, the excusable neglect inquiry remains "at bottom an equitable one," Pioneer, 507 U.S. at 395, and "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court [directive]," Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (internal brackets and quotation marks omitted); rather, where (as here) the directive "is entirely clear, . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test," id. at 366-67 (internal quotation marks omitted). Consistent with that view, the Court concludes that the Enlargement Motion does not establish excusable neglect, as any other conclusion would run afoul of the Supreme Court's admonition to construe the excusable neglect standard in a manner that deters "parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve," Pioneer, 507 U.S. at 395; see also Thompson, 76 F.3d at 535 (ruling that "run-of-the-mill inattentiveness by counsel" does not support

-12-

excusable neglect finding); <u>Progressive Minerals, LLC v. Rashid</u>, No. 5:07CV108, 2009 WL 2761295, at *4 (N.D.W. Va. Aug. 28, 2009) (unpublished) ("Rules and deadlines are made to be followed.").

The denial of the Enlargement Motion leaves the record devoid of a <u>timely</u> showing by Plaintiffs as to "why the Court should not dismiss this action as to Defendants [] Brady [], [] Buckman, and [] Monk" (Text Order dated Nov. 10, 2021). That circumstance alone warrants dismissal of this action as to Defendants Brady, Buckman, and Monk, particularly in light of the Court's warning that "[f]ailure by Plaintiffs to comply with th[at] Text Order will result in the dismissal of this action as to th[o]se Defendants" (<u>id.</u>). <u>See</u> <u>Ballard v. Carlson</u>, 882 F.2d 93, 95-96 (4th Cir. 1989) ("[C]ourts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders. Fed. R. Civ. P. 41(b). In this case, [the plaintiff] failed to respond to a specific directive from the court. . . . [D]ismissal is not a sanction to be invoked lightly. . . . [However, the] explicit warning that a recommendation of dismissal would result from failure to obey [the] order is a critical fact that distinguishes this case from those [where courts deemed dismissal unwarranted]. . . . In view of the warning, the [] court had

-13-

little alternative to dismissal. Any other course would have placed the credibility of the court in doubt and invited abuse.").[14]

## II. Show Cause Response

Even if the Court opted to overlook the untimeliness of the Show Cause Response and to consider it (along with its attachments), the record confirms that Plaintiffs did not comply with the order setting May 7, 2021, as the deadline for them to cure their failure to serve Defendants Brady, Buckman, and Monk within the time allotted by Federal Rule of Civil Procedure 4(m) (see Text Order dated Apr. 6, 2021).

### A. Relevant Standards

"Service of process is governed by Federal Rule of Civil Procedure 4(e)[], which provides in part that an individual can be served [in a United States judicial district] by 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.'" Lostutter v. Olsen, No. 1:16CV1098, 2017 WL 3669557, at *4 (M.D.N.C. Aug. 24, 2017) (unpublished) (quoting Fed. R. Civ. P. 4(e)(1)); see also Fed. R. Civ. P. 4(e)(2) (authorizing service of process by "doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the

---

[14] Plaintiffs' (above-described) "history of deliberately proceeding in a dilatory fashion," Ballard, 882 F.2d at 95, also counsels in favor of dismissal.

individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process"). North Carolina law "in turn provides in relevant part that a natural person can be served 'by [1] depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, [2] delivering to the addressee, and [3] obtaining a delivery receipt.'" Lostutter, 2017 WL 3669557, at *4 (emphasis added) (internal brackets omitted) (quoting N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(d) ("North Carolina Rule of Civil Procedure 4(j)(1)(d)")).[15] "The burden of proving service under [Federal] Rule [of Civil Procedure] 4 rests with [P]laintiff[s]." Id.; see also Fed. R. Civ. P. 4(l)(1) ("Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit.").

## B. Analysis

The Show Cause Response's attachments include these "documents [that purportedly] demonstrat[e] that Plaintiffs did effectuate

---

[15] North Carolina law additionally permits service of process on individuals via personal, residential, and agency methods mirroring the service options under Federal Rule of Civil Procedure 4(e)(2), see N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(a) & (b), as well as via two mail mechanisms, see N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c) & (e).

-15-

service [on Defendants Brady, Buckman, and Monk] pursuant to Federal Rule of Civil Procedure 4" (Docket Entry 25 at 2):

1) for Defendant Brady,

A) an "AO 440" form "Proof of Service," signed "under penalty of perjury" by "John Lischwe" (identified as a "Courier" with "NOVA Office Strategies" in "Raleigh"), affirming that "[t]h[e] summons for . . . Mikel E. Brady II was received by [Courier Lischwe] on . . . 05/07/2021 . . . [and] hand deliver[ed] to [a] FedEx locat[ion in] . . . Durham, NC . . . on May 07, 2021 at 8:57 PM" (Docket Entry 25-1 at 143 (standard font applied));[16]

B) a three-page e-mail from "TrackingUpdates@fedex.com" to "dnb@thebankslawfirm.com," dated "May 13, 2021," with the message "Your package was delivered Thu, 05/13/2021," and notations of "Delivered to 5880 HWY 67, Florence CO 81226" and "Received by CCOULDVID" (id. at 144 (standard font applied)), along with additional tracking-type information reporting the package addressee as "Mikel Edward Brady II," the "Ship Date" as "Mon 5/10/2021," and the "Service Type" as "FedEx Ground" (id. at 145 (standard font applied)); and

---

[16] Although the caption on the summons properly reflects the case number in this action (see id. at 142 ("Civil Action No. 1:20-cv-00953")), the case number for Midgett appears above the "Proof of Service" heading on the page attached to the summons (see id. at 143 ("1:20-cv-00941")), thus indicating that the document signed by Courier Lischwe pertains to Midgett, not this action.

-16-

C) a two-page "Detailed Tracking" document with a heading stating "Delivered" on "Thursday, May 13, 2021" and "Signed for by CCOULDVID," followed by (i) a "Travel History" section reflecting "Delivered" in "Florence, CO" on "Thursday, May 13, 2021" (id. at 147 (standard font applied)), as well as "Package received after final location pickup has occurred" and "Scheduled for pickup next business day" in "Raleigh, NC" on "Friday, May 7, 2021" (id. at 148 (standard font applied)), and (ii) a "Shipment Facts" section listing "Service" as "FedEx Ground," "Ship Date" as "5/10/21," and "Actual Delivery" as "5/13/21" (id. (standard font applied));

2) for Defendant Buckman,

A) an "AO 440" form "Proof of Service," signed "under penalty of perjury" by "John Lischwe" (identified as a "Courier" with "NOVA Office Strategies" in "Raleigh"), affirming that "[t]h[e] summons for . . . Wisezah D. Buckman was received by [Courier Lischwe] on . . . 05/07/2021 . . . [and] hand deliver[ed] to [a] FedEx locat[ion in] . . . Durham, NC . . . on May 07, 2021 at 8:57 PM" (id. at 136 (standard font applied));[17]

B) a three-page e-mail from "TrackingUpdates@fedex.com," to "dnb@thebankslawfirm.com," dated "May 12, 2021," with the message "Your package was delivered Wed, 05/12/2021," and

_____

[17] As with the summons for Defendant Brady, the "Proof of Service" for Defendant Buckman in this action reflects the case number for Midgett. (See id.)

notations of "Delivered to 1001 Beazey Rd, Butner, NC 27509"
and "Received by CCOVI" (id. at 137-38 (standard font
applied)), along with additional tracking-type information
reporting the package addressee as "Wisezah D. Buckman," the
"Ship Date" as "Mon 5/10/2021," and the "Service Type" as
"FedEx Ground" (id. at 138 (standard font applied)); and

C) a two-page "Detailed Tracking" document with a heading
stating "Delivered" on "Wednesday, May 12, 2021" and "Signed
for by CCOVI," followed by (i) a "Travel History" section
reflecting "Delivered" in "Butner, NC" on "Wednesday, May 12,
2021" (id. at 140 (standard font applied)), as well as
"Package received after final location pickup has occurred"
and "Scheduled for pickup next business day" in "Raleigh, NC"
on "Friday, May 7, 2021" (id. at 141 (standard font applied)),
and (ii) a "Shipment Facts" section listing "Service" as
"FedEx Ground," "Ship Date" as "5/10/21," and "Actual
Delivery" as "5/12/21" (id. (standard font applied)); and

3) for Defendant Monk,

A) an "AO 440" form "Proof of Service," signed "under
penalty of perjury" by "John Lischwe" (identified as a
"Courier" with "NOVA Office Strategies" in "Raleigh"),
affirming that "[t]h[e] summons for . . . Johnathan M. Monk
was received by [Courier Lischwe] on . . . 05/07/2021 . . .
[and] hand deliver[ed] to [a] FedEx locat[ion in] . . .

-18-

Durham, NC . . . on May 07, 2021 at 8:57 PM" (id. at 44 (standard font applied));[18]

B) a three-page e-mail from "TrackingUpdates@fedex.com," to "dnb@thebankslawfirm.com," dated "May 7, 2021," with the message "This shipment is scheduled to be sent on Fri 05/07/2021" (id. at 45 (standard font applied)) and a notation of "Estimated delivery date Mon, 05/10/2021" (id. at 46 (standard font applied)), along with additional tracking-type information reporting the package addressee as "Johnathan M. Monk" and the "Service Type" as "FedEx Ground" (id. (standard font applied)); and

C) a two-page "Detailed Tracking" document with a heading stating "Delivered" on "Tuesday, May 11, 2021" and "Signed for by TTHOMPSON," followed by (i) a "Travel History" section reflecting "Delivered" in "Butner, NC" on "Tuesday, May 11, 2021" (id. at 48 (standard font applied)), as well as "Package received after final location pickup has occurred" and "Scheduled for pickup next business day" in "Raleigh, NC" on "Friday, May 7, 2021" (id. at 48-49 (standard font applied)), and (ii) a "Shipment Facts" section listing "Service" as "FedEx Ground," "Ship Date" as "5/10/21," and

---

[18] As with the summonses for Defendants Brady and Buckman, the "Proof of Service" for Defendant Monk in this action reflects the case number for Midgett. (See id.)

-19-

"Actual Delivery" as "5/11/21" (id. at 49 (standard font applied)).

The foregoing materials do not satisfy Plaintiffs' burden of proving valid service on Defendants Brady, Buckman, and Monk under North Carolina Rule of Civil Procedure 4(j)(1)(d) for a host of reasons.[19] As an initial matter, because the United States Marshals Service did not effect service of process, "proof must be by the server's affidavit." Fed. R. Civ. P. 4(l)(1). Here, the affidavits Plaintiffs tendered to prove service (i.e., the AO 440 forms signed under perjury penalties by NOVA Office Strategies Courier Lischwe) refer only to the "hand deliver[y]" of "summons[es]" (in the Midgett case) for Defendants Brady, Buckman, and Monk to a "FedEx locat[ion]" (Docket Entry 25-1 at 44, 136, 143 (standard font applied)), without making any reference to either

---

[19] Nor do they establish compliance with the personal, residential, agent, or mail options under Federal Rule of Civil Procedure 4(e)(2) and/or North Carolina Rule of Civil Procedure 4(j)(1), in that Plaintiffs' filings do not show personal delivery to Defendants Brady, Buckman, and/or Monk, see Fed. R. Civ. P. 4(e)(2)(A); N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(a), do not establish that the person who received the deliveries resided at the prisons, possessed suitable discretion, or served as the agent for Defendants Brady, Buckman, and/or Monk, see Fed. R. Civ. P. 4(e)(2)(B) & (C); N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(a) & (b), and do not reveal use of the United States mail, see N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c) & (e). To the extent Colorado law provides avenues for service on Defendant Brady (given his apparent incarceration there at the time of the service attempt) Plaintiffs' evidence similarly does not meet the facial elements of that state's rules, see Barnett v. Broadwell, No. 20CV688, 2021 WL 5410759, at *3 (D. Colo. Nov. 19, 2021) (unpublished) (explaining that Colorado law "authorizes service of a natural person above the age of eighteen as follows: (1) 'by delivering a copy of the summons and complaint to the person;' (2) 'by leaving a copy thereof at the person's usual place of abode, with any person whose age is eighteen years or older and who is a member of the person's family, or at the person's usual workplace, with the person's supervisor, secretary, administrative assistant, bookkeeper, human resources representative or managing agent;' or (3) 'by delivering a copy to a person authorized by appointment or by law to receive service of process.'" (quoting Colo. R. Civ. P. 4(e)(1))).

-20-

the Complaint or the First Amended Complaint in this action (see id.).[20] Accordingly, Plaintiffs have not proven, "by the server's affidavit," Fed. R. Civ. P. 4(l)(1), that they "deposit[ed] with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served," N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(d) (emphasis added).

The next flaw in Plaintiffs' proof of service stems from the fact that the affidavits at issue merely note that NOVA Office Strategies Courier Lischwe made a "hand deliver[y]" of the summonses for Defendants Brady, Buckman, and Monk to a particular "FedEx locat[ion]" (Docket Entry 25-1 at 44, 136, 143), without specifying the type of FedEx delivery service selected (see id.). The North Carolina service-of-process rule in question requires use of "a designated delivery service authorized pursuant to 26 U.S.C.

---

[20] Those affidavits do not mention the (above-described) e-mails from a FedEx account to an account of Plaintiffs' counsel and/or the "Detailed Tracking" documents that Plaintiffs submitted (see Docket Entry 25-1 at 44, 136, 143) and those e-mails and documents do not constitute affidavits (from the server or otherwise), see Dumphord v. Gabriel, Civ. No. 5:20-461, 2021 WL 4993478, at *4 (E.D. Ky. Oct. 27, 2021) (unpublished) ("Rule 4(l) of the Federal Rules of Civil Procedure requires litigants to provide proof of service in most situations by the server's affidavit. Here, [the sender of the e-mail] is not the server, and his e-mail does not qualify as an affidavit." (internal citation and quotation marks omitted)); Starrett v. City of Richardson, No. 3:18CV191, 2018 WL 4627133, at *4 (N.D. Tex. July 27, 2018) (unpublished) ("[T]he document [the p]laintiff filed for proof of service is not labeled as an affidavit and does not function as an affidavit because it was not sworn or made under oath before an authorized officer, and it does not qualify as an unsworn declaration because it does not state that it was signed under penalty of perjury . . . . His proof of service is therefore not proper under Federal Rule of Civil Procedure 4(l)(1) . . . ." (internal quotation marks omitted)), recommendation adopted, 2018 WL 3802038 (N.D. Tex. Aug. 10, 2018) (unpublished), aff'd, 766 F. App'x 108 (5th Cir. 2019). In any event, those e-mails and documents do not reveal the contents of the packages delivered. (See Docket Entry 25-1 at 45-49, 137-41, 144-48.)

-21-

§ 7502(f)(2)," N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(d). The cross-referenced statute, in turn, "does not allow [litigants] to use the services of *any* bona fide commercial courier. Instead, the statute specifies that a particular 'delivery service provided by a trade or business' will count as a 'designated delivery service' <u>only</u> 'if such service is designated by the Secretary [of the Treasury or his delegate] for purposes of this section.'" <u>Organic Cannabis Found., LLC v. Commissioner</u>, 962 F.3d 1082, 1090 (9th Cir. 2020) (second emphasis added) (quoting 26 U.S.C. § 7502(f)(2)), <u>cert. denied</u>, ___ U.S. ___, 141 S. Ct. 2596 (2021), <u>cert. denied sub nom.</u> <u>Northern Cal. Small Bus. Assistants, Inc. v. Commissioner</u>, ___ U.S. ___, 141 S. Ct. 2598 (2021); <u>see also</u> <u>id.</u> ("[H]ere that delegate is the Commissioner [of Internal Revenue] (or his further delegate).").

"The statutory language also makes clear that there must be separate designations for each 'service' offered by a private courier – and not merely a designation of the courier itself – because § 7502(f) expressly distinguishes between the 'trade or business' that engages in delivery of packages (e.g., FedEx) and the various 'delivery services' by which it does so (e.g., FedEx Priority Overnight)." <u>Id.</u> at 1091 (italics and internal brackets omitted) (quoting 26 U.S.C. § 7502(f)); <u>see also</u> <u>id.</u> ("[P]rivate couriers seeking designation under § 7502(f) [do] not receive a blanket designation for every service they offer[]; rather, . . . designation[s are] determined with respect to each

-22-

type of delivery service offered by a courier (e.g., next business morning delivery, next business day delivery, etc.)." (internal brackets and quotation marks omitted)). "[Since] 1997, the [Commissioner of Internal Revenue] has published lists in the Internal Revenue Bulletin of those services that [have been] designated under § 7502(f)." Id. (internal citation omitted). "[E]ffective April 11, 2016, the list of designated [delivery services] is as follows: . . . FedEx: 1. FedEx First Overnight[;] 2. FedEx Priority Overnight[;] 3. FedEx Standard Overnight[;] 4. FedEx 2 Day[;] 5. FedEx International Next Flight Out[;] 6. FedEx International Priority[;] 7. FedEx International First[; and] 8. FedEx International Economy[.]" Designation of Private Delivery Services, Notice 2016-30, 2016-18 I.R.B. 676, 2016 WL 1719555 (May 2, 2016); see also id. ("Only the specific delivery services enumerated in this list are designated delivery services for purposes of section 7502(f). . . . FedEx . . . [is] not designated with respect to any type of service not enumerated in this list. . . . [M]erely because a delivery service is provided by . . . FedEx . . ., it does not mean that the service is designated for purposes . . . of section 7502. Th[is] list . . . will remain in effect until further notice.").

The e-mails from a FedEx account to an account of Plaintiffs' counsel and the "Detailed Tracking" documents that Plaintiffs filed along with the affidavits from NOVA Office Strategies Courier

-23-

Lischwe identify the "Service Type" and "Service" used for the packages addressed to Defendants Brady, Buckman, and Monk as "FedEx Ground." (Docket Entry 25-1 at 46, 49, 138, 141, 145, 148 (standard font applied).) As a result, even if the Court treated those e-mails and documents as somehow incorporated into the accompanying affidavits, Plaintiffs have not proven proper service, because "FedEx Ground" (id.) does not appear on the list of "designated delivery service[s] authorized pursuant to 26 U.S.C. § 7502(f)(2)," N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(d).

In addition, Plaintiffs have failed to prove service on Defendants Brady, Buckman, and Monk because the affidavits filed by Plaintiffs do not address the last two steps in the three-step mechanism for effecting service under North Carolina Rule of Civil Procedure 4(j)(i)(d). Specifically, that rule authorizes service of process on an individual "by [1] depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, [2] delivering to the addressee, and [3] obtaining a delivery receipt." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(d) (emphasis added). NOVA Office Strategies Courier Lischwe's affidavits do not mention anything that happened after he "hand deliver[ed]" the summonses for Defendants Brady, Buckman, and Monk to a "FedEx locat[ion]" (Docket Entry 25-1 at 44, 136, 143 (standard font applied)), and thus those affidavits provide no

-24-

proof of the last two required steps, i.e., "delivering [the summons and complaint] to the addressee, and obtaining a delivery receipt," N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(d).

To the extent the Court chose to look beyond the face of those affidavits to the contemporaneously filed e-mails and "Detailed Tracking" documents, those materials (at most) show (A) delivery by FedEx of the packages (previously dropped off at a FedEx location by NOVA Office Strategies Courier Lischwe) to the prison facilities listed on the packages as the addresses for Defendants Brady, Buckman, and Monk, where (B) someone other than Defendants Brady, Buckman, and Monk signed for the packages, after which (C) FedEx electronically transmitted confirmation of the deliveries to Plaintiffs' counsel. (See Docket Entry 25-1 at 48, 137-38, 140, 144, 147.) Assuming such a showing satisfies the third step under North Carolina Rule of Civil Procedure 4(j)(1)(d) (i.e., "obtaining a delivery receipt"), Plaintiffs still have fallen short on step two (i.e., "delivering to the addressee"). Under North Carolina law:

> [I]n order to properly effectuate service by 'delivering to the addressee,' a plaintiff must demonstrate that the summons and complaint were either (1) signed for by the addressee or her designated agent or (2) actually received by the addressee. This interpretation of [North Carolina] Rule [of Civil Procedure] 4(j)(1)(d) helps to ensure that defendants will receive actual notice of the claims against them, without permitting technicalities to inhibit courts from reaching the merits when there is evidence that the summons and complaint were actually received.

-25-

<u>North Carolina Mut. Life Ins. Co. v. Stamford Brook Cap., LLC</u>, No. 1:16CV1174, 2019 WL 4747851, at *4 (M.D.N.C. Sept. 27, 2019) (unpublished) (emphasis added) (internal citations, brackets, and some quotation marks omitted) (harmonizing <u>Hamilton v. Johnson</u>, 228 N.C. App. 372, 747 S.E.2d 158 (2013), and <u>Washington v. Cline</u>, 233 N.C. App. 412, 761 S.E.2d 650 (2014)); <u>accord</u> <u>Midland Nat'l Life Ins. Co. v. Long</u>, No. 3:18CV672, 2021 WL 3476139, at *5 (W.D.N.C. Aug. 6, 2021) (unpublished); <u>see also</u> <u>Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.</u>, 733 F.2d 1087, 1089 (4th Cir. 1984) ("When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.").

Plaintiffs have not met that standard, as shown in this adaptation of language used by a neighboring court faced with analogous facts:

> [As] Defendant[s Brady, Buckman, and Monk] did not sign for the deliver[ies], [Plaintiffs] must show either (1) [the persons who did sign for the deliveries] served as Defendant[s Brady's, Buckman's, and Monk's] designated agent[s] or (2) Defendant[s Brady, Buckman, and Monk] actually received notice. [Plaintiffs] d[id] not provide evidence of either.
>
> First, there is no evidence in the record indicating [the persons who signed for the deliveries were] Defendant[s Brady's, Buckman's, and Monk's] designated agent[s]. In fact, there is no evidence showing [the persons who signed for the deliveries were] even [] employee[s] at [the prisons where the deliveries occurred]. Second,

-26-

there is no evidence indicating Defendant[s Brady, Buckman, and Monk] admitted to receiving actual notice. . . . Therefore, [Plaintiffs] failed to show proper service on Defendant[s Brady, Buckman, and Monk].

Midland Nat'l, 2021 WL 3476139, at *5; see also Lostutter, 2017 WL 36669557, at *4 (finding "fail[ure] to comply with North Carolina's Rule [of Civil Procedure] 4[(j)(1)(d)], which requires that the summons and complaint be 'delivered to the addressee,'" where "there is no evidence . . . [that the person who signed for delivery was] authorized to accept service on behalf of [the defendant]" (internal brackets omitted)).

In sum, Plaintiffs did not properly serve Defendants Brady, Buckman, and/or Monk; moreover, even if the Court deemed the e-mails and the "Detailed Tracking" documents accompanying the affidavits from NOVA Office Strategies Courier Lischwe as sufficient proof of all three steps required for service of process via North Carolina Rule of Civil Procedure 4(j)(1)(d), Plaintiffs still failed to comply with the Court's Order to effect service by May 7, 2021 (see Text Order dated Apr. 6, 2021), as those materials establish that the FedEx deliveries to Defendants Brady, Buckman, and Monk (or more accurately to their prisons) and FedEx's electronic confirmations to Plaintiffs' counsel did not happen until May 13, May 12, and May 11, 2021, respectively. (See Docket Entry 25-1 at 45-49 (confirming date of May 11, 2021, for delivery to Defendant Monk), 137-41 (confirming date of May 12, 2021, for delivery to Defendant Buckman), 144-48 (confirming date of May 13,

-27-

2021, for delivery to Defendant Brady).)  Plaintiffs' failure in
that regard looms particularly large, because – in extending the
deadline to May 7, 2021, several months beyond the original
deadline under Federal Rule of Civil Procedure 4(m) of January 13,
2021, which Plaintiffs cavalierly disregarded without timely
seeking relief – the Court explicitly refused to allow any longer
period for service of process, "[g]iven the length of time this
case has languished" (Text Order dated Apr. 6, 2021).

Simply put, Plaintiffs "inexcusably failed to comply with the
court order to serve [all Defendants] by the [extended] deadline
and [Defendants Brady, Buckman, and Monk] should be dismissed."
Johnson v. Santa Clara Cnty., No. C05-1628, 2008 WL 4657732, at *3
(N.D. Cal. Oct. 21, 2008) (unpublished); see also Walkup v. Air &
Liquid Sys. Corp., Civ. No. 12-1635, 2013 WL 5396674, at *3
(D. Del. Sept. 26, 2013) (unpublished) (recommending dismissal
where "[the p]laintiffs failed to comply with th[e] court's [o]rder
imposing a . . . deadline to complete service"), recommendation
adopted, 2013 WL 5786517 (D. Del. Oct. 24, 2013) (unpublished);
Davis-Wilson v. Hilton Hotels Corp., 106 F.R.D. 505, 508-09
(E.D. La. 1985) ("[The p]laintiff neither requested any more
extensions under [Federal] Rule [of Civil Procedure] 6(b) nor did
she effect service on [the] defendant until . . . well after the
deadline imposed by the [m]agistrate . . . .  It is evident from
the circumstances the plaintiff was not diligent in her efforts to

-28-

serve [the] defendant. . . . On this ground alone, the [c]ourt was correct in dismissing [the] plaintiff's suit.").[21]

## CONCLUSION

The Show Cause Response, which Plaintiffs filed after the deadline (and, without providing adequate justification, belatedly asked the Court to accept), fails to demonstrate timely service of process on Defendants Brady, Buckman, and Monk.

**IT IS THEREFORE ORDERED** that the Enlargement Motion (Docket Entry 28) is **DENIED.**

**IT IS RECOMMENDED** that the Court dismiss this action as to Defendants Brady, Buckman, and Monk.

> _/s/ L. Patrick Auld_
> **L. Patrick Auld**
> **United States Magistrate Judge**

May 5, 2022

---

[21] The Court's prior, explicit refusal to permit any more time for service effectively placed Plaintiffs on notice that non-compliance with the (extended) deadline would preclude them from proceeding against any untimely served Defendants in this action. That consideration (and the related need for the Court to enforce such clearly drawn lines to avoid "plac[ing] the credibility of the [C]ourt in doubt and invit[ing] abuse," Ballard, 882 F.2d at 96), along with Plaintiffs' (previously described) pattern of dilatory (and otherwise improper) litigation of this case and the prejudice associated with such unreasonable delay, all support the dismissal from this action of Defendants Brady, Buckman, and Monk, see id. at 95-96 (affirming dismissal sanction for failure to comply with court order); see also Spears v. City of Indianapolis, 74 F.3d 153, 157 (7th Cir. 1996) ("We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception. A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines. What happened in this case is that [the district court], wh[ich] had generously given [the plaintiff] more than enough time to get his act together, decided there would be no more extensions, and we cannot say [it] was wrong to put [its] foot down as [it] did."); Geiserman v. MacDonald, 893 F.2d 787, 792 (5th Cir. 1990) ("Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.").

-29-